UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

| | |
|---|---|
| ROUNDTABLE HEALTHCARE PARTNERS, L.P., a Delaware Limited Partnership, | : : : |
| Plaintiff, | : : **ANSWER AND COUNTERCLAIMS** |
| v. | : Civil Action No.: 08-CV-02968 (MGC) : |
| ANGIOTECH PHARMACEUTICALS (U.S.), INC., a Washington Corporation, | : Filed Electronically : : |
| Defendant. | : : |

————————————————————————

Angiotech Pharmaceuticals (U.S.), Inc., a Washington corporation ("Angiotech"), by its undersigned counsel, makes the following answer to the Complaint of RoundTable Healthcare Partners, L.P., a Delaware limited partnership ("RoundTable"), and asserts the following counterclaims against RoundTable:

<u>INTRODUCTION</u>

1.     This dispute arises out of the Defendant Angiotech's intentional refusal to abide by the terms of contracts entered into between RoundTable and Angiotech in the form of a stock purchase agreement and related escrow agreement, despite clear and unambiguous obligations to do so.

>    **<u>Answer</u>**:     Angiotech admits that Angiotech and RoundTable are parties to a stock purchase agreement and an escrow agreement.  Angiotech denies the remaining allegations in Paragraph 1.

2.     In March, 2006, RoundTable (both in its own capacity as Seller Representative for all equity security holders of AMI (as defined below)) entered into a stock purchase agreement (the "Stock Purchase Agreement") with Angiotech (as Buyer) pursuant to which Angiotech acquired all of the outstanding equity interests in a medical

instrument company known as American Medical Instruments Holdings, Inc. ("AMI").
(The Stock Purchase Agreement is attached hereto as Exhibit A.)

> **Answer**:    Angiotech admits that Angiotech and RoundTable are parties to a
> stock purchase agreement ("the Stock Purchase Agreement") and that a true and
> correct copy of the Stock Purchase Agreement is attached to the Complaint as
> Exhibit A.  To the extent the allegations of Paragraph 2 purport to summarize the
> Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers
> to the document for a complete and accurate recitation of its contents.  Angiotech
> denies all remaining allegations of Paragraph 2 and specifically denies that the
> Stock Purchase Agreement is dated in March 2006.

3.    In connection with the sale, on March 23, 2006, RoundTable,[1] Angiotech,
and LaSalle Bank, N.A. ("LaSalle Bank")[2] executed an Escrow Agreement (the "Escrow
Agreement").  Under the terms of the Escrow Agreement, Angiotech deposited a portion
of the purchase price with LaSalle Bank in the amount of $20 million.  (The Escrow
Agreement is attached hereto as Exhibit B.)

> **Answer**:    Angiotech admits that Angiotech, RoundTable, and LaSalle Bank,
> N.A. ("LaSalle") are parties to an escrow agreement ("the Escrow Agreement")
> and that a true and correct copy of the Escrow Agreement is attached to the
> Complaint as Exhibit B.  Angiotech admits that it deposited $20 million into an
> escrow account held by LaSalle.  To the extent the allegations of Paragraph 3
> purport to summarize the Escrow Agreement, that agreement speaks for itself and
> Angiotech refers to the document for a complete and accurate recitation of its

---

[1] The Stock Purchase Agreement appointed RoundTable, as agent for all of the equity holders of AMI for purposes of resolving matters governed by the Escrow Agreement.  (Ex. A. at Article XII.)

[2] The Escrow Agreement directed LaSalle Bank to serve as Escrow Agent and hold and manage the Escrow Funds according to the terms of the Escrow Agreement.

contents.  Angiotech denies all remaining allegations of Paragraph 3.

4.     Pursuant to the Stock Purchase Agreement, the equity holders of AMI agreed to indemnify Angiotech for "Damages," as that term is defined in Section 9.2 of the Stock Purchase Agreement, associated with "any breach of or inaccuracy in (i) any representation or warranty made by [AMI]."  See Exhibit A, Article III.  Angiotech's indemnification for alleged breaches, however, is limited to the $20 million in escrow funds, and Angiotech must pursue any claims for indemnification exclusively against the escrow funds in accordance with the Agreements.  *Id*. at §9.

**Answer**:     Angiotech admits that the allegations of Paragraph 4 have accurately quoted a portion of § 9.2 of the Stock Purchase Agreement.  To the extent the allegations of Paragraph 4 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 4.

5.     The Escrow Agreement sets forth the procedures by which Angiotech could make claims against the escrow, and by which Angiotech, RoundTable, and LaSalle would proceed upon the making of such a claim.  Angiotech has not abided by the terms of the Escrow Agreement or by the terms of the Stock Purchase Agreement which apply to the escrow procedures.

**Answer**:     To the extent the allegations of Paragraph 5 purport to summarize the Stock Purchase Agreement or the Escrow Agreement, those agreements speaks for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents.  Angiotech denies all remaining allegations of Paragraph 5.

6.     Contrary to the terms of the Stock Purchase and Escrow Agreements, Angiotech has:  (1) wrongfully alleged that it is entitled to escrow funds due RoundTable, (2) failed to meet its contractual obligations with respect to claims on the escrow account,

(3) persists in refusing to direct the release of the remaining $13.5 million in escrow funds plus accumulated interest and (4) refuses to return tax refund monies owed to RoundTable.  RoundTable seeks compensatory damages, declaratory relief, attorney's fees and costs, together with pre-judgment and post-judgment interest as provided by law.

> **Answer**:    Angiotech admits that RoundTable has sought the relief alleged in its Complaint.  Angiotech further admits that it has made a claim to the escrow funds held by LaSalle and that it is entitled to some or all of the escrow funds that remain in the account managed by LaSalle.  Angiotech denies all remaining allegations in Paragraph 6.

THE PARTIES

7.    RoundTable is a limited partnership duly organized under the laws of the State of Delaware.  Its principal place of business is Lake Forest, Illinois.

> **Answer**:    Angiotech admits that RoundTable is a Delaware Limited Partnership.  Angiotech lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 7.

8.    Angiotech is a corporation duly incorporated under the laws of the State of Washington.  Its principal place of business is Vancouver, British Columbia, Canada.

> **Answer**:    Angiotech admits that it is a corporation duly incorporated under the laws of the State of Washington.  Angiotech further states that its principal place of business is North Bend, Washington.  Angiotech denies the remaining allegations of Paragraph 8.

JURISDICTION/VENUE

9.    Jurisdiction is appropriate in this court pursuant to 28 U.S.C. §§ 1332(a) and 2201.  The parties are diverse; the amount in controversy exceeds $75,000 exclusive of interest and costs.  Venue is appropriate pursuant to 28 U.S.C. § 1391 and pursuant to the terms of the Stock Purchase Agreement that provides that both venue and jurisdiction

are appropriate in any federal or state court of competent jurisdiction within the State of New York. Angiotech operates a facility within the State of New York.

> **Answer**:    Angiotech admits that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Angiotech admits that the parties are diverse and that the amount in controversy exceeds $75,000 exclusive of interest and costs. Angiotech admits that venue is proper in this Court pursuant to 28 U.S.C. § 1391. Angiotech admits that jurisdiction and venue are proper in this Court pursuant to the terms of the Stock Purchase Agreement. Angiotech denies that this Court has jurisdiction pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, because that statute does not confer subject matter jurisdiction. Angiotech admits that it operates a facility within the State of New York. Angiotech denies the remaining allegations of Paragraph 9.

## BACKGROUND FACTS

10.    AMI is a medical instruments company that manufactures and distributes a broad array of devices throughout the United States. AMI was initially owned and controlled by Marmon Medical Companies, LLC ("Marmon"). Marmon sold a portion of its interest in AMI to RoundTable. RoundTable undertook a significant effort to reorganize AMI and to render its operations more effective and profitable. Accordingly, RoundTable dedicated significant resources to the improvement of the AMI companies.

> **Answer**:    Angiotech admits that American Medical Instruments Holdings, Inc. ("AMIH") was a medical device manufacturer and that AMIH was previously owned and controlled by the Marmon Group ("Marmon"). Angiotech further admits that RoundTable acquired a majority interest in AMIH from Marmon. Angiotech lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 10.

11.    The effort was highly successful and in late 2005, Angiotech expressed significant interest in purchasing AMI from RoundTable. Ultimately RoundTable and

Angiotech entered into the Stock Purchase Agreement, whereby Angiotech acquired all of the equity securities of AMI. The transaction closed on March 23, 2006. Since being acquired by Angiotech, AMI has done considerably less well.

> **Answer**:    Angiotech admits that it expressed interest in purchasing AMIH from RoundTable late in 2005. To the extent the allegations of Paragraph 11 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 11.

12.    At the closing, among other things, RoundTable, Angiotech and LaSalle Bank executed the Escrow Agreement. According to the terms of the Escrow Agreement, Angiotech deposited $20 million of the purchase price into the escrow account which could be claimed by Angiotech, if Angiotech: (1) determined there had been a breach of the representations and warranties regarding AMI and (2) followed the claims procedures set forth in the Stock Purchase and Escrow Agreements.

> **Answer**:    Angiotech admits that Angiotech, RoundTable, and LaSalle are parties to the Escrow Agreement. Angiotech further admits that it deposited $20 million into the escrow account maintained by LaSalle. To the extent the allegations of Paragraph 12 purport to summarize the Stock Purchase Agreement or the Escrow Agreement, those agreements speaks for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents. Angiotech denies all remaining allegations of Paragraph 12.

13.    Pursuant to the terms of the Stock Purchase Agreement, the equity holders of AMI agreed to indemnify Angiotech for "Damages," defined as:

> > losses, liabilities, Actions, assessments, costs, penalties, fines, judgments, deficiencies, diminution of value, expenses (including costs of investigation, defense and settlement and reasonable attorneys' and accountants' fees), or damages of any kind or nature whatsoever, including lost profits, lost

revenues and loss of business, whether or not involving a
Third-Party Claim, but excluding punitive, speculative or
consequential damages unless such damages are incurred or
paid by an Indemnified Party pursuant to a Third-Party
Claim.

(Exhibit A at §9.2.)  Such Damages were to be indemnified if they were associated with

"any breach of or inaccuracy in (i) any representation or warranty made by [AMI]."  (*Id.*

at §9.2(a)(i).)

> **Answer**:    Angiotech admits that the allegations of Paragraph 13 have
>
> accurately quoted a portion of § 9.2 of the Stock Purchase Agreement.  To the
>
> extent the allegations of Paragraph 13 purport to summarize the Stock Purchase
>
> Agreement, that agreement speaks for itself and Angiotech refers to the document
>
> for a complete and accurate recitation of its contents.  Angiotech denies all
>
> remaining allegations of Paragraph 13.

14.    The representations and warranties referred to by Section 9.2(a)(i) included

representations and warranties addressing AMI's capitalization, the condition of its

financial statements, ongoing litigation, compliance with laws and regulations and the

status of company permits.  (*Id.* at Article III.)

> **Answer**:    To the extent the allegations of Paragraph 14 purport to summarize
>
> the Stock Purchase Agreement, that agreement speaks for itself and Angiotech
>
> refers to the document for a complete and accurate recitation of its contents.
>
> Angiotech denies all remaining allegations of Paragraph 14.

15.    With regard to jurisdiction, the Purchase Agreement states:

> **THE PARTIES HERETO HEREBY IRREVOCABLY
> SUBMIT TO THE EXCLUSIVE JURISDICTION OF
> THE COURTS OF THE STATE OF NEW YORK AND
> THE FEDERAL COURTS OF THE UNITED STATES
> SITTING IN THE STATE OF NEW YORK SOLELY IN
> RESPECT OF THE INTERPRETATION AND
> ENFORCEMENT OF THE PROVISIONS OF THIS
> AGREEMENT AND OF THE DOCUMENTS**

**REFERRED TO IN THIS AGREEMENT, AND IN RESPECT OF THE TRANSACTIONS CONTEMPLATED HEREIN, AND HEREBY WAIVE, AND AGREE NOT TO ASSERT, AS A DEFENSE IN ANY ACTION FOR THE INTERPRETATION OR ENFORCEMENT HEREOF OR OF ANY SUCH DOCUMENT, THAT IT IS NOT SUBJECT THERETO OR THAT SUCH ACTION MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN SAID COURTS OR THAT THE VENUE THEREOF MAY NOT BE APPROPRIATE OR THAT THIS AGREEMENT OR ANY SUCH DOCUMENT MAY NOT BE ENFORCED IN OR BY SUCH COURTS, AND THE PARTIES HERETO IRREVOCABLY AGREE THAT ALL CLAIMS WITH RESPECT TO SUCH ACTION OR PROCEEDING SHALL BE HEARD AND DETERMINED IN SUCH A NEW YORK OR FEDERAL COURT.**

(Ex. A at §11.6(a) (capitalization and bold in original).)

> **Answer**:     Angiotech admits that the allegations of Paragraph 15 have accurately quoted a portion of § 11.6(a) of the Stock Purchase Agreement.  To the extent the allegations of Paragraph 15 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 15.

16.     On April 4, 2007, Angiotech submitted to LaSalle Bank an Escrow Claim Notice requesting the entire $20 million in the Escrow Account be distributed to Angiotech.  (The Escrow Claim Notice is attached hereto as Exhibit C.)

> **Answer**:     Angiotech admits that it submitted an escrow claim notice to LaSalle on April 4, 2007 ("the Escrow Claim Notice") and that a true and correct copy is attached to the Complaint as Exhibit C.  Angiotech further admits that its claim to the escrow funds exceeded the $20 million that it had originally placed in escrow with LaSalle.  To the extent the allegations of Paragraph 16 purport to summarize

the Escrow Claim Notice, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 16.

17.     On April 16, 2007, RoundTable issued a Notice of Objection to Angiotech's Escrow Claim Notice. (The Notice of Objection is attached hereto as Exhibit D.)

>    **Answer**:     Angiotech admits that RoundTable objected to the Escrow Claim Notice in a notice of objection dated April 16, 2007 ("Notice of Objection") and that a true and correct copy of the Notice of Objection is attached to the Complaint as Exhibit D. Angiotech denies all remaining allegations of Paragraph 17.

18.     The Stock Purchase Agreement limits Angiotech's ability to recover funds from the Escrow Account in several material respects. First, any indemnification liabilities are limited by the amount of the escrow, which was $20 million. (Ex. A at §§ 2.4 and 9.4(b).) Second, Angiotech may only seek recovery of any part of the Escrow Amount after demonstrating that it has incurred in excess of $2 million in aggregate Damages. (*Id*. at § 9.4(a).) Third, indemnification obligations, if any, expire when AMI's representations and warranties expire (with the exception of those relating to Capitalization and Ownership of Shares, which never expire.) (*Id*. at § 9.1(a)(i).) Section 9.1(a)(i) provides that AMI's representations and warranties survive only "until the earlier of 15 months after the Closing Date and 45 days after completion of the audit of [Angiotech's] consolidated financial statements for the year ended December 31, 2006." (*Id.*)

>    **Answer**:     Angiotech admits that the allegations of Paragraph 18 have accurately quoted a portion of § 9.1(a)(i) of the Stock Purchase Agreement. To the extent the allegations of Paragraph 18 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies

all remaining allegations of Paragraph 18.

19.    Fourth, RoundTable's indemnification obligations relate only to claims properly submitted by Angiotech as outlined in Section 9.5(a) of the Stock Purchase Agreement.  Section 9.5(a) contains both notice and cooperation conditions.  Specifically, Section 9.5(a) states that Angiotech "shall notify" RoundTable "within ten days after becoming aware of . . . any Damages that [Angiotech] shall have determined to have given or is reasonably likely to give rise to a claim for indemnification."  (*Id*. at § 9.5(a).)  In addition, after tendering a claim for indemnification, Section 9.5(a) requires that Angiotech "shall provide" to RoundTable "as soon as practicable thereafter all information and documentation necessary to support and verify" the submitted claim(s).  (*Id.*)

> **Answer**:    Angiotech admits that the allegations of Paragraph 19 have accurately quoted a portion of § 9.5(a) of the Stock Purchase Agreement.  To the extent the allegations of Paragraph 19 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 19.

### Angiotech's Failure to Follow Claims Procedures

20.    Angiotech has failed to follow the procedures agreed upon by the Parties for the submission of Escrow Claims.  For example, Section 9.5(a) required that Angiotech provide documents and information to support and verify Damages sought in an Escrow Notice of Claims.  Section 9.5(a) also mandates that RoundTable "shall be given access to all books and records in the possession or under control" of Angiotech which RoundTable reasonably determines to be related to such claims.  (*Id.* at § 9.5(a).)  In other words, Angiotech is required under Section 9.5(a) to supply RoundTable with all materials it believes support its claims, as well as all materials RoundTable reasonably determines to be related to the claims.

**Answer**:        Angiotech denies that the allegations of Paragraph 20 have accurately quoted a portion of § 9.5(a) of the Stock Purchase Agreement.  Further answering, Angiotech states that the portion of the Stock Purchase Agreement RoundTable references reads "shall be given access to all books and records in the possession or under *the* control . . . ."  *Id.* (emphasis added).  To the extent the allegations of Paragraph 20 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 20.

21.        The Escrow Agreement also delineates clearly defined claims procedures. Under Section 3(a) of the Escrow Agreement, Angiotech "shall deliver" a notice in substantially the form of an exhibit attached to the Escrow Agreement and state the amount of Damages sought by Angiotech.  (Ex. B at § 3(a).)  Upon receipt of the notice, RoundTable is entitled to investigate and evaluate the claim, including retaining its own counsel, accountants or professional advisors.  (*Id*. at § 3(b).)  If RoundTable objects to the claim within fifteen days, the parties are obligated "to attempt to resolve in good faith" any dispute regarding any disputed claim "within 15 days after the delivery of the Notice of Objection."  (*Id*.)  If the parties are unable to resolve the claim, the Escrow Agent may interplead the funds in any court of competent jurisdiction.  (*Id*. at § 15.)

**Answer**:        Angiotech denies that the allegations of Paragraph 21 have accurately quoted a portion of § 3(b) of the Escrow Agreement.  Further answering, Angiotech states that the portion of the Escrow Agreement RoundTable references reads "within 15 days after delivery of *such* Notice of Objection."  *Id*. (emphasis added).  To the extent the allegations of Paragraph 21 purport to summarize the Escrow Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 21.

22.    On April 4, 2007, just days before expiration of the representations and warranties and the equityholders' indemnification obligations, Angiotech submitted its "Escrow Notice of Claim" to the Escrow Agent, in which it alleged total Damages in the amount of $23,426,036.  (See Exhibit C.)  This was the first time Angiotech gave RoundTable notice of any of these potential Escrow Account claims.  And the only claim information Angiotech provided in the Escrow Notice of Claim consisted of eleven line items containing a one line summary of claim, the division from which the claim allegedly arose, and the purported amount of Damages.  (*Id.*)

**Answer**:    Angiotech admits that it submitted its Escrow Claim Notice to LaSalle on April 4, 2007, and that the Escrow Claim Notice was within the time permitted by the Stock Purchase Agreement.  Angiotech denies that the Escrow Claim Notice was the first time Angiotech provided RoundTable with notice of its escrow claim.  Further answering, Angiotech admits that it provided RoundTable with notice of the lawsuit included in the Escrow Claim Notice.  Further answering, Angiotech admits that the Escrow Claim Notice included total damages of $23,426,036 and aggregate damages of $21,426,036, and that Angiotech reserved the right to include "additional costs resulting from product recalls."  To the extent the allegations of Paragraph 22 purport to summarize the Escrow Claim Notice, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 22.

23.    Angiotech's Escrow Notice of Claim was so vague that there is no other conclusion than that Angiotech drafted it in such a manner so as to deprive RoundTable of the opportunity and ability to evaluate the merits of the submitted claims.  Upon information and belief, Angiotech's goal was to buy itself time beyond the agreed upon contractual deadlines so as to inundate RoundTable with untimely or inappropriate claims

with the hope of bargaining a settlement of some of the escrow funds as a condition for providing joint consent to release to RoundTable the remainder.

> **Answer**:     To the extent the allegations of Paragraph 23 purport to summarize the Escrow Claim Notice, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 23.

24.     Even a cursory analysis of Angiotech's claim notice leaves no other conclusion.  For example, item 6 of Angiotech's notice seeks $6,005,000 for "Quality System Investigation and Remediation."  (Ex. B.)  The only explanation provided for this claim amounting to over one-third of the Escrow Funds was that "Quality System procedures, practices, records and equipment require compliance with applicable regulatory requirements."  (*Id*.)  That is the sum total of the information provided.  In the nearly one year that has now passed since it issued the Claim Notice, Angiotech has not told RoundTable which procedures, practices, records and equipment needed changes.  It has not told RoundTable which regulatory requirements were not being complied with.  It did not tell RoundTable anything about how the $6 million plus reimbursement sum was derived or specify a single hard expenditure that Angiotech had made.

> **Answer**:     Angiotech admits that the allegations of Paragraph 24 have accurately quoted a portion of the Escrow Claim Notice.  To the extent the allegations of Paragraph 24 purport to summarize the Escrow Claim Notice, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds.

Angiotech denies all remaining allegations of Paragraph 24.

25.    RoundTable timely served its Notice of Objection to the Escrow Notice of Claim on April 16, 2007.  (See Ex. D.)  RoundTable simultaneously sent a letter to Angiotech advising Angiotech of its belief that the Escrow Notice of Claim was untimely and, based on the limited information provided, without merit.  (The April 16, 2007 letter is attached hereto as Exhibit E.)  In addition, RoundTable demanded that Angiotech provide more fulsome explanations of their claims as well as "information and documentation necessary to support and verify" the claims as required by Section 9.5 of the Stock Purchase Agreement.  (*Id.*)  Pursuant to the terms of Section 3(b) of the Escrow Agreement, RoundTable rightly expected that, within 15 days, Angiotech would make a good faith effort to provide information to RoundTable to help it understand Angiotech's claims so that a resolution might become possible.

**Answer**:    Angiotech admits that RoundTable served a notice of objection to Angiotech's Escrow Claim Notice on April 16, 2007.  Further answering, Angiotech admits that a true and correct copy of that Notice of Objection is attached to the Complaint as Exhibit D.  Angiotech admits that RoundTable sent Angiotech a letter on or around the same time and that a true a correct copy of that letter is attached to the Complaint as Exhibit E.  Angiotech admits that the allegations of Paragraph 25 have accurately quoted a portion of the April 16, 2007 letter.  To the extent the allegations of Paragraph 25 purport to summarize the Notice of Objection, the April 16, 2007 letter, or the Escrow Agreement, those documents speak for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents.  Angiotech denies all remaining allegations of Paragraph 25.

26.    RoundTable's reasonable expectations were not met.  Rather than responding with any information or documentation within 15 days, Angiotech sent a letter claiming it was "working to gather all documents relevant to the claims" and that it

would provide those documents "in due course." Nearly a year later, that "due course" has still not arrived. (Angiotech's April 24, 2007 letter is attached hereto as Exhibit F.)

> **Answer**:    Angiotech admits that it sent a letter to RoundTable dated April 24, 2007, and that a true and correct copy of that letter is attached to the Complaint as Exhibit F. Angiotech admits that the allegations of Paragraph 26 have accurately quoted a portion of the April 24, 2007 letter. Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds. To the extent the allegations of Paragraph 26 purport to summarize the April 24, 2007 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 26.

27.    Having not heard from Angiotech, RoundTable reasonably believed that Angiotech had abandoned their Escrow Claims. Thus, on May 16, 2007, after nearly a month had passed without receiving any materials or response from Angiotech, RoundTable advised the Escrow Agent by letter that Angiotech had breached the document and proof provisions of the Escrow Agreement and the Stock Purchase Agreement, and requested release of the Escrow Amount to RoundTable. (RoundTable's May 16, 2007 letter is attached hereto as Exhibit G.)

> **Answer**:    Angiotech admits that on or about May 16, 2007, RoundTable submitted a letter to LaSalle demanding that LaSalle pay RoundTable the $20 million plus interest or, alternatively, that LaSalle file an interpleader action to resolve the dispute. Angiotech further admits that a true and correct copy of the May 16, 2007 demand is attached to the Complaint as Exhibit G. To the extent the

allegations of Paragraph 27 purport to summarize the May 16, 2007 demand, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 27.

28.    On June 11, 2007, Angiotech again repeated their delay tactics, saying that they had put together "a binder of materials" which they were "aiming to have" sent to counsel for RoundTable "by the end of the week" of June 11, 2007.  Angiotech was unable to send the binder, they claimed, because of concerns involving "attorney/client privilege" for some of the materials.  The alleged sensitivity of some of the documents, Angiotech claimed, was the reason it was failing to abide by its contractual obligations. (Angiotech's June 11, 2007 email and RoundTable's response are attached hereto as Exhibit H.)

**Answer**:    Angiotech admits that it sent an email to counsel for RoundTable on June 11, 2007, and that a true and correct copy of that email is attached to the Complaint as Exhibit H.  Angiotech admits that the allegations of Paragraph 28 have accurately quoted a portion of the June 11, 2007 email.  To the extent the allegations of Paragraph 28 purport to summarize the email of June 11, 2007, that document speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds. Angiotech denies all remaining allegations of Paragraph 28.

29.    On June 20, 2007, Angiotech backtracked and claimed that all of the materials sought by RoundTable were confidential and privileged and, therefore,

Angiotech was unable to comply with RoundTable's request.  (Angiotech's June 20, 2007 response is attached hereto as Exhibit I.)  This claim was clearly false as the claims submitted by Angiotech must, by definition, relate back to conditions that existed at the AMI companies while AMI was still owned by RoundTable.

> **Answer**:       Angiotech admits that its counsel sent a letter to counsel for RoundTable on June 11, 2007, and that a true and correct copy of that letter is attached to the Complaint as Exhibit H.  To the extent the allegations of Paragraph 29 purport to summarize the June 11, 2007 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds.  Angiotech denies all remaining allegations of Paragraph 29.

30.      The claim of confidentiality was also a direct breach of the parties' agreements, which require Angiotech to factually substantiate its escrow claims.  There is no provision in the Agreements allowing Angiotech to avoid this requirement by claiming confidentiality.  Nor could a claim of privilege apply to the underlying evidence of a breach of a warranty or representation.  And no claim of confidentiality or privilege would cover every fact upon which Angiotech relies.  Angiotech's expressed concern for confidentiality was, in fact, a ruse to avoid explaining itself and its false escrow claims.

> **Answer**:       To the extent the allegations of Paragraph 30 purport to summarize the Stock Purchase Agreement or the Escrow Agreement, those agreements speak for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents.  Angiotech denies all remaining allegations of

17

Paragraph 30.

31.     In response, on June 22, 2007, RoundTable reminded Angiotech of its obligations to provide RoundTable with all documentation and other information in support of any claim for indemnification in a timely manner, and demanded that Angiotech comply with its contractual obligations.  (RoundTable's June 22, 2007 letter is attached hereto as Exhibit J.)

> **Answer**:     Angiotech admits that counsel for RoundTable sent counsel for Angiotech a letter on June 22, 2007, and that a true and correct copy of that letter is attached to the Complaint as Exhibit J.  To the extent the allegations of Paragraph 31 purport to summarize the June 22, 2007 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds.  Angiotech denies all remaining allegations of Paragraph 31.

32.     On June 27, 2007, RoundTable advised the Escrow Agent that Angiotech had failed to provide any materials in support of its claims and that the parties were at an impasse.  (RoundTable's June 27, 2007 letter is attached hereto as Exhibit K.)

> **Answer**:     Angiotech admits that counsel for RoundTable sent LaSalle a letter on June 27, 2007, and that a true and correct copy of that letter is attached to the Complaint as Exhibit K.  To the extent the allegations of Paragraph 32 purport to summarize the June 27, 2007 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Further answering, Angiotech admits that, due to RoundTable's refusal to

cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds. Angiotech denies all remaining allegations of Paragraph 32.

33.    July 3, 2007, pursuant to the terms of the Escrow Agreement, Escrow Agent LaSalle Bank filed an interpleader action in the Circuit Court of Cook County, Illinois (the "Illinois Court"). (LaSalle Bank's Complaint in Interpleader is attached hereto as Exhibit L.)

**Answer**:     Angiotech admits that on or about July 3, 2007, LaSalle filed an interpleader action ("Interpleader Action") in the Circuit Court of Cook County, Illinois ("Chicago Court"), and that a true and correct copy of that Complaint in Interpleader is attached to the Complaint as Exhibit L. To the extent the allegations of Paragraph 33 purport to summarize the Escrow Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 33.

34.    Following motion practice, on March 11, 2008, the Illinois Court granted Angiotech's motion to stay and motion to dismiss RoundTable's cross-claims for lack of jurisdiction. The Illinois Court therefore ordered the action stayed in Illinois and the parties to bring their dispute in New York. (The Illinois Court's order is attached hereto as Exhibit M.)

**Answer**:     Angiotech admits that, on March 11, 2008, the Chicago Court granted Angiotech's motion to stay the Interpleader Action and its motion to dismiss the cross-claims RoundTable had attempted to assert against Angiotech in the Interpleader Action. Angiotech further admits that a true and correct copy of

the Chicago Court's order granting Angiotech's motions is attached to the Complaint as Exhibit M. To the extent the allegations of Paragraph 34 purport to summarize the Chicago Court's order, that order speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 34.

35.     After nearly a year passed without Angiotech providing materials or information supporting and verifying any of its indemnification claims, on the eve of the Illinois Court's hearings on jurisdiction and summary judgment, Angiotech abandoned over a third of its total claim against the Escrow Account and agreed to release $6,512,319 in funds from the Escrow Account to RoundTable. (See Angiotech's February 21, 2008 letter attached hereto as Exhibit N.) After weeks of delay, Angiotech finally executed a Joint Letter of Direction allowing the release of the $6,512,319 to RoundTable. (The Joint Letter of Direction is attached hereto as Exhibit O.)

**Answer**:     Angiotech admits that its counsel sent a letter to counsel for RoundTable on February 21, 2008, and that a true and correct copy of that letter is attached to the Complaint as Exhibit N. Angiotech further admits that it executed a Joint Letter of Direction, and that a true and correct copy of that Joint Letter of Direction is attached to the Complaint as Exhibit O. To the extent the allegations of Paragraph 35 purport to summarize the February 21, 2008 letter or the Joint Letter of Direction, those documents speaks for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents. Further answering, Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding

Angiotech's claim to the escrow funds.  Angiotech denies all remaining allegations of Paragraph 35.

36.     Angiotech agreed to release $6,512,319 based upon Angiotech's "revised estimate" and overall reduction of the amount of escrow funds Angiotech sought in its Escrow Notice of Claim.  (See Exhibit N).

> **Answer**:     Angiotech admits that, as a part of its ongoing investigation and remediation, it developed a revised estimate of its claim and that it promptly advised RoundTable of that revised estimate and agreed to release escrow funds in excess of that revised estimate.  To the extent the allegations of Paragraph 36 purport to summarize the February 21, 2008 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 36.

37.     Angiotech, however, continues to withhold some of the escrow funds in violation of the Agreements, even assuming Angiotech's claims for indemnification are not barred because of its failure to comply with the claims procedures contained in the Agreements.  Specifically, Angiotech has increased the amount of Damages it asserts for Claims 5 and 6 by $2,164,371.  (*See* Ex. N.)  In addition, Angiotech is withholding a 20% "contingency reserve" of $2,202,274 in connection with the Damages it seeks for Claims 6 and 7.  *Id.*

> **Answer**:     Angiotech admits that it is entitled to the escrow funds that remain in LaSalle's custody.  Angiotech further admits that, as its investigation and remediation have progressed, its allocation of its damages has been further refined. Angiotech admits that the allegations of Paragraph 37 have accurately quoted a portion of the February 21, 2008 letter.  Angiotech denies that the individual line items listed in the Escrow Claim Notice or the revised estimate included in the February 21, 2008 letter constitute separate "claims."  To the extent the allegations of Paragraph 37 purport to summarize the Escrow Claim Notice or the February

21, 2008 letter, those documents speak for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents. Angiotech denies all remaining allegations of Paragraph 37.

38.    RoundTable advised Angiotech that these withholdings were not permitted under the Agreements, and demanded that Angiotech agree to release an additional $4,366,645 of the escrow funds. (See March 17, 2008 letter from RoundTable objecting to Angiotech's attempts to increase claim amounts attached hereto as Exhibit P.) As of the date of this filing, Angiotech has failed to agree to the release of the $4,366,645.

**Answer**:    Angiotech admits that counsel for RoundTable sent counsel for Angiotech a letter on Thursday, March 17, 2008, two business days before filing the Complaint, and that a true and correct copy of that letter is attached to the Complaint as Exhibit P. Further answering, Angiotech states that it is entitled to the escrow funds that remain in LaSalle's custody and, accordingly, has not agreed to release any further escrow funds.

39.    Despite Angiotech's concession that a large proportion of its original claims were groundless, Angiotech still refuses to provide any documentary support for any of its other claims, whether it be receipts for replacing raw materials, upgrading equipment, replacing a water system, proof of taxes paid to employees, or anything else, instead continuing to insist that such documents cannot be produced without a confidentiality agreement, in clear violation of Angiotech's obligations.

**Answer**:    Angiotech admits that, due to RoundTable's refusal to cooperate with Angiotech in good faith to facilitate the exchange of information regarding Angiotech's claim to the escrow funds in a manner that would preserve the sensitive, confidential, and often privileged, nature of those materials, Angiotech has not provided copies of supporting documentation to RoundTable regarding Angiotech's claim to the escrow funds. Angiotech denies all remaining allegations of Paragraph 39.

22

40.    Even if Angiotech is not barred from seeking indemnification due to its failure to comply with the procedures in the Agreements for the submission of claims against the Escrow Account, upon information and belief, Angiotech's claims against the Escrow Account have no merit.

**Answer**:    Angiotech denies the allegations of Paragraph 40.

41.    As the Escrow Agent, LaSalle Bank is required to invest the escrow funds as directed by Angiotech and RoundTable in Section 2(c) of the Escrow Agreement. *Id.* at 2(c).  Section 2(c) directs that the escrow funds be invested conservative investment options, resulting in a current rate of return of less than 5%.

**Answer**:    To the extent the allegations of Paragraph 41 purport to summarize the Escrow Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 41.

42.    As a result of Angiotech's submission of improper escrow claims against the Escrow Account, RoundTable has been denied the benefit and use of the escrow funds for almost a year.  If RoundTable had the benefit and use of the escrow funds for that period of time, RoundTable's rate of return on the escrow funds would have been substantially higher than the less than 5% rate of return that the escrow funds have experienced while in escrow.

**Answer**:    Angiotech admits that RoundTable has not had direct use of the escrow funds while those funds were held by LaSalle.  Angiotech denies all remaining allegations of Paragraph 42.

## COUNT I
### Breach of Contract: Unpaid Escrow Funds

43.    RoundTable realleges and incorporates by reference herein, the allegations contained in Paragraphs 1 through 42 above.

**Answer**:    Angiotech realleges and incorporates by reference its answers to the allegations contained in Paragraphs 1 through 42 above.

44.    RoundTable and Angiotech are parties to, and bound by, the Stock Purchase and Escrow Agreements.

**Answer**:    Angiotech admits that Angiotech and RoundTable are parties to the Stock Purchase Agreement. To the extent the allegations of Paragraph 44 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 44.

45.    RoundTable has performed all of its obligations set forth in the Stock Purchase and the Escrow Agreements.

**Answer**:    Angiotech denies the allegations of Paragraph 45.

46.    RoundTable has been entitled to the $20 million plus interest being held in the Escrow Account as of the close of the claims period on April 9, 2007. *See* Ex. B, §4(a).

**Answer**:    Angiotech denies the allegations of Paragraph 46.

47.    RoundTable would have received the $20 million plus interest on or about April 9, 2007, if Angiotech had not wrongfully claimed entitlement to the escrow funds in its Escrow Notice of Claims. *Id*. Angiotech agreed to release $6,512,319 of the escrow funds and a pro rata share of interest to RoundTable on March 14, 2007. The rest of the escrow funds and accumulated interest remain in the Escrow Account.

**Answer**:    Angiotech admits that RoundTable would have received the escrow funds if Angiotech had not submitted a claim to those funds. Angiotech further admits that it agreed to release $6,512,319 of the escrow funds when it determined, after investigation and remediation, that its damages were less than it originally calculated. Angiotech further admits that LaSalle retains the remaining escrow funds. Angiotech denies all remaining allegations of Paragraph 47.

48.     Angiotech's actions in this matter constitute breaches of Angiotech's

obligations under the Stock Purchase and the Escrow Agreements in the following ways:

A.      Angiotech failed to sufficiently demonstrate that it had incurred in excess of $2 million in aggregate Damages, as required under Section 9.4(a) of the Stock Purchase Agreement, thereby entitling Angiotech to pursue any claim for indemnity;

B.      Angiotech failed to notify RoundTable within ten days of becoming aware of each claim for indemnity, as required by Section 9.5(a) of the Stock Purchase Agreement;

C.      Angiotech's Escrow Notice of Claims was so vague and conclusory that it failed to constitute notice within 15 months of the closing date as required by Section 9.1(a)(i) of the Stock Purchase Agreement;

D.      Angiotech failed to timely provide RoundTable with all information and documentation necessary to support and verify all Damages for each claim submitted by Angiotech, as required by Section 9.5(a) of the Stock Purchase Agreement;

E.      Angiotech refused to comply with RoundTable's request for access to information and documents under Angiotech's control which RoundTable reasonably believed may be related to or supports Angiotech's claims for indemnity, as required by Section 9.5(a) of the Stock Purchase Agreement;

F.      Angiotech refused to comply with RoundTable's request to investigate and evaluate the notified claims, as required by Section 3(b) of the Escrow Agreement;

G.      Angiotech failed to make any attempt to resolve the parties' dispute in good faith within fifteen days from RoundTable's submission of its Notice of Objection, as required by Section 3(b) of the Escrow Agreement, and has refused in all respects to enter into a dialogue with RoundTable concerning the substance of its claims; and

H.      Angiotech has submitted claims in its Escrow Notice of Claims that are without merit, in whole or in part.

**Answer**:     Angiotech denies the allegations of Paragraph 48.

49.     Angiotech's actions also constitute breaches of the covenant of good faith and fair dealing that is implied in every contract entered into under New York law.

**Answer**:     To the extent that the allegations of Paragraph 49 constitute a legal conclusion, they require no answer.  Angiotech denies all remaining allegations of Paragraph 49.

50.    The Stock Purchase Agreement provides at Section 9.3 that Angiotech shall reimburse RoundTable for any and all damages and expenses incurred or arising out of a breach by Angiotech of any of the covenants or obligations described in the Stock Purchase Agreement.  (Ex. A at § 9.3.)

**Answer**:    To the extent the allegations of Paragraph 50 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 50.

51.    As a result of Angiotech's breaches of the Agreements, RoundTable has suffered Damages in the following ways:

A.    RoundTable has not received the $13,487,381 in remaining escrow funds;

B.    RoundTable has been and continues to be deprived the right to control the investment of the escrow funds that should have been released to RoundTable, resulting in a lower return on investment than RoundTable would have achieved;

C.    The escrow funds have been and continue to be depleted to cover the Escrow Agent's fees and costs to dissolve the Escrow Agreement; and

D.    RoundTable continues to incur attorney's fees and costs litigating against Angiotech to obtain the escrow funds.

**Answer**:    Angiotech denies that RoundTable has accurately stated the amount of remaining escrow funds.  Angiotech admits that RoundTable has not received the $13,487,681 in remaining escrow funds.  Angiotech admits that the escrow funds have been depleted by LaSalle's fees and costs.  Angiotech denies that any of the amounts alleged in Paragraph 51 constitute damages to which RoundTable is entitled.  Angiotech denies all remaining allegations in Paragraph 51.

WHEREFORE, PREMISES CONSIDERED, RoundTable prays that this Honorable Court enter judgment in favor of RoundTable and against Angiotech granting the following relief:

A.    Declare RoundTable is entitled to and award RoundTable the remainder of the escrow funds and any accumulated interest;

B.    Award RoundTable compensatory damages, as determined at trial;

C.    Award RoundTable attorney's fees and costs as provided by the Stock Purchase Agreement and by law;

D.    Award RoundTable pre-judgment and post-judgment interest as provided by law; and

E.    Award such further and other relief as this Honorable Court deems just and appropriate.

## COUNT II

### Breach of Contract: Improper Adjustment to Claim Amounts

52.    RoundTable realleges and incorporates by reference herein, the allegations contained in Paragraphs 1 through 42 above.

**Answer**:    Angiotech realleges and incorporates by reference its answers to the allegations contained in Paragraphs 1 through 42 above.

53.    RoundTable and Angiotech are parties to, and bound by, the Stock Purchase and Escrow Agreements.

**Answer**:    Angiotech admits that Angiotech and RoundTable are parties to the Stock Purchase Agreement.  To the extent the allegations of Paragraph 53 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents.  Angiotech denies all remaining allegations of Paragraph 53.

54.    RoundTable has performed all of its obligations set forth in the Stock Purchase and the Escrow Agreements.

**Answer**:    Angiotech denies the allegations of Paragraph 54.

55.    RoundTable has been entitled to the $20 million plus interest being held in the Escrow Account as of the close of the claims period on April 9, 2007.  See Ex. B, §4(a).

**Answer**:    Angiotech denies the allegations of Paragraph 55.

27

56.     RoundTable would have received the $20 million plus interest on or about April 9, 2007, if Angiotech had not wrongfully claimed entitlement to the escrow funds in its Escrow Notice of Claims. *Id.*

> **<u>Answer</u>**:     Angiotech admits that RoundTable would have received the escrow funds if Angiotech had not submitted a claim to those funds.  Angiotech denies all remaining allegations of Paragraph 56.

57.     Angiotech has now abandoned over a third of its total claim against the Escrow Account as unfounded and agreed to release $6,512,319 in funds from the Escrow Account and a *pro rata* share of interest to RoundTable.  (*See* Angiotech's February 21, 2008 letter attached hereto as Exhibit N.)  After weeks of delay, on March 14, 2008, Angiotech finally executed a Joint Letter of Direction allowing the release of the $6,512,319 in escrow funds to RoundTable.  (See Ex. O.)  The rest of the escrow funds and any accumulated interest remain in the Escrow Account.

> **<u>Answer</u>**:     Angiotech admits that its counsel sent a letter to counsel for RoundTable on February 21, 2008, which is attached to the Complaint as Exhibit N.  Angiotech further admits that it executed a Joint Letter of Direction, which is attached to the Complaint as Exhibit O.  Angiotech further admits that LaSalle retains the remaining escrow funds.  To the extent the allegations of Paragraph 57 purport to summarize the February 21, 2008 letter or the Joint Letter of Direction, those documents speaks for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents.  Angiotech denies all remaining allegations of Paragraph 57.

58.     On February 21, 2008, Angiotech provided RoundTable with its "updated" Escrow Notice of Claims demanding the remaining $13,487,681 in escrow funds. (See Exhibit N).

> **<u>Answer</u>**:     Angiotech admits that, as a part of its ongoing investigation and remediation, it developed a revised estimate of its claim and that it promptly

advised RoundTable of that revised estimate and agreed to release escrow funds in excess of that revised estimate. To the extent the allegations of Paragraph 58 purport to summarize the February 21, 2008 letter, that letter speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 58.

59.    The "updated" Escrow Notice of Claims reflects revisions Angiotech made to some of the claim amounts contained in its April 4 Escrow Notice of Claims. Angiotech's revisions violate the Agreements in two respects.

**Answer**:    Angiotech admits that, as its investigation and remediation have progressed, its allocation of its damages has been further refined. Angiotech denies that the individual line items listed in the Escrow Claim Notice or the revised estimate included in the February 21, 2008 letter constitute separate "claims." To the extent the allegations of Paragraph 59 purport to summarize the Escrow Claim Notice or the February 21, 2008 letter, those documents speak for themselves and Angiotech refers to the documents for a complete and accurate recitation of their contents. Angiotech denies all remaining allegations of Paragraph 37.

60.    First, Angiotech has increased the amount of Damages it seeks for Claims 5 and 6 by $2,164,371. (See Ex. N.) Second, Angiotech is withholding a 20% contingency of $2,202,274 in connection with the Damages it now seeks for Claims 6 and 7. *Id*. Together, these withholdings equal $4,366,645 of the remaining $13,487,681 in escrow funds.

**Answer**:    Angiotech denies that the individual line items listed in the Escrow Claim Notice or the revised estimate included in the February 21, 2008 letter constitute separate "claims." To the extent the allegations of Paragraph 60 purport to summarize the Escrow Claim Notice or the February 21, 2008 letter, those documents speak for themselves and Angiotech refers to the documents for a

complete and accurate recitation of their contents.  Angiotech denies all remaining
allegations of Paragraph 60.

61.      RoundTable advised Angiotech that these revisions violated the
Agreements and demanded that Angiotech agree to release an additional $4,366,645 in
escrow funds plus a *pro rata* share of any accumulated interest.  (See March 17, 2008
letter from RoundTable objecting to Angiotech's attempts to increase claim amounts
attached hereto as Exhibit P.)  As of the date of this filing, Angiotech has failed to agree
to the release of the $4,366,645.

> **Answer**:        Angiotech admits that counsel for RoundTable sent counsel for
> Angiotech a letter on Thursday, March 17, 2008, two business days before filing
> the Complaint, which is attached to the Complaint as Exhibit P.  Further
> answering, Angiotech states that it is entitled to the escrow funds that remain in
> LaSalle's custody and, accordingly, has not agreed to release any further escrow
> funds.  To the extent the allegations in Paragraph 61 purport to summarize the
> March 17, 2008 letter, that letter speaks for itself and Angiotech refers to the
> document for a complete and accurate recitation of its contents.  Angiotech denies
> all remaining allegations of Paragraph 61.

62.      Angiotech's actions in withholding $4,366,645 in escrow funds constitute
breaches of Angiotech's obligations under the Stock Purchase and the Escrow
Agreements in the following ways:

> A.      Angiotech seeks indemnity for increased Damages for Claims 5 and 6 in
> violation of Section 9.1(a) of the Stock Purchase Agreement, which
> prohibits Angiotech from submitting claims for indemnity after the
> expiration of the representations and warranties; and
>
> B.      Angiotech is withholding a 20% contingency in connection with the
> Damages it now seeks for Claims 6 and 7, in violation of the limitation in
> the Stock Purchase Agreement that Angiotech can only seek indemnity for
> substantiated "Damages" for claims submitted prior to the close of the
> claims period.

**Answer**:    Angiotech denies the allegations of Paragraph 62.

63.    Angiotech's actions also constitute breaches of the covenant of good faith and fair dealing that is implied in every contract entered into under New York law.

**Answer**:    To the extent that the allegations of Paragraph 63 constitute a legal conclusion, they require no answer.  Angiotech denies all remaining allegations of Paragraph 63.

64.    The Stock Purchase Agreement provides at Section 9.3 that Angiotech shall reimburse RoundTable for any and all damages and expenses incurred or arising out of a breach by Angiotech of any of the covenants or obligations described in the Stock Purchase Agreement.  (Ex. A at § 9.3.)

**Answer**:    To the extent the allegations of Paragraph 64 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 64.

65.    As a result of Angiotech's breaches of the Agreements, RoundTable has suffered Damages in the following ways:

A.    RoundTable has not received $4,366,645 of the remaining $13,487,381 in escrow funds;

B.    RoundTable has been and continues to be deprived the right to control the investment of the $4,366,645 in escrow funds that should have been released to RoundTable, resulting in a lower return on investment than RoundTable would have achieved;

C.    The escrow funds have been and continue to be depleted to cover the Escrow Agent's fees and costs to dissolve the Escrow Agreement; and

D.    RoundTable continues to incur attorney's fees and costs litigating against Angiotech to obtain the escrow funds.

**Answer**:    Angiotech denies that RoundTable has accurately stated the amount of remaining escrow funds.  Angiotech admits that RoundTable has not received $4,366,645 of the remaining escrow funds.  Angiotech admits that the escrow

funds have been depleted by LaSalle's fees and costs. Angiotech denies that any of the amounts alleged in Paragraph 65 constitute damages to which RoundTable is entitled. Angiotech denies all remaining allegations in Paragraph 65.

WHEREFORE, PREMISES CONSIDERED, RoundTable prays that this Honorable Court enter judgment in favor of RoundTable and against Angiotech granting the following relief:

A. Declare RoundTable is entitled to and award RoundTable $4,366,645 of the remaining $13,487,381 in escrow funds and a pro rata share of any accumulated interest;

B. Award RoundTable compensatory damages, as determined at trial;

C. Award RoundTable attorney's fees and costs as provided by the Stock Purchase Agreement and by law; and

D. Award RoundTable pre-judgment and post-judgment interest as provided by law; and

E. Award such further and other relief as this Honorable Court deems just and appropriate.

## COUNT III

### Breach of Contract: Tax Refunds

66. RoundTable realleges and incorporates by reference herein, the allegations contained in Paragraphs 1 through 42 above.

**Answer**:    Angiotech realleges and incorporates by reference its answers to the allegations contained in Paragraphs 1 through 42 above.

67. RoundTable and Angiotech are parties to, and bound by, the Stock Purchase Agreement.

**Answer**:    Angiotech admits that Angiotech and RoundTable are parties to the Stock Purchase Agreement. To the extent the allegations of Paragraph 67 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its

contents. Angiotech denies all remaining allegations of Paragraph 67.

68.    RoundTable has performed all of its obligations set forth in the Stock Purchase Agreement.

**Answer**:    Angiotech denies the allegations of Paragraph 68.

69.    The Stock Purchase Agreement provides that Angiotech has an obligation to turn over to RoundTable certain AMI tax refunds received by Angiotech as a result of pre-closing tax events. Angiotech, despite demands, refused to pay such refunds to RoundTable in breach of the Stock Purchase Agreement.

**Answer**:    Angiotech admits that RoundTable has made demands for certain tax refunds. To the extent the allegations of Paragraph 69 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 69.

70.    Angiotech's actions also constitute a breach of the covenant of good faith and fair dealing that is implicitly incorporated into every contract entered into under New York law.

**Answer**:    To the extent that the allegations of Paragraph 70 constitute a legal conclusion, they require no answer. Angiotech denies all remaining allegations of Paragraph 70.

71.    Ultimately, Angiotech was compelled to concede that its position was unlawful. The federal tax refund sums that had been held by Angiotech were then reluctantly paid over to RoundTable but not until RoundTable had spent considerable funds evaluating, negotiating and preparing to litigate its rights to the funds. State tax refunds, however, remain unpaid by Angiotech in an approximate amount of $136,424.80.

**Answer**:    Angiotech admits that it concluded that RoundTable had a valid claim to certain tax refunds. Angiotech denies all remaining allegations of

Paragraph 71.

72.    The Stock Purchase Agreement provides at Section 9.3 that Angiotech shall reimburse RoundTable for any and all damages and expenses incurred or arising out of a breach by Angiotech of any of the covenants or obligations described in the Stock Purchase Agreement.  (Ex. A at § 9.3.)

> **Answer**:    To the extent the allegations of Paragraph 72 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and Angiotech refers to the document for a complete and accurate recitation of its contents. Angiotech denies all remaining allegations of Paragraph 72.

73.    As a result of Angiotech's breaches of the Agreements, RoundTable has suffered Damages in the following ways:

A.    RoundTable has not received $136,424.80 in state tax refunds;

B.    RoundTable has been and continues to be deprived the right to invest the approximately $136,424.80 of state tax refunds that should have been paid to RoundTable, resulting in a lower return on investment than RoundTable would have achieved; and

C.    RoundTable continues to incur attorney's fees and costs litigating against Angiotech to obtain the escrow funds.

> **Answer**:    Angiotech admits that RoundTable has not received the $136,474.80 in state tax refunds.  Angiotech denies that any of the amounts alleged in Paragraph 73 constitute damages to which RoundTable is entitled.  Angiotech denies all remaining allegations in Paragraph 73.

WHEREFORE, PREMISES CONSIDERED, RoundTable prays that this Honorable Court enter judgment in favor of RoundTable and against Angiotech granting the following relief:

A.    Declare that RoundTable is entitled to the $136,424.80 in the state tax refunds;

B.    Award RoundTable compensatory damages, as determined at trial;

C.     Award RoundTable attorney's fees and costs as provided by the Stock Purchase Agreement and by law;

D.     Award RoundTable pre-judgment and post-judgment interest as provided by law; and

E.     Award such further and other relief as this Honorable Court deems just and appropriate.

## ANGIOTECH'S AFFIRMATIVE DEFENSES

74.    Angiotech incorporates its responses contained in Paragraphs 1–73 above.

75.    RoundTable's Complaint fails to state a claim on which relief can be granted.

76.    RoundTable is not entitled to recover because it was in breach of its obligations under the contracts between the parties.

77.    Angiotech is not obligated to perform because RoundTable failed to cooperate in good faith and interfered with Angiotech's performance.

78.    RoundTable cannot recover because it failed to take reasonable actions to mitigate its alleged damages.

79.    RoundTable cannot recover because it caused its own alleged damages.

80.    RoundTable does not approach this suit with clean hands and therefore cannot receive equitable relief.

81.    RoundTable is estopped from seeking to enforce the contracts against Angiotech.

82.    Angiotech's performance is excused by impossibility or impracticality.

83.    Angiotech reserves the right to assert additional affirmative defenses based on information later discovered.

WHEREFORE, Angiotech prays that the relief requested by RoundTable be denied totally and that the causes of action be dismissed with prejudice in favor of Angiotech.

## ANGIOTECH'S COUNTERCLAIMS

## FACTUAL ALLEGATIONS

### The Contracts at Issue

84.     Angiotech and RoundTable are parties to the Stock Purchase Agreement.

85.     Pursuant to the Stock Purchase Agreement, Angiotech purchased all of the outstanding shares of AMIH from RoundTable and the other parties to the Stock Purchase Agreement.

86.     Pursuant to Article III of the Stock Purchase Agreement, RoundTable made a number of representations and warranties to Angiotech regarding AMIH.

87.     In § 3.10 of the Stock Purchase Agreement, RoundTable represented that "[a]ll manufacturing operations of [AMIH] are being conducted in substantial compliance with applicable good manufacturing practices"; that AMIH has "complied in all material respects with all statutes, laws, ordinances, rules, regulations[,] standard, requirement, administrative ruling, policy, Order, principal of common law, legal doctrine, code, treaty or process" of applicable government entities; that products subject to the jurisdiction of the FDA are "being developed, manufactured, held and distributed in substantial compliance with all applicable requirements under the FDCA," and other related representations regarding the facilities' compliance with legal and regulatory requirements.  Compl. Ex. A § 3.10.

88.     In § 3.19 of the Stock Purchase Agreement, RoundTable represented that AMIH had no "Liabilities or obligations of any nature (and there is no basis for any present or future Action against [AMIH] giving rise to any Liability)" except certain disclosed categories of liabilities.  *Id*. § 3.19.

89.     In reliance on these representations, Angiotech paid approximately $785 million to RoundTable to purchase the outstanding shares of AMIH.  Section 2.4 of the Stock Purchase Agreement required Angiotech to deposit $20 million of the purchase price into an escrow account.

90.     In order to effectuate § 2.4 of the Stock Purchase Agreement, Angiotech and RoundTable, along with LaSalle as escrow agent, entered into the Escrow Agreement.  Angiotech deposited the $20 million required by § 2.4 of the Stock Purchase Agreement with LaSalle consistent with the terms of the Stock Purchase Agreement.

91.     The Escrow Agreement permits LaSalle to file an interpleader action under certain circumstances in order to relieve LaSalle of potential liability in the event of a dispute between Angiotech and RoundTable regarding the parties' entitlement to the escrow funds.  Compl. Ex. B § 5(a).  The Escrow Agreement also permits LaSalle to withhold from the escrow funds "an amount sufficient to compensate itself for all reasonable costs, expenses and charges, and reasonable attorneys' fees actually incurred by it due to the interpleader action."  *Id.*  Finally, the Escrow Agreement provides that Angiotech and RoundTable must contribute equally to LaSalle's compensation for its services. *Id.* § 8.

92.     RoundTable was very pleased with the transaction and with Angiotech. RoundTable's founder and managing partner described Angiotech as "an outstanding partner to work with on this transaction."  RoundTable also admitted that the transaction with Angiotech "represent[ed] a return in excess of seven times RoundTable's invested equity capital."  Although Angiotech was unaware at the time, part of the reason was that, contrary to its representations and warranties to Angiotech, RoundTable had not been operating the facilities in full compliance with regulatory requirements.

**Angiotech's Escrow Claim Notice and RoundTable's Reaction**

93.     The Escrow Agreement requires Angiotech to submit a notice of any claim for damages in substantially the form included as Exhibit B to the Escrow Agreement. Compl. Ex. B § 3(a).  The Escrow Agreement requires the parties to attempt to resolve any disputes over the escrow funds in good faith.  *Id.* § 3(b).

94.     Angiotech timely submitted its Escrow Claim Notice on April 4, 2007. That Escrow Claim Notice was substantially in the form required by the Escrow

37

Agreement and set forth Angiotech's claim to all of the escrow funds held by LaSalle because the aggregate damages Angiotech had suffered as a result of RoundTable's breach of its representations and warranties exceeded the amount of the escrow funds held by LaSalle. Angiotech specifically advised LaSalle and RoundTable that it "believe[d] in good faith that the Requested Funds are a reasonable estimate of the amount to which [Angiotech was] entitled." Compl. Ex. C.

95.     Exhibit A to the Escrow Claim Notice included a description of the damages Angiotech had suffered as a result of RoundTable's breach of its representations and warranties regarding AMIH. There were two broad categories of damages. First, Angiotech suffered damages due to liabilities that RoundTable had failed to disclose in violation of its representation and warranty that AMIH had no liabilities other than specified categories of liabilities contained in § 3.19 of the Stock Purchase Agreement. Second, Angiotech suffered damages due to the investigation and remediation costs Angiotech incurred in bringing the facilities into compliance with applicable legal and regulatory requirements because RoundTable had falsely represented and warranted that those facilities were in compliance when, in fact, they were not.

96.     RoundTable immediately set out to prevent Angiotech from recovering any of the escrow funds, despite Angiotech's contractual right to those funds as a result of RoundTable's breach of its representations and warranties regarding AMIH. Even though RoundTable claims that it does not have information about the underlying basis for Angiotech's claim, RoundTable immediately took an unsubstantiated position regarding that claim. In its Notice of Objection, RoundTable declared that Angiotech's claim was "without merit" and not "timely made." Compl. Ex. D. Although RoundTable complains, on the one hand, that Angiotech's Escrow Claim Notice did not provide sufficient detail, RoundTable's own Notice of Objection is even less descriptive. *Id*.

97.     Contrary to the letter and spirit of the Escrow Agreement, RoundTable made no attempt whatsoever to discuss the claim with Angiotech. Instead, it submitted

its Notice of Objection without making any effort to address these issues with Angiotech. Only after objecting to Angiotech's entire claim as "without merit" and not "timely made," did RoundTable make any attempt to address the claim with Angiotech.

98.    RoundTable first contacted Angiotech about the Escrow Claim Notice on April 16, 2007.  Compl. Ex. E.  It sent a letter declaring that it had not breached any representations or warranties.  *Id.*  It acknowledged that it had an obligation under the Escrow Agreement to work with Angiotech in good faith to resolve these issues.  *Id.*  However, it declared that Angiotech was not in compliance with § 9.5 of the Stock Purchase Agreement.  *Id.*

99.    RoundTable's interpretation of the Stock Purchase Agreement and the Escrow Agreement to require extensive substantiation of Angiotech's claim to be contained in the Escrow Claim Notice was both incorrect and unreasonable.  The Escrow Claim Notice provided a sufficient amount of detail and substantially complied with the requirements of the Escrow Agreement.

100.    RoundTable went on to make a series of excessive demands for information from Angiotech, including all relevant documents and data and also including detailed information about any person, "whether or not they are employed by Angiotech," who has knowledge of the issues addressed in Angiotech's Escrow Claim Notice and a description of the knowledge they possessed.  Compl. Ex. E.  RoundTable also demanded a time that it could be granted general access to the books and records of Angiotech.  *Id.*  Given the type of damages at issue, it was not possible or practicable for Angiotech to provide the materials RoundTable demanded in a short amount of time, even absent concerns regarding preserving the sensitive, confidential, and often privileged, nature of those materials.

101.    About one week later, Angiotech responded via letter and informed counsel for RoundTable that it was "working to gather" all relevant documents.  Compl. Ex. F.

**RoundTable Pushes LaSalle to File an Interpleader,
Increasing the Costs for Both Parties**

102.    On May 16, 2007, without any further attempt to communicate with
Angiotech, RoundTable demanded that LaSalle release all of the escrow funds to
RoundTable.  In the alternative, RoundTable demanded that LaSalle file an interpleader
action.  Compl. Ex. G.

103.    Angiotech attempted to work with RoundTable.  Angiotech wrote an email
to counsel for RoundTable on June 11, 2007.  Compl. Ex. H.  Angiotech proposed that
the parties work together to determine how the funds should be distributed.  *Id.*
Angiotech specifically informed RoundTable that such a course of action would "avoid
the necessity of an interpleader action and the associated costs," and invited
RoundTable's thoughts on this proposal.  *Id.*

104.    RoundTable refused to cooperate and would not even discuss asking
LaSalle to delay filing the interpleader action until it received claim substantiation
materials.  Compl. Ex. H.

105.    On June 27, 2007, RoundTable again wrote to LaSalle and again asked
LaSalle to file an interpleader action.  Compl. Ex. K.

106.    LaSalle complied with RoundTable's repeated demands and filed the
Interpleader Action on July 3, 2007.  Compl. Ex. L.

107.    Because the Escrow Agreement obligates Angiotech and RoundTable to
pay the attorneys fees and costs that LaSalle incurs, RoundTable's actions directly
increased the costs to both parties.

**RoundTable Breaches Its Agreement to Litigate Disputes in New York and
Unnecessarily Increases the Parties' Costs**

108.    RoundTable seized on LaSalle's Interpleader Action as an opportunity to
avoid its contractual obligation to litigate disputes with Angiotech in the New York
courts.  When RoundTable answered LaSalle's Complaint in Interpleader, it also asserted
cross claims against Angiotech alleging breach of contract claims similar to the claims it

40

alleges in this Complaint.  A true and correct copy of RoundTable's Answer and Cross-Claim is attached as Exhibit 1.  RoundTable's attempt to assert these claim in the Chicago Court, as well as RoundTable's actions in that litigation, directly increased the costs of resolving the escrow claim for both parties and served to further delay the ultimate resolution of their respective entitlement to the escrow funds.

109.    On August 24, 2007, Angiotech wrote to RoundTable regarding the cross claims RoundTable had attempted to assert against Angiotech and asked RoundTable to dismiss its cross claims voluntarily.  A true and correct copy of Angiotech's August 24, 2007 letter is attached as Exhibit 2.  Angiotech reminded RoundTable that "Section 11.6(a) of the Stock Purchase Agreement requires any claims to be pursued in the New York state courts, or the federal courts situated in the state of New York."  *Id*.  Angiotech further informed RoundTable that, consistent with the plain language of the Stock Purchase Agreement, "the Cook County Circuit Courts lack jurisdiction over RoundTable's cross-claims."  *Id*.  Angiotech asked RoundTable to "[p]lease let us know if you will agree to voluntarily dismiss, without prejudice, your cross-claims against Angiotech so that Angiotech can avoid the necessity of filing a motion to dismiss."  *Id.*

110.    RoundTable refused.  A true and correct copy of RoundTable's August 28, 2007 letter is attached as Exhibit 3.  It claimed that its cross claims were compulsory, *id*., despite the fact that there is no such thing under Illinois law and the contrary language of the Stock Purchase Agreement.  Thus, Angiotech was forced to prepare and file a motion to dismiss, again increasing the costs of resolving the entitlement to the escrow funds and delaying the ultimate resolution of the real dispute between the parties.

111.    Despite RoundTable's recalcitrance, Angiotech attempted to work with RoundTable to minimize the costs of the Interpleader Action.  Upon receiving RoundTable's Answer and Cross Claims, Angiotech noted that all parties agreed that LaSalle "should be permitted to pay the funds it holds into the registry of the Court."  Ex. 2.  Angiotech pointed out that this would not benefit any of the parties or the Court

and suggested that all parties would benefit from simply permitting LaSalle to retain the funds and continue to manage them. *Id.* Angiotech further explained that, because Angiotech and RoundTable were the true interested parties, LaSalle did not need to be actively involved in the litigation once an order was in place allowing it to continue holding the funds. *Id.* Angiotech provided RoundTable with a draft order along those lines and notified RoundTable that LaSalle did not object to the order. *Id.*

112.    Again, RoundTable refused. It demanded that LaSalle remain a party to the action before it would even discuss having LaSalle retain the funds. Ex. 3.

113.    On August 28, 2007, RoundTable served voluminous discovery requests on Angiotech.

114.    Angiotech again responded in the spirit of cooperation. A true and correct copy of Angiotech's August 29, 2007 letter is attached as Exhibit 4. It provided RoundTable with a revised order permitting LaSalle to continue to hold the escrow funds while the parties resolved their entitlement to those funds. *Id.* It also asked RoundTable to agree to a stay of discovery until the Chicago Court ruled on Angiotech's motion to dismiss because that motion went to the jurisdiction of the court and, if granted, would result in a dismissal of all RoundTable's cross claims. *Id.*

115.    RoundTable responded that it would take the issue "under consideration." A true and correct copy of RoundTable's August 30, 2007 email is attached as Exhibit 5.

116.    On August 30, 2007, despite the fact that a motion to dismiss was pending that would result in dismissal of RoundTable's cross claims and despite the fact that Angiotech had not yet answered RoundTable's cross claims because of that pending motion, RoundTable filed a motion for summary judgment, seeking all of the escrow funds. A true and correct copy of RoundTable's Motion for Summary Judgment is attached as Exhibit 6.

117.    On August 31, 2007, the Chicago Court set a briefing schedule and hearing dates for the pending motions and stayed all discovery until the hearing on the motion to

dismiss.  A true and correct copy of the Chicago Court's August 31, 2007 order is attached as Exhibit 7.

118.   On September 5, 2007, Angiotech wrote to RoundTable again.  A true and correct copy of Angiotech's September 5, 2007 letter is attached as Exhibit 8.  Angiotech asked whether RoundTable would agree to the revised draft order it had provided permitting LaSalle to hold the escrow funds.  *Id.*  It also stated:  "Thus far, you have provided no indication as to whether RoundTable will reconsider its position and either agree to the draft we proposed or provide us with suggested revisions."  *Id.*

119.   On September 12, 2007, RoundTable responded to Angiotech.  A true and correct copy of RoundTable's September 12, 2007 email is attached as Exhibit 9. RoundTable provided a new draft order permitting LaSalle to hold the escrow funds, but that draft specifically required that LaSalle continue to be "served with all pleadings and treated in every way as a party."  *Id.*

120.   On September 20, 2007, Angiotech again attempted to resolve the disagreements between the parties in a manner that minimized unnecessary expense.  A true and correct copy of Angiotech's September 20, 2007 letter is attached as Exhibit 10. Angiotech noted the new draft order RoundTable had provided "seems only to serve to increase the burden on LaSalle of this action and, consequently, increase the amount of attorneys fees that both Angiotech and RoundTable will be required to pay for LaSalle's participation."  *Id.*  Nonetheless, Angiotech indicated that it would still consider agreeing if "RoundTable has a valid reason for requiring this level of participation from LaSalle." *Id.*

121.   RoundTable did not respond.

122.   On November 5, 2007, Angiotech again wrote to RoundTable.  A true and correct copy of Angiotech's November 5, 2007 letter is attached as Exhibit 11. Angiotech again asked for RoundTable's response to the issues Angiotech raised

regarding the proposed order. *Id.* Angiotech asked RoundTable to "please advise as to when RoundTable will have a substantive response on these issues." *Id.*

123. RoundTable did not respond.

124. After additional delays in the proceedings caused by RoundTable's actions, the Chicago Court agreed that RoundTable's position lacked merit. On March 11, 2008, it granted Angiotech's motion to stay the Interpleader Action and it granted Angiotech's motion to dismiss RoundTable's cross claims because Angiotech and RoundTable had agreed to litigate those claims in New York and New York only. Compl. Ex. M.

**Angiotech Attempts to Cooperate with RoundTable to Facilitate the Exchange of Claim Substantiation Materials, but RoundTable Stonewalls**

125. Angiotech has consistently attempted to work with RoundTable to facilitate the exchange of claim substantiation materials. Despite RoundTable's obligation under § 3(b) of the Escrow Agreement to attempt to resolve disputes over entitlement to the escrow funds in good faith and RoundTable's general obligation of good faith and fair dealing, Angiotech's efforts have been met with unreasonable opposition or outright stonewalling at every turn.

126. Angiotech wrote an email to counsel for RoundTable on June 11, 2007. Compl. Ex. H. Angiotech indicated that, although it had assembled materials for RoundTable in support of Angiotech's claim, it was "having difficulty" with how to provide the materials to RoundTable without undermining the confidentiality of those materials. *Id.* Angiotech specifically informed RoundTable that the materials included highly sensitive documents regarding quality system problems at the facilities. *Id.* Angiotech invited a dialogue with RoundTable about how to share those materials in a manner that would not undermine confidentiality. *Id.*

127. RoundTable refused to cooperate. Instead, counsel for RoundTable ignored Angiotech's request and provided no suggestion regarding preserving the confidentiality of sensitive documents. Compl. Ex. H.

128.    Angiotech turned to outside counsel for assistance and again attempted to open the lines of communication with RoundTable about the claim support materials on June 20, 2007.  Compl. Ex. I.  Counsel for Angiotech wrote to counsel for RoundTable and informed RoundTable that "[a]s has been communicated to you previously, a number of the document requests RoundTable has made seek confidential and privileged materials of a highly sensitive nature, in particular but not limited to materials addressing quality control and quality assurance issues."  *Id.*  Angiotech informed RoundTable that it was exploring "what methods are available to maintain the confidential and/or privileged status of these documents."  *Id.*

129.    RoundTable's response, again, was less than cooperative.  It simply demanded that Angiotech provide it with all the requested documentation.  Compl. Ex. J.  It made no effort to work with Angiotech to find a solution to the problem.

130.    Angiotech replied, again notifying RoundTable that it was "exploring methods to provide you with appropriate documentation . . . while simultaneously preserving the confidential and privileged nature of certain materials."  A true and correct copy of Angiotech's June 22, 2007 letter is attached as Exhibit 12.

131.    On August 24, 2007, Angiotech proposed that RoundTable and Angiotech enter into a basic confidentiality agreement to "protect sensitive claim support materials from disclosure."  Ex. 2.  Angiotech attached a draft agreement for RoundTable's "review and consideration," and indicated that when the "agreement is in place, we can begin providing claim support materials to RoundTable."  *Id.*

132.    RoundTable responded and disclaimed "any interest" in the confidentiality agreement that Angiotech proposed.  Ex. 3.

133.    On August 29, 2007, Angiotech attempted to continue to negotiate with RoundTable regarding an appropriate confidentiality agreement.  Ex. 4.  It assured RoundTable that it would not designate materials as confidential unless it had a good faith basis for doing so, and informed RoundTable that the draft agreement it had

45

provided already excluded documents that would not qualify as confidential. *Id.*
Angiotech also pointed out that the draft agreement would not restrict the parties' ability
to seek discovery. *Id.* Angiotech told RoundTable that it had "proposed the draft
confidentiality agreement in an attempt to facilitate the exchange of claim support
materials." *Id.* Angiotech asked RoundTable to "reconsider your position and either
agree to the draft Angiotech has proposed or provide us with suggested revisions to
address any lingering concerns you may have over the scope of the agreement so that we
can proceed to address the merits of the parties' dispute." *Id.*

134.    Even though the Chicago Court had, by this time, stayed all discovery,
Angiotech nonetheless continued to attempt to work with RoundTable to facilitate an
informal exchange of claim support documentation.

135.    On September 20, 2007, having received no response from RoundTable
regarding any method to allow Angiotech to provide claim substantiation materials
without compromising confidentiality, Angiotech again wrote RoundTable. Ex. 10.
Angiotech noted that "it has been two weeks since we requested that RoundTable
reconsider its blanket opposition to a confidentiality agreement to allow Angiotech and
RoundTable to share sensitive claim support materials. We have received no response
whatsoever from RoundTable regarding this matter, despite RoundTable's purported
interest in receiving this information." *Id.* Angiotech also informed RoundTable that

> [a]t this point, we have little choice but to conclude that
> RoundTable's opposition to a reasonable confidentiality
> agreement is a litigation tactic, particularly because such a
> confidentiality agreement is in the interest of both Angiotech
> and RoundTable. As Angiotech has previously indicated, the
> claim support documentation contains sensitive, privileged,
> and confidential information, and, at least with respect to a
> large portion of these materials, it is not in RoundTable's
> interest to undermine the confidentiality of these documents.
> Instead, the documents reflect on the poor management
> practices and systems in place during the time that the
> relevant facilities were owned and managed by RoundTable

(and, of course, Angiotech's efforts to bring the facilities into compliance with regulatory standards).

*Id.*

136.    RoundTable provided no response.

137.    On November 5, 2007, Angiotech again wrote to RoundTable. Ex. 11. Angiotech requested the courtesy of a response from RoundTable to Angiotech's request that RoundTable reconsider its blanket opposition to a confidentiality agreement. *Id.* Angiotech asked RoundTable to "please advise as to when RoundTable will have a substantive response on these issues." *Id.*

138.    Although RoundTable was clearly attempting to frustrate Angiotech's ability to recover escrow funds it was due, Angiotech continued to work diligently to fully investigate the extent to which RoundTable breached its representations and warranties in the Stock Purchase Agreement. Because a number of the breaches related to the facilities' compliance with various regulatory requirements, this investigation uncovered problems that have required extensive remediation. The necessary work has been both time consuming and expensive. In sum, Angiotech discovered that RoundTable permitted the AMIH facilities to operate despite the fact that those facilities were not in compliance all with regulatory requirements and that RoundTable falsely represented to the contrary in connection with the sale of AMIH to Angiotech.

139.    This investigation and remediation has required substantial time and effort from Angiotech, and it is still ongoing. However, in the spirit of good faith, Angiotech informed RoundTable on February 21, 2008, that it was confident enough in its current estimates of its damages that it was willing to release $6,512,319 of the escrow funds to RoundTable. Compl. Ex. N. Contrary to RoundTable's assertion, this did not mean that Angiotech's original estimates were "unlawful" or otherwise unwarranted. Instead, the amount of remediation required to bring the facilities—which are numerous and scattered across the globe—into compliance with the representations and warranties made by

RoundTable was substantial.  As Angiotech specifically informed RoundTable in its Escrow Claim Notice, that notice constituted Angiotech's best, good faith, estimate of its damages.  Compl. Ex. C.

140.   In the same February 21, 2008 letter, Angiotech made one last attempt to open dialogue with RoundTable regarding an appropriate confidentiality agreement.  It informed RoundTable that "Angiotech still wishes to work with RoundTable to enter into a confidentiality agreement that would allow Angiotech to share with RoundTable confidential, privileged, and sensitive materials regarding" Angiotech's ongoing remediation efforts.  Compl. Ex. N.  Angiotech further stated:  "In the absence of such an agreement, Angiotech has no choice but to await the commencement of discovery in an appropriate forum, so that it may provide RoundTable with this remediation material pursuant to an appropriate protective order."  *Id*.  Angiotech again invited RoundTable to discuss these matters further.  *Id.*  To date, RoundTable has not responded to this invitation.

141.   In sum, Angiotech made every effort to work with RoundTable to find an acceptable way to produce claim support documentation to RoundTable in a manner that would not undermine the confidentiality of those documents unnecessarily.  At every turn, RoundTable refused to work with Angiotech in good faith.  Instead, it is clear that RoundTable was hoping to argue, as it has in its Complaint, that Angiotech's failure to provide claim support documentation constituted a breach of contract on the one hand, while simultaneously taking every action it could to prevent Angiotech from being able to provide claim support documentation in a manner that did not undermine the confidentiality of the claim support documentation unnecessarily.  Apparently, RoundTable's strategy was to force Angiotech to choose between providing the documentation and risking damage by disclosure or refusing to provide documentation and risking loss of its claim to the escrow funds.

**RoundTable Takes Aggressive and Unfounded Positions Regarding the Parties'
Agreements, While Angiotech Attempts to Work with RoundTable in Good Faith**

142.    Angiotech has, at all times, acted in good faith to effectuate the purpose of
the agreements and the parties' intent.

143.    RoundTable, on the other hand, has not.  RoundTable has consistently
taken unreasonable and unfounded positions regarding the interpretation of the
agreements between the parties and made unreasonable and excessive demands upon
Angiotech that are inconsistent with the parties' obligations under the agreements.
RoundTable's actions in this regard served only to increase the burden and costs on
RoundTable itself, on Angiotech, and on LaSalle.

144.    In addition to the actions described above, on September 11, 2007,
RoundTable wrote LaSalle bank a letter demanding that LaSalle release all of the interest
accrued on the account.  A true and correct copy of RoundTable's September 11, 2007
letter is attached as Exhibit 13.  RoundTable's demand was based on an unfounded view
of the Escrow Agreement and the Escrow Claim Notice.

145.    On September 12, 2007, Angiotech sent a letter to LaSalle objecting to
RoundTable's request for all of the interest.  A true and correct copy of Angiotech's
September 12, 2007 letter is attached as Exhibit 14.  Angiotech explained that, pursuant
to § 10(a) of the Escrow Agreement, the interest is distributed within 30 days of the
release of the escrow funds automatically.  *Id.*  The Escrow Agreement does not require
either party to make a specific claim for the interest to which they would be entitled
based on the portion of the escrow funds that they ultimately receive.  *Id.*

146.    Moreover, when Angiotech determined, after additional investigation and
remediation, that its total damages would be less than the amount included in the Escrow
Claim Notice, Angiotech promptly informed RoundTable of its determination and of its
intention to instruct LaSalle to release the excess escrow funds.  *See* Compl. Ex. N.

147.    RoundTable immediately demanded that Angiotech release the interest on those funds as well.  Despite the fact that the Escrow Agreement does not require LaSalle to release the accumulated interest until the final distribution of the escrow funds, *see* Ex. 14, Angiotech agreed to release a pro rata portion of the interest.

148.    Angiotech then worked with RoundTable to negotiate the form of the Joint Letter of Direction that is attached to the Complaint as Exhibit O.  Contrary to RoundTable's assertion, Angiotech did not delay this process and instead worked with RoundTable to reach agreement, which was complicated by RoundTable's demand for distribution of the interest.  Also contrary to RoundTable's contention, Angiotech took only days to sign the joint letter of direction once the parties had finalized the language.

### RoundTable Surreptitiously Uses Angiotech's Property

149.    One of the AMIH assets transferred to Angiotech as a result of the Stock Purchase Agreement was a lease for office space at Suite 208, 272 E. Deerpath Road in Lake Forest, Illinois.

150.    After AMIH was sold to Angiotech, Angiotech began making the required lease payments on the office space.

151.    Unbeknownst to Angiotech, RoundTable continued to use and benefit from that office space at Angiotech's expense.

152.    In March 2008, Angiotech learned that RoundTable was occupying the office space without providing Angiotech with any compensation.

153.    Although the suite entrance listed AMIH as well, the office suite was being used by Avalign Technologies and Aspen Surgical Products.  It was not being used by AMIH.  On information and belief, both Avalign Technologies and Aspen Surgical Products are companies in which RoundTable has a controlling interest.

### RoundTable Refuses to Reimburse Angiotech for Tax Assessments

154.    On September 6, 2007, Angiotech wrote to RoundTable regarding the tax overpayments.  A true and correct copy of Angiotech's September 6, 2007 letter is

attached as Exhibit 15.  Angiotech agreed that RoundTable was entitled to the $136,424.80, but informed RoundTable that Angiotech had paid $184,769 in taxes for the period before Angiotech purchased AMIH.  *Id.*  Under the Stock Purchase Agreement, RoundTable had an obligation to reimburse Angiotech for this amount, resulting in a net total due to Angiotech of $48,253.97.  *Id*.

155.    On September 13, 2007, RoundTable wrote a letter to Angiotech.  A true and correct copy of RoundTable's September 13, 2007 letter is attached as Exhibit 16.  It demanded documentation regarding Angiotech's claim for $184,769.  *Id.*

156.    On November 27, 2007, Angiotech provided counsel for RoundTable with the requested documentation regarding the tax refunds.  A true and correct copy of Angiotech's November 27, 2007 letter, without the attachments, is attached as Exhibit 17.  It also noted that the amount owing from RoundTable was actually $198,806.  *Id.*

157.    On December 17, 2007, RoundTable responded and again demanded that Angiotech pay the full amount.

158.    RoundTable has refused to pay the amounts it owes to Angiotech for the taxes Angiotech paid for periods when RoundTable owned AMIH.

### Count I

### Breach of Contract

159.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84–158 above.

160.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

161.    Angiotech performed or substantially performed all material obligations of the contract.

162.    RoundTable breached the representations and warranties contained in Article III of the Stock Purchase Agreement relating to undisclosed liabilities and the facilities' compliance with legal and regulatory requirements.

163.   As a result of RoundTable's breach, Angiotech suffered damages, including the amounts necessary to remediate the AMIH facilities and bring them into compliance with applicable regulatory standards, and the amounts necessary to satisfy the liabilities that RoundTable failed to disclose.

164.   As permitted by the Stock Purchase Agreement, Angiotech made a claim against the escrow fund to recover the damages resulting from RoundTable's breach.

165.   Instead of working with Angiotech to determine which of the parties was entitled to the escrow funds as it was obligated to do by the Escrow Agreement and its general duty of good faith and fair dealing, RoundTable set up obstacles at every turn in an attempt to preclude Angiotech from recovering the escrow funds to which it was entitled. For instance, RoundTable failed to communicate with Angiotech at all before submitting its Notice of Objection, claiming that all Angiotech's claim was untimely and without merit. Likewise, RoundTable made no effort whatsoever to reach a reasonable accommodation with Angiotech to protect the confidentiality of sensitive claim support materials, instead making blanket demands for immediate production of an unreasonable volume of documentation. Even if RoundTable had a contractual right to certain substantiation of Angiotech's claim, that right did not permit RoundTable to attempt to exercise it in bad faith and for RoundTable's own gain, in a direct attempt to deprive Angiotech of the benefits due to Angiotech under the agreement. RoundTable's conduct is even more inappropriate because Angiotech's damages were all caused by RoundTable's numerous breaches of its representations and warranties regarding the state of AMIH.

166.   RoundTable's persistent refusal to work with Angiotech in good faith to resolve the parties' respective entitlement to the escrow funds has damaged Angiotech. Angiotech has been deprived of the escrow funds to which it is entitled under the contracts, has incurred attorneys fees and costs, and has suffered a delay in the use of the escrow funds.

## Count II

## Breach of Contract

167.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84–166 above.

168.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

169.    In the Stock Purchase Agreement, RoundTable agreed to litigate any claims arising out of the Stock Purchase Agreement in the New York state or federal courts.

170.    Angiotech performed or substantially performed all material obligations of the contract.

171.    RoundTable breached its agreement to litigate in the New York state or federal courts and instead attempted to litigate its claims against Angiotech in the Chicago Court.

172.    As a result of RoundTable's breach, Angiotech suffered damages, including but not limited to the expense of obtaining a dismissal of that action.

## Count III

## Breach of Contract

173.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84–172 above.

174.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

175.    In the Stock Purchase Agreement, RoundTable agreed to pay certain taxes relating to AMIH for periods during which RoundTable owned AMIH.

176.    Angiotech performed or substantially performed all material obligations of the contract.

177.    RoundTable breached its agreement to pay these taxes.

178.    As a result of RoundTable's breach, Angiotech suffered damages, including but not limited to $198,806 in amounts Angiotech has paid to taxing authorities, the attorneys fees and costs and other expenses it has incurred to address this issue with RoundTable, and the loss of use of the money paid by Angiotech to the various taxing authorities.

## Count IV

## Unjust Enrichment

179.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84–178 above.

180.    RoundTable has received the benefit of the use of the lease belonging to Angiotech for the office suite at 272 E. Deerpath Road in Lake Forest, Illinois.

181.    RoundTable benefited from the use of the leased office space that belonged to Angiotech pursuant to the Stock Purchase Agreement.

182.    Fairness and equity demand that RoundTable reimburse Angiotech for the rental payments for the leased office space.

WHEREFORE, Angiotech prays that this Court enter judgment in favor of Angiotech and against RoundTable granting the following relief:

A.    Declare that Angiotech is entitled to the remaining escrow funds held by LaSalle;

B.    Award Angiotech compensatory damages for RoundTable's breaches of the parties' agreements, in an amount to be determined at trial;

C.    Award Angiotech's attorney's fees and costs;

D.    Award Angiotech the rental payments for the leased space used by RoundTable; and

E.    Award Angiotech pre-judgment and post-judgment interest; and

F.    Award such further and other relief as this Court deems just and appropriate.

DATED: April 17, 2008                 Respectfully submitted,
New York, NY


                                      HELLER EHRMAN LLP


                                      By _____s/ Chelsea J. Walsh_____
                                          Chelsea J. Walsh (CW 1489)
                                          Heller Ehrman LLP
                                          Times Square Tower
                                          7 Times Square
                                          New York, NY  10036-6524
                                          Tel:    (212) 832-8300
                                          Fax:    (212) 763-7600
                                          chelsea.walsh@hellerehrman.com

                                          Warren J. Rheaume
                                          (*Pro Hac Vice Motion Filed On This Date*)
                                          Malaika M. Eaton
                                          (*Pro Hac Vice Motion Filed On This Date*)
                                          Heller Ehrman LLP
                                          701 Fifth Ave., Suite 6100
                                          Seattle, WA  98104-7098
                                          Tel:  (206) 447-0900
                                          Fax:  (206) 447-0849

                                          Attorneys for Defendant
                                          Angiotech Pharmaceuticals (U.S.), Inc.


SE 2247265

# Exhibit 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| LASALLE BANK, N.A., as Escrow Agent under Escrow Agreement Dated March 23, 2006, | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| ROUNDTABLE HEALTHCARE PARTNERS, L.P. and ANGIOTECH PHARMACEUTICALS (US), INC., | ) Case No. 2007 CH 17504 ) ) ) |
| Defendants. | ) |

### ROUNDTABLE HEALTHCARE PARTNERS' ANSWER AND CROSS-CLAIM TO LASALLE BANK'S COMPLAINT IN INTERPLEADER

RoundTable Healthcare Partners, L.P. ("RoundTable"), in its capacity as stockholder representative under that certain Stock Purchase Agreement dated January 31, 2006 (the "Stock Purchase Agreement"), herewith submits its Answer to LaSalle Bank's Complaint in Interpleader and its Cross-Claim against Angiotech Pharmaceuticals (US), Inc. ("Angiotech"):

### ROUNDTABLE'S ANSWER TO THE COMPLAINT IN INTERPLEADER

### The Parties

1.    LaSalle Bank, N.A. ("LaSalle Bank"), is a national banking association.

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 1.

2.    RoundTable Healthcare Partners, L.P. ("RoundTable") is a Delaware Limited Partnership.

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 2.

3.    Angiotech Pharmaceuticals (US), Inc. ("Angiotech") is a Washington corporation.

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 3.

## Jurisdiction and Venue

3.(*sic*) Jurisdiction is proper pursuant to 735 ILCS 5/2-209 because the matters alleged occurred within Cook County, Illinois.

   **ANSWER:** RoundTable admits the allegations of Paragraph No. 3(*sic*).

4.(*sic*) Venue is proper because the Plaintiff and Defendant RoundTable conduct business in Cook County, Illinois.

   **ANSWER:** RoundTable admits the allegations of Paragraph No. 4(*sic*).

## Factual Allegations[1]

1. On March 23, 2006, RoundTable as Seller Representative, Angiotech as Buyer, and LaSalle Bank as Escrow Agent, executed the Escrow Agreement. (A true and correct copy of the Escrow Agreement is attached hereto and incorporated herein as Exhibit A).

   **ANSWER:** RoundTable admits the allegations of Paragraph No. 1.

2. Under the terms of the Escrow Agreement, Angiotech as Buyer, deposited with LaSalle Bank as Escrow Agent, the amount of twenty million dollars ($20,000,000.00).

   **ANSWER:** RoundTable admits the allegations of Paragraph No. 2.

3. As the Escrow Agent, LaSalle Bank was to hold such amount according to the terms of the Escrow Agreement.

   **ANSWER:** RoundTable admits the allegations of Paragraph No. 3.

4. On April 4, 2007, LaSalle Bank received an Escrow Claim Notice issued by Angiotech, which directed LaSalle Bank as Escrow Agent, to distribute twenty million dollars ($20,000,000.00) to Angiotech as Buyer. (A true and correct copy of the Escrow Claim Notice is attached hereto and incorporated herein as Exhibit B).

---

[1] LaSalle Bank relies upon a paragraph numbering system that starts with the number "1" again at the beginning of the factual allegations.

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 4.

5.    On or about April 16, 2007, LaSalle Bank as Escrow Agent, received from RoundTable a Notice of Objection to Angiotech's Escrow Claim Notice. (A true and correct copy of the April 16, 2007 Notice of Objection is attached hereto and incorporated herein as Exhibit C).

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 5.

6.    On or about May 16, 2007, LaSalle Bank as Escrow Agent, received from RoundTable as Seller Representative, a request for indemnification requesting that LaSalle Bank deny Angiotech's Escrow Claim, or alternatively, for LaSalle Bank to file an interpleader action to resolve the dispute. (A true and correct copy of the May 16, 2007 Notice is attached hereto and incorporated herein as Exhibit D).

**ANSWER:**    RoundTable denies that the May 16, 2007 correspondence sent to LaSalle Bank by RoundTable was a request for indemnification.  Rather, it was a request that the escrow funds be returned to RoundTable in light of Angiotech's failure to comply with the Stock Purchase Agreement and because Angiotech is not entitled to any of the escrow funds.  The remainder of Paragraph 6 is admitted.

7.    On May 31, 2007, LaSalle Bank provided a copy of the Escrow Claim Notice, Notice of Objection, and correspondence dated May 16, 2007, to Angiotech and RoundTable and advised that unless they resolved their dispute by June 30, 2007, LaSalle Bank would initiate an interpleader action. (A true and correct copy of the May 31, 2007 Notice is attached hereto and incorporated herein as Exhibit E).

**ANSWER:**    RoundTable admits the allegations of Paragraph No. 7.

8.    The Defendants have not resolved their differences regarding the Escrow Claim Notice and Objection and LaSalle Bank is therefore unable to distribute the amounts it holds as Escrow Agent.

**ANSWER**:    RoundTable admits that the Defendants have not resolved their differences.  RoundTable, however, denies that LaSalle is unable to distribute the funds it holds. LaSalle has the power to distribute the funds without liability.  It need not await resolution by the parties.

FOR RELIEF, LaSalle Bank, N.A. requests the following:

A.    That it be allowed to pay the amounts held to the Clerk of the Circuit Court of Cook County, or to the Defendant(s) to which the amounts belong, as determined by the Court;

B.    That upon payment, LaSalle Bank as Escrow Agent, be discharged from all claims of the Defendants, and that Defendants may be forever enjoined and restrained from commencing or prosecuting any action or proceeding in any court against LaSalle Bank on any claims for the recovery of the amounts or any part of such amounts;

C.    That Defendants interplead each with the other to determine their respective rights in the amounts held by LaSalle Bank as Escrow Agent and that it be adjudicated to which party those amounts belong; and

D.    That LaSalle Bank be awarded its attorneys' fees, costs and expenses incurred in filing this action, and that the Court grant such further relief as is appropriate.

**ANSWER**:

A)    RoundTable admits that that this is an interpleader action and LaSalle Bank be allowed to pay the sums at issue to the clerk of the Circuit Court or to the Defendants as

determined by the Court.

B)    RoundTable acknowledges that upon such payment, LaSalle Bank is discharged from claims by the Defendants pertaining to the dispute between RoundTable and Angiotech and LaSalle's role as escrow agent. The remainder of the request is unnecessary and therefore denied.

C)    RoundTable admits that it and Angiotech be permitted to interplead their claims against one another. RoundTable admits that the Escrow Agreement provides for the payment of reasonable fees and costs to be borne equally by Angiotech and RoundTable. Any other basis for such fees and costs is denied.

## ROUNDTABLE'S CROSS-CLAIM COMPLAINT AGAINST ANGIOTECH

For its Cross-Claim Complaint against Angiotech, RoundTable states as follows:

### The Parties

1.    RoundTable Healthcare Partners, L.P. ("RoundTable") is a Delaware Limited Partnership with its principal place of business in Lake Forest, Illinois.

2.    Angiotech Pharmaceuticals (US), Inc. ("Angiotech") is a Washington Corporation with its principal place of business in Seattle, Washington.

### Jurisdiction and Venue

3.    Jurisdiction and venue is proper in this Court for the reasons stated in the Complaint in Interpleader which are incorporated by reference herein.

### Factual Background

4.    In the Autumn of 2002 RoundTable undertook to acquire certain medical instrument companies from the Marmon Group. The companies were consolidated into a single entity called American Medical Instruments Holdings, Inc. ("AMI"). The 2002 Acquisition was

accompanied by a substantial commitment by RoundTable to render AMI's operations and capacities more robust. Accordingly, significant resources were dedicated to the improvement of the AMI companies.

5. In late 2005 Angiotech expressed significant interest in purchasing AMI from RoundTable. Ultimately RoundTable, entered into the Stock Purchase Agreement with Angiotech pursuant to which Antgiotech acquired all of the equity securities of AMI, an entity controlled by RoundTable. The transactions contemplated by the Stock Purchase Agreement closed on March 23, 2006. A copy of the Stock Purchase Agreement is attached as Exhibit A.

6. At the closing, among other things, RoundTable, Angiotech and the Escrow Agent entered into an Escrow Agreement. A copy of the Escrow Agreement is attached as Exhibit B. Funds were deposited into this account by RoundTable which could be claimed by Angiotech should it find a breach of AMI's representations and warranties.

7. RoundTable agreed to indemnify Angiotech for "Damages," as that term defined in Section 9.2, associated with "any breach of or inaccuracy in (i) any representation or warranty made by [AMI]."[2] AMI made several such representations and warranties in the Stock Purchase Agreement, addressing, among other things: AMI's capitalization, the condition of its financial statements, any ongoing litigation, its compliance with laws and regulations, and the status on company permits.[3] The Stock Purchase Agreement appointed RoundTable to act as seller's agent for purposes of resolving matters governed by the Escrow Agreement.

8. Even if breaches of the representations and warranties are found by Angiotech, RoundTable's indemnification liabilities are limited by the terms of the Stock Purchase Agreement in at least four material respects: *First*, RoundTable's indemnification liabilities, if

---

[2] *See* Exhibit A, § 9.2(a)(i).
[3] *Id.* at Article III.

any, are capped at the Escrow Amount, which according to the Stock Purchase Agreement is $20,000,000.[4]

9.      *Second*, Angiotech can only seek recovery of any part of the Escrow Amount after Angiotech demonstrates that it has incurred in excess of $2,000,000 in aggregate Damages.[5]

10.     *Third*, RoundTable's indemnification obligations, if any, expire when AMI's representations and warranties expire (except those relating to Capitalization and Ownership of Shares which survive indefinitely).[6]  Section 9.1(a)(i) provides that AMI's representations and warranties survive only "until the earlier of 15 months after the Closing Date and 45 days after completion of the audit of [Angiotech's] consolidated financial statements for the year ended December 31, 2006."

11.     *Fourth*, RoundTable's indemnification obligations relate only to claims properly submitted by Angiotech as outlined in Section 9.5(a) of the Stock Purchase Agreement.  Section 9.5(a) contains both notice and cooperation conditions.  Specifically, Section 9.5(a) states that Angiotech "shall notify" RoundTable "within ten days after becoming aware of . . . any Damages that [Angiotech] shall have determined to have given or is reasonably likely to give rise to a claim for indemnification."[7]  In addition, after tendering a claim for indemnification, Section 9.5(a) requires that Angiotech "shall provide" to RoundTable "as soon as practicable thereafter all information and documentation necessary to support and verify" the submitted claim(s).[8]

**Angiotech's Failure to Follow Claims Procedures**

12.     Angiotech has failed to follow the procedures the Parties negotiated for the submission of Escrow Claims.  In addition to requiring Angiotech to provide supporting

---

[4]  *See* Exhibit A, §§ 2.4 and 9.4(b).
[5]  *Id.* at § 9.4(a).
[6]  *Id.* at § 9.1(a)(i).
[7]  *Id.* at § 9.5(a).

materials in the absence of any request for materials from RoundTable, Section 9.5(a) mandates that RoundTable "shall be given access to all books and records in the possession or under control" of Angiotech which RoundTable reasonably determines to be related to such claims.[9] In other words, Angiotech is required under Section 9.5(a) to supply RoundTable with all materials it believes support it claims, as well as all materials RoundTable reasonably determines to be related to the claims.

13.    The Escrow Agreement also delineates clearly defined claims procedures. Under Section 3(a) of the Escrow Agreement, Angiotech "shall deliver" a notice in substantially the form of Exhibit B attached to the Escrow Agreement and state the amount of Damages sought by Angiotech.[10] Upon receipt of the notice, RoundTable is entitled to investigate and evaluate the claim, including retaining its own counsel, accountants or professional advisors.[11]    If RoundTable objects to the claim within fifteen days, the parties are obligated "to attempt to resolve in good faith" any dispute regarding any disputed claim "within 15 days after the delivery of the Notice of Objection".[12] If the parties are unable to resolve the claim, the Escrow Agent may interplead the funds in any court of competent jurisdiction.[13]

14.    On April 4, 2007, just days before expiration of the representations and warranties and the equityholders' indemnification obligations, Angiotech submitted its "Escrow Notice of Claim" to the Escrow Agent, in which it alleged Damages in excess of $2,000,000 in the aggregate and $21,426,036 in total aggregate damages.[14] This was the first time RoundTable had been given notice of any potential Escrow Account claims. The only information regarding

---

[8]   *Id.*
[9]   *Id.*
[10]  *See* Exhibit B, § 3(a).
[11]  *Id.* at § 3(b).
[12]  *Id.*
[13]  *Id.* at § 15.
[14]  *See* Exhibit C.

the claims contained in the Escrow Notice of Claim consisted of ten line items containing a one line summary of claim, the division from which the claim allegedly arose, and the purported amount of damages.[15]

15.    Angiotech's notice of claim was so vague that there is no other conclusion that Angiotech drafted it intentionally to deprive RoundTable of the ability to evaluate the veracity of the submitted claims. Upon information and belief, Angiotech's goal was to buy itself time beyond the agreed upon contractual deadlines so as to inundate RoundTable with untimely or inappropriate claims with the hope of bargaining a settlement of some of the escrow funds as a condition for providing joint consent to release to RoundTable the remainder.

16.    A cursory analysis of Angiotech's claim notice leaves no other conclusion. For example, item 6 of Angiotech's notice seeks $6,005,000 for "Quality System Investigation and Remediation." This is a rather large sum of money, but the only explanation Angiotech provided is that "Quality System procedures, practices, records and equipment require compliance with applicable regulatory requirements." That is the sum total of the information provided.  In the more than four months that have now passed, Angiotech has not told RoundTable which procedures, practices, records and equipment needed changes. It has not told RoundTable which regulatory requirements were not in compliance. It did not tell RoundTable anything about how the $6 million plus reimbursement sum was derived or specify a single hard expenditure that had to be made.

17.    RoundTable timely served its Notice of Objection to the Escrow Notice of Claim on April 16, 2007.[16]  RoundTable simultaneously sent a letter to Angiotech advising Angiotech of its belief that the Escrow Notice of Claim was untimely and, based on the limited information

---

[15]    *Id.*
[16]    *See* Exhibit D.

provided, without merit.[17]   In addition, RoundTable demanded that Angiotech provide more fulsome explanations of their claims as well as supporting materials, as required by Section 9.5 of the Stock Purchase Agreement.[18]   Pursuant to the terms of Section 3(b) of the Escrow Agreement, RoundTable rightly expected that, within 15 days, Angiotech would make a good faith effort to provide information to RoundTable to help it understand Angiotech's claims so that a resolution might become possible.

18.   RoundTable's reasonable expectations were not met.  RoundTable heard not one word from Angiotech within the 15 day period delineated by Section 3(b).  Angiotech did not request more time or otherwise indicate to RoundTable that it was unable to substantiate to provide information substantiating its claims within the parties' negotiated timeframe.

19.   Having not heard from Angiotech, RoundTable reasonably believed that Angiotech had abandoned their Escrow Claims.  Thus, on May 16, 2007, after nearly a month had passed without receiving any materials or response from Angiotech, RoundTable advised the Escrow Agent by letter that Angiotech had breached the document and proof provisions of the Escrow Agreement and the Stock Purchase Agreement, and requested release of the Escrow Amount to RoundTable.[19]

20.   It was not until June 20, 2007, that Angiotech finally responded to RoundTable's initial request for supporting materials.[20]  The letter was not accompanied by any supporting materials or the explanation of a single fact supporting even one of Angiotech's Escrow Claims.[21]  Instead, Angiotech claimed – for the first time – that the materials sought by RoundTable were confidential and privileged and, therefore, Angiotech was unable to comply

---

[17]  *See* Exhibit E.
[18]  *Id.*
[19]  *See* Exhibit F.
[20]  *See* Exhibit G.

with RoundTable's request.[22] This claim was clearly false as the claims submitted by Angiotech must, by definition, relate back to conditions that existed at the AMI companies while AMI was still owned by RoundTable.

21.    The claim of confidentiality was also a direct breach of the parties' agreements, which require Angiotech to factually substantiate their escrow claims. There is no provision in the agreement allowing Angiotech to avoid this requirement by claiming confidentiality. Nor could a claim of privilege apply to the underlying evidence of a breach of a warranty or representation. And no claim of confidentiality or privilege would cover every fact upon which Angiotech relies. Angiotech's expressed concern for confidentiality was, in fact, a ruse to avoid explaining itself and its false escrow claims.

22.    In response, on June 22, 2007, RoundTable reminded Angiotech of its obligations to provide RoundTable with all documentation and other information in support of any claim for indemnification in a timely manner, and demanded that Angiotech comply with its contractual obligations.[23]

23.    On June 27, 2007, RoundTable advised the Escrow Agent that Angiotech had failed to provide any materials in support of its claims, that the parties were at an impasse.[24] The Escrow Agent filed this interpleader action on July 3, 2007.

<u>COUNT I</u>
<u>Breach of Contract</u>

24.    RoundTable realleges and incorporates by reference herein, the allegations contained in Paragraphs 1 through 23 of this Cross-Claim.

25.    RoundTable has performed all of its obligations set forth in the Stock Purchase

---

[21]  *Id.*
[22]  *Id.*
[23]  *See* Exhibit H.

Agreement.

26.    Angiotech's conduct in this matter constitutes a breach of contract by virtue of its failures to follow the contractually negotiated deadlines and procedures, and by its failure to provide the evidence and documentation required of any indemnification claim as set forth in the Stock Purchase Agreement and the Escrow Agreement.

27.    RoundTable is entitled to a declaration that Angiotech has breached its obligations under the Stock Purchase Agreement and the Escrow Agreement in the following ways:

a.    Angiotech failed to sufficiently demonstrate that it had incurred in excess of $2,000,000 in aggregate Damages, as required under Section 9.4(a) of the Stock Purchase Agreement, thereby entitling Angiotech to pursue any claim for indemnity;

b.    Angiotech failed to notify RoundTable within ten days of becoming aware of each claim for indemnity, as required by Section 9.5(a) of the Stock Purchase Agreement;

c.    Angiotech's notice was so vague and conclusory that it failed to constitute notice within 15 months of the closing date as required by Section 9.1(a)(i) of the Stock Purchase Agreement.

c.    Angiotech failed to timely provide RoundTable with all information and documentation necessary to support and verify its claims for indemnity submitted by Angiotech, as required by Section 9.5(a) of the Stock Purchase Agreement;

d.    Angiotech refused to comply with RoundTable's request for access to information and documents under Angiotech's control which is related to or supports Angiotech's claims for indemnity, as required by Section 9.5(a) of the Stock Purchase Agreement; and

e.    Angiotech failed to make any attempt to resolve the parties' dispute in good faith within fifteen days from RoundTable's submission of its Notice Of Objection, as required by Section 3(b) of the Escrow Agreement, and has refused in all respects to enter into a dialogue with RoundTable concerning the substance of its claims.

28.    RoundTable is also entitled to recover the damages that it has incurred as a result of Angiotech's failure to produce documentation or enable RoundTable to examine Angiotech's

---

[24]    *See* Exhibit 1.

books and records. As a result of Angiotech's breaches, the escrow funds have not been made available to RoundTable and will not be made available absent the expenditure of significant professional fees. In addition, the escrow funds have been, and continue to be, depleted to cover the Escrow Agent's fees and costs to dissolve the Escrow Agreement.

29.    The Stock Purchase Agreements provides at Section 9.3 that Angiotech shall reimburse RoundTable for any and all damages and expenses incurred or arising out of a breach by Angiotech of any of the covenants or obligations described in the Stock Purchase Agreement.

WHEREFORE, RoundTable requests that this Court enter judgment on its behalf as follows:

A.    Declare that Angiotech has breached the Stock Purchase Agreement by its failure to produce evidentiary material in support of its claim;

B.    Preclude the use of any unproduced evidentiary material by Angiotech in light of its breach;

C.    Declare RoundTable entitled to the $20 million escrow fund plus interest;

D.    Award RoundTable compensatory damages in an amount to be determined by the Court, including RoundTable's reasonable attorneys fees; and

E.    Such other and further relief as the Court deems proper.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

30.    RoundTable realleges and incorporates by reference the allegations of Paragraphs 1 through 23 of this Cross-Claim.

31.    Each contract entered into under either New York law or Illinois law contains an implied covenant to perform all contractual obligations in good faith and not to undertake conduct, as is evident here, that is contrary to both the spirit and the letter of the contracts at issue.

32.     The fact of the matter is that Angiotech has asserted no proper basis for seeking to recover a claim under the indemnification provisions of the Stock Purchase Agreement or the Escrow Agreement.  The exercise of its discretion to make such a claim was done in bad faith and only to extract a settlement payment to which Angiotech is not entitled.

33.     Any reasonable person in the position of RoundTable would expect that, in order for Angiotech to claim such large sums of money from an escrow account, it would have to explain the factual basis of its escrow claims, and for it to do so on a timely basis so as not to deprive RoundTable of the timely return of any remaining escrow funds.

34.     Instead, Angiotech is trying to injure and destroy RoundTable's right to receive the fruit of these contracts – the recovery of the funds in the escrow account – by stonewalling RoundTable's attempt to learn even basic information about the basis of Angiotech's numerous multi-million dollar claims.  Angiotech has instead fabricated an exception to the contract that does not exist – confidentiality and privilege – and has used these fabricated extra-contractual justifications to wrongfully and inequitably deny RoundTable of either (i) the information it is owed; or (ii) a letter of joint direction to the Escrow Agent directing the release of the Escrow Funds to RoundTable.

35.     Angiotech is quite literally trying to have its cake and eat it too by claiming over $20 million without having to justify or explain why it is entitled to any of the money.

36.     Angiotech has an unfortunate history of this kind of inequitable conduct.  For example, at approximately the same time as it was asserting its indemnification claim, Angiotech withheld certain AMI tax refunds that were clearly owed to RoundTable and had been expressly agreed to be paid over to RoundTable in the Stock Purchase Agreement.  Nonetheless, Angiotech first delayed any payment for weeks and then attempted to withhold in excess of $2.5 million.

After being forced to concede the inappropriateness of its behavior by its own accountants, Angiotech finally paid – but not until RoundTable had expended considerable resources in protecting its undisputed right to the funds. Certain state tax refunds are still outstanding.

37.    As a result of Angiotech's interference, the sums owed to RoundTable were not paid and RoundTable has lost the use of its $20 million. It has also been forced to expend considerable resources in professional fees to protect its interests. In addition, the escrow funds have been, and continue to be, depleted to cover the Escrow Agent's fees and costs to dissolve the Escrow Agreement. These constitute damages that RoundTable is entitled to recover. In addition, the escrow funds have been, and continue to be, depleted to cover the Escrow Agent's fees and costs to dissolve the Escrow Agreement.

WHEREFORE, RoundTable requests that this Court enter judgment on its behalf as follows:

A.    Declare that Angiotech has breached the covenant of good faith and fair dealing;

B.    Declare that Angiotech is equitably estopped from relying on or using the Parties' agreements to recover the funds sought in its escrow claim;

C.    Declare that RoundTable is entitled to the entirety of the escrow fund;

D.    Award RoundTable compensatory damages in an amount to be determined by the Court, including RoundTable's reasonable attorneys fees; and

E.    Such other and further relief as the Court deems proper.

## COUNT III
### Breach of Contract: Tax Refunds

38.    RoundTable realleges and incorporates by reference herein the allegations of Paragraphs 1 through 23 of this Cross-Claim.

39.    The Stock Purchase Agreement provides that Angiotech has an obligation to turn

over to RoundTable certain AMI tax refunds received by Angiotech as a result of pre-closing tax events. Angiotech, despite demands, refused to pay such refunds to RoundTable.

40.    Ultimately, Angiotech was compelled to concede that its position was unlawful when Angiotech's own accounting firm repudiated Angiotech's position. The federal tax refund sums that had been held by Angiotech were then reluctantly paid over to RoundTable but not until RoundTable had spent considerable funds evaluating, negotiating and preparing to litigate its rights to the funds. State tax refunds, however, remain unpaid by Angiotech in an approximate amount of $136,000.

41.    These breaches of the Stock Purchase Agreement caused RoundTable to incur costs and expenses that are subject to reimbursement under Section 9.3 of the Stock Purchase Agreement.

WHEREFORE, RoundTable respectfully requests that the Court enter judgment as follows:

A.    Award RoundTable compensatory damages in an amount to be determined by the Court, including RoundTable's attorneys fees, incurred in resolving the tax refund issues;

B.    Direct that Angiotech pay over to RoundTable the amount of unpaid state tax refunds due RoundTable plus interest; and

C.    Such other and further relief as this Court deems proper.

Date: August 13, 2007                    Respectfully submitted,

Attorneys for
ROUNDTABLE HEALTHCARE
PARTNERS, L.P.

965865-1                        16

F. Thomas Hecht (ARDC # 1168606)
Jeffrey A. Leon (ARDC # 6207323)
Jacob M. Mihm (ARDC # 6272719)
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602-4283
(312) 977-4400 telephone
(312) 977-4405 facsimile
Firm No. 34355

# Exhibit 2

# HellerEhrman LLP

August 24, 2007

Warren J. Rheaume
Warren.Rheaume@hellerehrman.com
Direct +1 (206) 389-4226
Direct Fax +1 (206) 515-8905
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*Via Facsimile & Federal Express*

F. Thomas Hecht
Jacob Mihm
Ungaretti & Harris
3500 Three First National Plaza
Chicago, IL 60602-4283

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Mr. Hecht and Mr. Mihm:

We have received a copy of RoundTable Healthcare Partners' Answer and Cross-Claim to LaSalle Bank's Complaint in Interpleader ("Answer and Cross-Claim"). We wish to raise several issues relating to this matter with you, and we hope that we will be able to reach agreement on some or all of these issues.

First, based on the Answer and Cross-Claim, it appears that RoundTable agrees with LaSalle that LaSalle should be permitted to pay the funds it holds into the registry of the Court. Answer and Cross-Claim at 4. Angiotech would not oppose this result. That said, permitting the funds to sit in the registry of the court does not appear to benefit any of the parties (or the Court for that matter). Instead, all parties would be benefited by simply permitting LaSalle to retain the escrow amounts and continue to manage them until either (1) Angiotech and RoundTable are able to resolve their dispute and jointly instruct LaSalle to disburse the funds, or (2) LaSalle is ordered by a court of competent jurisdiction to disburse the funds. The alternative, paying the money into the registry of the Court where it will not benefit from active management, is clearly a less desirable outcome. In the hope that RoundTable would accept this alternative, Angiotech has prepared a draft order along these lines. LaSalle has no objection to entry of this order. Please advise me of your position at your first convenience.

Second, Angiotech would like to present the court with an agreed form of a protective order to remove from the public record the third page of Exhibit B to the Complaint in Interpleader (the Summary of Claim sheet) and the similar page contained in Exhibit C to the Answer and Cross-Claim. The Summary of Claim sheet contains sensitive information regarding potential product recalls, settlements, regulatory compliance problems, equipment problems, and ongoing litigation. As with the proposed order above, LaSalle has no objection to removing this

---

Heller Ehrman LLP    701 Fifth Avenue, Suite 6100    Seattle, WA 98104-7098    www.hellerehrman.com

Beijing    Hong Kong    London    Los Angeles    Madison, WI    New York    San Diego    San Francisco    Seattle/Anchorage    Silicon Valley    Singapore    Washington, D.C.

HellerEhrman LLP

information from the public record. We hope that you will agree as well. If so, we would like to present the Court with the attached proposed protective order.

Third, in a related vein, Angiotech believes it is necessary for Angiotech and RoundTable to enter into a confidentiality agreement to protect sensitive claim support materials from disclosure. We have prepared the attached draft for your review and consideration. Once such an agreement is in place, we can begin providing claim support materials to RoundTable.

Finally, we would like RoundTable to agree to dismiss all of its cross-claims against Angiotech voluntarily. As you are aware, Section 11.6(a) of the Stock Purchase Agreement requires any claims to be pursued in the New York state courts, or the federal courts situated in the state of New York. Therefore, the Cook County Circuit Courts lack jurisdiction over RoundTable's cross-claims under the plain language of the parties' agreement. *Dace Int'l, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 236, 239–40, 655 N.E.2d 974, 975, 977–78 (1st Dist. 1995) (upholding dismissal under 735 ILCS § 5/2-619 based on a valid forum selection clause); *see also Yamada Corp. v. Yasuda Fire & Marine Ins. Co.*, 305 Ill App. 3d 362, 365, 367, 712 N.E.2d 926, 929–30 (2d Dist. 1999). Please let us know if you will agree to voluntarily dismiss, without prejudice, your cross-claims against Angiotech so that Angiotech can avoid the necessity of filing a motion to dismiss. Depending upon your decision with regard to this issue as well as the first issue discussed above, it may also make sense to dismiss LaSalle from this action entirely and stay or dismiss the remainder of the action.

We look forward to hearing from you regarding the matters discussed above. As Angiotech's answer to LaSalle's Complaint in Interpleader is due on Monday, August 27, 2007, we would appreciate receiving RoundTable's response to the proposals above no later than first thing Monday morning.

Sincerely,

Warren J. Rheaume

Enclosures
cc:    Bill Stanger (via U.S. Mail)
       David D. McMasters (via U.S. Mail)
       Todd A. Rowden (via Facsimile & U.S. Mail)
       Daniel T. Graham (via Facsimile & U.S. Mail)

SE 2223129 v3
8/24/07 1:34 PM (37618.0041)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

LASALLE BANK, N.A., as Escrow )
Agent under Escrow Agreement Dated )
March 23, 2006, )
          )    No.     07 CH 17504
      Plaintiff, )
v. )    Judge James F. Henry
          )
ROUNDTABLE HEALTHCARE )
PARTNERS, L.P. and ANGIOTECH )
PHARMACEUTICALS (US), INC., )
          )
      Defendants. )

## [PROPOSED] AGREED ORDER RE ESCROW FUNDS

This cause having come before the Court based on the agreement of LaSalle Bank, N.A., RoundTable Healthcare Partners, L.P., and Angiotech Pharmaceuticals (US), Inc., and the Court being fully advised, the Court makes the following FINDINGS OF FACT:

1.      LaSalle Bank, N.A. ("LaSalle"), Angiotech Pharmaceuticals (US), Inc. ("Angiotech"), and RoundTable Healthcare Partners, L.P. ("RoundTable") each agree that LaSalle would be entitled to pay all of the funds it holds in escrow and any accumulated interest earned thereon (the "Escrow Funds") pursuant to the Escrow Agreement dated March 23, 2006, between Angiotech as Buyer, RoundTable as Seller Representative, and LaSalle as Escrow Agent ("Escrow Agreement") into the registry of the Court. *See* Complaint in Interpleader ("Complaint") at 3; RoundTable Healthcare Partners' Answer and Cross-Claim to LaSalle Bank's Complaint in Interpleader ("Answer and Cross-Claim") at 4; Angiotech Pharmaceuticals (US), Inc.'s Answer in Interpleader ("Answer") at __.

2.     Neither RoundTable nor Angiotech has sought to assert claims against LaSalle arising out of the Escrow Agreement.

3.     The Escrow Agreement limits claims against LaSalle to those based on "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence." Complaint, Ex. A, ¶ 5.

4.     Neither RoundTable nor Angiotech is aware of any conduct by LaSalle that would constitute "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence" as provided in paragraph 5 of the Escrow Agreement.

5.     Because (a) all parties agree that LaSalle would be entitled to pay the Escrow Funds it holds into the registry of the Court, (b) neither Angiotech nor RoundTable seeks to assert any claims against LaSalle, and (c) all parties agree that the Escrow Funds can and should remain with LaSalle, the interests of judicial economy are served by permitting LaSalle to retain the Escrow Funds and continue to hold them pursuant to the terms of the Escrow Agreement until (1) jointly directed to disburse the Escrow Funds by Angiotech and RoundTable, or (2) ordered to disburse the Escrow Funds by a Court of competent jurisdiction with such order to be presented to this Court for purposes of enforcement.

IT IS HEREBY ORDERED THAT:

1.     LaSalle Bank, N.A. retain the Escrow Funds and continue to hold them in the _____ account until (1) jointly directed to disburse the Escrow Funds by Defendants, or (2) ordered to disburse the Escrow Funds by a Court of competent jurisdiction, after such order is presented to this Court for purposes of enforcement thereof.

2

2.      Upon disbursement in accordance with Defendants' joint instructions or a court order, the parties shall use good faith efforts to agree on the amount of reasonable attorneys' fees and costs to which LaSalle is entitled for the cost of bringing this action.  If the parties cannot reach agreement, LaSalle will submit a motion to the Court to resolve its entitlement to reasonable attorneys' fees and costs.

3.      Upon disbursement in accordance with Defendants' joint instructions or a court order, LaSalle shall be discharged from all claims against LaSalle except those based on "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence," to the extent any such claims exist.


Order prepared and approved by:

[Add here attorney signoffs for each party]

Date: _____ ___, 2007

ENTERED:


_____


8/24/07 1:14 PM ()

3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| LASALLE BANK, N.A., as Escrow Agent under Escrow Agreement Dated March 23, 2006, | ) ) ) ) | |
| Plaintiff, | ) ) | No.    07 CH 17504 |
| v. | ) ) | Judge James F. Henry |
| ROUNDTABLE HEALTHCARE PARTNERS, L.P. and ANGIOTECH PHARMACEUTICALS (US), INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

This cause having come before the Court based on the agreement of LaSalle Bank, N.A., RoundTable Healthcare Partners, L.P., and Angiotech Pharmaceuticals (US), Inc., and the Court being fully advised, the Court makes the following FINDINGS OF FACT:

1.    This case is newly filed, and the parties have not had an opportunity to discuss the propriety of seeking a protective order to address the filing of sensitive and confidential information under seal.

2.    The third page of Exhibit B to the Complaint in Interpleader and the third page of Exhibit C to RoundTable Healthcare Partners Answer and Cross-Claim to LaSalle Bank's Complaint in Interpleader contains sensitive information regarding potential product recalls, settlements, regulatory compliance problems, equipment problems, and ongoing litigation, such that placing this document under seal is appropriate because the parties in good faith believe that the information constitutes confidential business information.

IT IS HEREBY ORDERED THAT:

The Clerk of the Court is place under seal the third page of Exhibit B to the Complaint in Interpleader, and the third page of Exhibit C to RoundTable Healthcare Partners Answer and Cross-Claim to LaSalle Bank's Complaint in Interpleader.

Order prepared and approved by:

[Add here attorney signoffs for each party]

Date: _____ ___, 2007

                                                  ENTERED:


                                                  _____

8/24/07 1:09 PM ()

2

# INFORMATION SHARING AND CONFIDENTIALITY AGREEMENT

This Agreement (this "Agreement") is made and effective as of _____, 2007, by and between Angiotech Pharmaceuticals (US), Inc. ("Angiotech"), and RoundTable Healthcare Partners, L.P. ("RoundTable"). Angiotech and RoundTable may be referred to herein collectively as the "Parties" and each individually as a "Party."

## RECITALS

A.    Angiotech and RoundTable are parties to a Stock Purchase Agreement executed on January 31, 2006, between RoundTable as Seller Representative, and Angiotech as Buyer, along with additional entities not relevant here, and amended on March 23, 2006 ("Purchase Agreement").

B.    Angiotech and RoundTable are parties to an Escrow Agreement dated March 23, 2006, between Angiotech as Buyer, RoundTable as Seller Representative, and LaSalle Bank, N.A. as Escrow Agent ("Escrow Agreement").

C.    Section 2.4 of the Purchase Agreement required Angiotech to deposit $20,000,000.00 at Closing with the Escrow Agent, which pursuant to the Escrow Agreement is LaSalle Bank, N.A., and Angiotech deposited this amount as required.

D.    Both Angiotech and RoundTable have made claims of entitlement to the escrow amounts held by LaSalle Bank, N.A.

E.    Angiotech and RoundTable desire to enter into discussions regarding their respective entitlement to the escrow amounts held by LaSalle Bank, N.A. and attempt to negotiate a resolution of the final distribution of the escrow amounts.

F.    To further that negotiations, Angiotech and RoundTable also desire to exchange confidential and sensitive documents and other information ("Confidential Materials") supporting their respective claims of entitlement to the escrow amounts held by LaSalle Bank, N.A. without fear that any such materials will be disclosed by the other Party.

G.    The Parties therefore wish to clarify certain restrictions on disclosure and use of such Confidential Materials.

NOW, THEREFORE, in consideration of the above recitals and the promises contained herein, the Parties agree as follows:

**Definition of Confidential Materials.**  As used in this Agreement, "Confidential Materials" means all information and data (whether in oral, written or electronic form; and whether of a technical, business or other nature) that is not generally known to the public and that is disclosed by Angiotech to RoundTable, or by RoundTable to Angiotech, pursuant to this Agreement and appropriately marked as confidential. Notwithstanding the foregoing, Confidential Materials does not include any information (i) that is readily available in public records or documents through no wrongful act of the receiving Party, (ii) in which the party

1

asserting confidentiality has no proprietary interest, or (iii) is required to be disclosed by applicable law or by applicable judgment, order, or decree of any court or governmental body or agency.

Nothing in the Agreement is intended to restrict or abridge either Party's rights to obtain discovery of the facts or evidence underlying the Party's dispute in future proceedings. Accordingly, the Agreement shall not restrict or abridge either Party's entitlement to obtain discovery of the facts or evidence underlying the Party's dispute according to the rules of any forum in which their dispute may be presented.

**Safeguard of Confidential Information.**  The receiving Party shall (i) hold the Confidential Materials in strict confidence, (ii) exercise the highest degree of care in safeguarding the Confidential Materials against any and all loss, theft, or other inadvertent disclosure, and (iii) take such steps as are necessary to ensure and maintain such confidentiality.

**Nondisclosure and Nonuse.**  The receiving Party shall not disclose, transfer, or in any way divulge, directly or indirectly, any of the Confidential Materials, under any circumstances or by any means, to any third party (other than a representative of a Party) without the prior written consent of the disclosing Party.  The receiving Party shall not copy, transmit, reproduce, summarize, quote, or make any use whatsoever of any of the Confidential Materials without the prior written consent of the disclosing Party, and, in no event shall the receiving Party use any of the Confidential Materials for any purpose other than for evaluation of the disclosing Party's claim to the escrow amounts.  The receiving Party shall notify the disclosing Party immediately upon discovering that any disclosure of Confidential Materials may have occurred.

**Return of Confidential Materials.**  The Confidential Materials of a Party shall remain the exclusive property of such Party, and each Party may make a written request at any time, entirely within its sole discretion, for the return or destruction of all or some of the Confidential Materials that it produced (including any copies, summaries, or compilations thereof).  The Party receiving such request shall comply fully with such request within 15 days of its receipt thereof. This provision shall survive any termination of this Agreement.

**Remedies.**  Should a Party breach any of its obligations contained in this Agreement, the other Party will be irreparably harmed and entitled to specific performance, including immediate issuance of a temporary restraining order or preliminary injunction enforcing this Agreement, and to judgment for damages caused by breach, and to any other remedies provided for by applicable law.

**Governing Law; Miscellaneous.**  This Agreement will be governed by internal laws of the State of Washington, without reference to its choice of law rules, and may be executed in counterpart copies.  If a provision of this Agreement is held invalid under any applicable law, such invalidity will not affect any other provision of this Agreement that can be given effect without the invalid provision.

**No Assignment.**  This Agreement, and any right or obligation hereunder, may not be assigned or delegated by either Party.

2

**Modification.**  This is the entire agreement among the Parties and supersedes all prior and collateral communications, reports, and understandings, if any, among the Parties relating to the subject matter hereof and may be modified only in a writing signed by both Parties.

**No Waiver.**  Any failure by either Party to enforce the other Party's strict performance of any provision of this Agreement will not constitute a waiver of its right subsequently to enforce such provision or any other provision of this Agreement.  Nothing contained herein shall be deemed to be or shall constitute a waiver of either Party's rights and remedies.  The delivery of documents, information, or data pursuant to this Agreement shall not constitute a subject matter waiver of any applicable work product or privilege.  Each Party waives its right to assert on the basis of such delivery that the other Party has waived any work product protection or other applicable privilege as to any documents or information related to the same subject matter.

**No Rights Conferred.**  It is expressly understood that this Agreement does not give either Party any rights, either now or in the future, in any trade secrets or other proprietary rights now or hereinafter owned by the other Party.  Neither Party is obligated hereunder to furnish any Confidential Materials to the other Party.

**Duration.**  The obligations set forth in this Agreement will continue so long as either Party is in possession of any Confidential Materials of the other Party.

ANGIOTECH PHARMACEUTICALS (US), INC.


By: _____
Title: _____


ROUNDTABLE HEALTHCARE PARTNERS, L.P.


By: _____
Title:_____


SE 2223228 v3
8/24/07 1:09 PM (37618.0041)

3

# Exhibit 3

# UNGARETTI & HARRIS

RECEIVED

AUG 29 2007

HellerEhrmanLLP

F. THOMAS HECHT
312.977.4322
fthecht@uhlaw.com

August 28, 2007

UNGARETTI & HARRIS LLP

**CHICAGO**
3500 Three First National Plaza
Chicago, Illinois 60602.4283
Telephone: 312.977.4400
Fax: 312.977.4405

**WASHINGTON**
1500 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.639.7500
Fax: 202.639.7505

**SPRINGFIELD**
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7950

www.uhlaw.com

*By Facsimile and Federal Express*

Warren J. Rheaume
Heller Ehrman, LLP
701 Fifth Avenue
Suite 6100
Seattle, Washington 98104-7098

  **Re:**  *LaSalle Bank v. RoundTable Healthcare Partners, L.P. and*
      *Angiotech Pharmaceuticals (US) Inc., Case No. 07-CH-17504*

Dear Mr. Rheaume:

  We have received your letter dated August 24, 2007. RoundTable will not dismiss its cross-claim. As you know, LaSalle Bank, not RoundTable, initiated this litigation under the Escrow Agreement. The terms of that agreement permit an Illinois filing. RoundTable's cross-claim is compulsory and must be prosecuted in the initiating forum. You are certainly free to seek dismissal of the cross-claim based on the choice of venue clause in the Stock Purchase Agreement but we do not believe such a motion to be well founded.

  RoundTable is also not willing to consent to the withdrawal from the public domain of the one page document you previously made public. On its face the document presents no issue of confidentiality – and, indeed, when it was submitted to LaSalle Bank months ago, Angiotech requested no such confidential treatment.

  Nor does RoundTable have any interest in the generalized protective order you propose. The Escrow Agreement provides that all evidence supporting Angiotech's claims be provided to RoundTable without regard to whether anyone believes such material to be confidential. And it is hard to imagine that every piece of paper on which Angiotech relies is, somehow, confidential. Angiotech is a publicly traded company in a regulated industry. If any of the claims Angiotech asserts are actually true, the

UHDOCS 973724-1

UNGARETTI
& HARRIS

Warren J. Rheaume
Heller Ehrman, LLP
August 28, 2007
Page 2

information is material and must be disclosed to the FDA, the SEC and various of your investors. Such information can hardly be confidential in any conventional sense.

Illinois courts actively discourage the kind of protective order you propose – even where the parties consent. *See: A.P. et al v. M.E.E. et al,* 354 Ill. App. 3d 989 (1st Dist. 2004). But if you have a specific, identifiable document that you believe must be protected, we are willing to consider a timely request specifically directed to the particular circumstances of that document.

As to LaSalle Bank, we are willing to confer with you concerning the Bank's retention of the interpleaded funds (if the Court permits) so long as LaSalle remains a party to the action and the parties agree that the Bank's retention of funds is not the basis for dismissal and/or transfer. Please let me know whether this is agreeable to you.

Finally, I have no objection whatsoever to a letter delivered on late Friday afternoon demanding a Monday morning response. What gives me pause is that all of the issues upon which you touched were known weeks, if not months ago. I trust this is simply an aberration or that there is some other explanation not evident from the circumstances at hand.

Very truly yours,

F. Thomas Hecht

FTH/eb

cc:     Todd A. Rowden
        Jeffrey Leon
        Jacob Mihm

973724-1

UNGARETTI
& HARRIS

Warren J. Rheaume
Heller Ehrman, LLP
August 28, 2007
Page 3


cc:     Todd A. Rowden
        Riffner Barber Rowden, LLC
        1834 Walden Office Square
        Suite 500
        Schaumberg, Illinois 60173

# Exhibit 4

# HellerEhrman LLP

August 29, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

F. Thomas Hecht
Jacob Mihm
Jeffrey Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, Illinois 60602

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech
Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Counsel:

This letter is in response to the letter from Mr. Hecht, dated August 28, 2007, and the letter and enclosed discovery requests from Mr. Leon, also dated August 28, 2007. With regard to the draft confidentiality agreement proposed by Angiotech in our letter of August 24, 2007, of course Angiotech does not intend to designate materials as confidential under the terms of any confidentiality agreement negotiated between the parties unless it has a good faith belief that the material qualifies for such a designation. Indeed, the draft agreement we provided excluded documents that are publicly available, documents in which the producing party has no propriety interest, and documents that are required to be disclosed by law from qualifying as confidential documents. Moreover, the agreement also specifically provided that it would not "restrict or abridge either party's right to obtain discovery" regarding their disputes "according to the rules of any forum in which their dispute may be presented." Thus, we disagree that the confidentiality agreement we proposed is overly broad in the manner Mr. Hecht's letter suggests.

Angiotech proposed the draft confidentiality agreement in an attempt to facilitate the exchange of claim support materials. We hope that you will reconsider your position and either agree to the draft Angiotech has proposed or provide us with suggested revisions to address any lingering concerns you may have over the scope of the agreement so that we can proceed to address the merits of the parties' dispute.

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

F. Thomas Hecht
August 29, 2007
Page 2

Regarding the proposed order we circulated permitting LaSalle to retain the escrow funds, we have attempted to revise the proposed order to address the concerns Mr. Hecht raised in his letter. We have attached a draft reflecting those changes. LaSalle has no objection to entry of this order.

Finally, regarding the discovery requests enclosed in Mr. Leon's letter, as you know, Angiotech filed a motion to dismiss RoundTable's cross-claims on Monday. Mr. Leon then served voluminous discovery requests on Angiotech yesterday. In light of the fact that the motion to dismiss is now pending, and that motion, if granted, would result in a dismissal of RoundTable's cross-claims for lack of subject matter jurisdiction, we hope you will agree to a stay of discovery until the Court rules on Angiotech's motion to dismiss.

We look forward to hearing from you regarding these matters.

Sincerely,

Malaika M. Eaton

Enclosure

cc:    Daniel T. Graham
       Bill Stanger
       David D. McMasters
       Todd A Rowden

SE 2223928 v3
8/29/07 12:30 PM (37618.0041)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

LASALLE BANK, N.A., as Escrow )
Agent under Escrow Agreement Dated )
March 23, 2006, )
  )
      Plaintiff, )
v. )
  )
ROUNDTABLE HEALTHCARE )
PARTNERS, L.P. and ANGIOTECH )
PHARMACEUTICALS (US), INC., )
  )
      Defendants. )

No.    07 CH 17504

Judge James F. Henry

## [PROPOSED] ORDER RE ESCROW FUNDS

This cause having come before the Court based on the agreement of LaSalle Bank, N.A.,

RoundTable Healthcare Partners, L.P., and Angiotech Pharmaceuticals (US), Inc., and the Court

being fully advised, the Court makes the following FINDINGS OF FACT:

      1.      LaSalle Bank, N.A. ("LaSalle"), Angiotech Pharmaceuticals (US), Inc.

("Angiotech"), and RoundTable Healthcare Partners, L.P. ("RoundTable") each agree that

LaSalle would be entitled to pay all of the funds it holds in escrow and any accumulated interest

earned thereon (the "Escrow Funds") pursuant to the Escrow Agreement dated March 23, 2006,

between Angiotech as Buyer, RoundTable as Seller Representative, and LaSalle as Escrow

Agent ("Escrow Agreement") into the registry of the Court. *See* Complaint in Interpleader

("Complaint") at p. 3 (sub para. A); RoundTable Healthcare Partners' Answer and Cross-Claim

to LaSalle Bank's Complaint in Interpleader at p. 4 (sub para. A); Angiotech Pharmaceuticals

(US), Inc.'s Answer in Interpleader at p. 4 (sub para. A).

2.     Neither RoundTable nor Angiotech has sought to assert claims against LaSalle arising out of the Escrow Agreement.

3.     The Escrow Agreement limits claims against LaSalle to those based on "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence." Complaint, Ex. A, ¶ 5.

4.     Neither RoundTable nor Angiotech is aware of any conduct by LaSalle that would constitute "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence" as provided in paragraph 5 of the Escrow Agreement.

5.     Because (a) all parties agree that LaSalle would be entitled to pay the Escrow Funds it holds into the registry of the Court, (b) neither Angiotech nor RoundTable seeks to assert any claims against LaSalle, and (c) all parties agree that the Escrow Funds can and should remain with LaSalle, the interests of judicial economy are served by permitting LaSalle to retain the Escrow Funds and continue to hold them pursuant to the terms of the Escrow Agreement until (1) jointly directed to disburse the Escrow Funds by Angiotech and RoundTable, or (2) ordered to disburse the Escrow Funds by a Court of competent jurisdiction with such order to be presented to this Court for purposes of enforcement.

IT IS HEREBY ORDERED THAT:

1.     LaSalle Bank, N.A. retain the Escrow Funds and continue to hold them in the _____ account until (1) jointly directed to disburse the Escrow Funds by Defendants, or (2) ordered to disburse the Escrow Funds by a Court of competent jurisdiction with such order to be presented to this Court for purposes of enforcement.

2.    Upon disbursement in accordance with Defendants' joint instructions or a court order, the parties shall use good faith efforts to agree on the amount of reasonable attorneys' fees and costs to which LaSalle Bank, N.A. is entitled for the cost of bringing this action.  If the parties cannot reach agreement, LaSalle Bank, N.A. will submit a motion to the Court to resolve its entitlement to reasonable attorneys' fees and costs.

3.    LaSalle Bank, N.A. shall remain a party to this action until the action is dismissed in its entirety or until a further order from this Court dismissing LaSalle Bank, N.A. Notwithstanding that LaSalle Bank, N.A. is a party to this action, LaSalle Bank, N.A. shall not be required to participate in any hearings nor be served with any papers filed in this matter except any hearing or paper regarding the final disbursement of the Escrow Funds, LaSalle Bank, N.A.'s entitlement to reasonable attorneys fees and costs, or any other matter that directly impacts LaSalle Bank, N.A.

4.    Upon disbursement in accordance with Defendants' joint instructions or a court order, LaSalle shall be discharged from all claims against LaSalle except those based on "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence," to the extent any such claims exist.

5.    This Order shall not affect the Court's future determination of its jurisdiction or lack thereof over claims relating to the dispute between RoundTable Healthcare Partners, L.P. and Angiotech Pharmaceuticals (US), Inc. regarding their respective entitlement to the Escrow Funds.  No party may argue that the entry of this Order, or any aspect of this Order, including the fact that LaSalle Bank, N.A. is retaining the Escrow Funds or that LaSalle Bank, N.A. remains a party to this action, in any way affects the Court's jurisdiction or lack thereof over claims

3

relating to the dispute between Angiotech Pharmaceuticals (US), Inc. and RoundTable

Healthcare Partners, L.P. regarding their respective entitlement to the Escrow Funds.


Order prepared and approved by:

**LASALLE BANK, N.A.**


_____
Todd A. Rowden
Timothy L. Binetti
Riffner Barber Rowden LLC
1834 Walden Office Square, Suite 500
Schaumburg, Illinois 60173


**ROUNDTABLE HEALTHCARE PARTNERS, L.P.**


_____
F. Thomas Hecht
Jeffrey A. Leon
Jacob Mihm
Ungaretti & Harris, LLP
3500 Three First National Plaza
Chicago, Illinois 60602


**ANGIOTECH PHARMACEUTICALS (US), INC.**


_____
Daniel T. Graham, Esq.
Michelle Wolf-Boze, Esq.
Funkhouser Vegosen Liebman & Dunn, Ltd.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603-5008


_____
Warren J. Rheaume

4

Malaika M. Eaton
Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, WA  98104-7098


Date: _____ ___, 2007

                                                    ENTERED:


                                                    _____

5

# Exhibit 5

**From:**    Hecht, F. Thomas [fthecht@uhlaw.com]
**Sent:**    Thursday, August 30, 2007 1:12 PM
**To:**      Eaton, Malaika M.; Mihm, Jacob M.; Leon, Jeffrey A.
**Cc:**      dgraham@fvldlaw.com; tar@rbrmlaw.com; Rheaume, Warren J.
**Subject:** RE: LaSalle v. Angiotech/RoundTable - letter to Mr. Hecht, Mr. Mihm, and Mr. Leon

Dear Counsel:

Thank you for your letter. We will take this under consideration; we have yet to confer with our client on the language of the proposed order with respect to LaSalle Bank. We will not, therefore, be in a position to agree to any order prior to next week.

Sincerely,

F. Thomas Hecht

**From:** Eaton, Malaika M. [mailto:Malaika.Eaton@hellerehrman.com]
**Sent:** Wednesday, August 29, 2007 2:41 PM
**To:** Hecht, F. Thomas; Mihm, Jacob M.; Leon, Jeffrey A.
**Cc:** dgraham@fvldlaw.com; tar@rbrmlaw.com; Rheaume, Warren J.
**Subject:** LaSalle v. Angiotech/RoundTable - letter to Mr. Hecht, Mr. Mihm, and Mr. Leon

Dear Counsel:

Please see the attached letter.  The original will follow via U.S. Mail.

Sincerely,

Malaika Eaton

<<Scan001 (5).PDF>>
**Malaika Eaton** | Attorney | **HellerEhrman**LLP | 701 Fifth Avenue, Suite 6100 | Seattle, WA 98104
tel: +1.206.389.4315 | fax: +1.206.515.8899 | email: malaika.eaton@hellerehrman.com | web:
www.hellerehrman.com

================================================

This email is sent by a law firm and contains information that may
be privileged and confidential. If you are not the intended recipient,
please delete the email and notify us immediately.

================================================

# Exhibit 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT/CHANCERY DIVISION

LASALLE BANK, N.A.

    v.

ROUNDTABLE HEALTHCARE
PARTNERS, L.P., ET AL.

)
)
)
)    Case No. 2007 CH 17504
)
)
)
)

FILED B - 15

2007 AUG 29 PM 4: 23

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## ROUNDTABLE'S MOTION FOR SUMMARY JUDGMENT AND FOR AN ORDER TO RELEASE THE ESCROW FUNDS TO ROUNDTABLE

RoundTable Healthcare Partners, L.P. herewith moves, pursuant to 735 ILCS §5/2-1005, for judgment on its claims as set forth below:

1.    This litigation concerns the disposition of a $20 plus million escrow account created to cover certain contingencies related to the sale of stock of American Medical Instrument Holdings Inc. ("AMI") to Angiotech Pharmaceuticals, Inc. ("Angiotech"). RoundTable Healthcare Partners L.P., ("RoundTable") one of the owners of AMI, is the seller's representative for purposes of addressing issues with the escrow account. LaSalle filed this action because Angiotech and RoundTable are at odds over whether Angiotech is entitled to indemnification under the relevant agreements, and whether Angiotech has complied with its procedural obligations. LaSalle's decision to file this action in this Court is clearly contemplated by the Escrow Agreement.

2.    There are two contracts that are applicable to the instant motion: the January 31, 2006 Stock Purchase Agreement by which the stock of AMI was sold to Angiotech, and the Escrow Agreement between Angiotech, RoundTable and LaSalle establishing the escrow account at LaSalle and specifying procedures for claims resolution of the escrow funds. The representations and warranties at issue, and the limitations on any claims for breaches of those representations and warranties, are

governed by Article 9 of the Stock Purchase Agreement, while the particulars of the process for making and disputing indemnity claims are contained in the Escrow Agreement. In order for Angiotech to claim some or all of the funds in the escrow account, it must follow the procedures for making such claims and do so within agreed upon timetables.

3.    On April 4, 2007 Angiotech gave notice of a claim for indemnification based on alleged breaches of representations and warranties that were incorporated into the sale transactions. Angiotech provided LaSalle and RoundTable an extremely cursory notice of escrow claims exceeding the value of the escrow account just prior to the expiration date for making such claims.

4.    It is undisputed that Angiotech has failed to comply with *any* of contractual procedures that governed the claims procedure. Specifically, Angiotech:

- Did not provide notice as claims allegedly occurred despite an obligation to do so in order that such contested matters could be addressed at the earliest moment practicable. *See* Exhibit A to RoundTable's Cross Claim, Shareholder Purchase Agreement §9.5(a).

- Did not affirmatively provide any documentation of its indemnification claims despite a clear and unambiguous obligation to do so. *Id.*

- Did not provide RoundTable access to Angiotech's books and records upon request despite a clear and unambiguous obligation to do so. *Id.*

5.    It is now five months after the claim was asserted and Angiotech continues to refuse to provide RoundTable with any documentation – not a single piece of paper – on which its claims are based, even though it was required to do so.

974343-1                              2

6.     This failure to provide supporting documentation despite *repeated* requests forfeits Angiotech's warranty claims.[1] Accordingly, RoundTable is entitled to summary judgment on its claim that Angiotech has breached the Stock Purchase Agreement and Escrow Agreement, thereby barring any indemnity claims by Angiotech. As such, RoundTable also requests a clear and unambiguous order to the interpleader plaintiff LaSalle to release the entirety of the escrow funds to RoundTable immediately.

7.     It is well-established that a party may not recover for a breach of contract unless it proves "the existence of the contract . . ., the plaintiff's performance of all of the contractual conditions required of him, the fact of the defendant's alleged breach, and the existence of damages as a consequence." Nuccio v. Chicago Commodities, Inc., 628 N.E.2d 1134, 1139 (Ill. App. 1st Dist. 1994)[2]. Here, Angiotech has unequivocally failed to perform several contractual obligations which are conditions precedent to it to recover under the escrow agreement. See, e.g., CVC Claims Litigation LLC v. Citicorp Venture Capital Ltd., 2006 WL 1379596 at *4 (S.D.N.Y. May 18, 2006) (breach of contract claim was dismissed on the pleadings because "plaintiff has failed to allege, even generally, that the conditions precedent were performed or occurred").

8.     Angiotech is contractually required to provide RoundTable, for *each* of its claims, "all information and documentation necessary to support and verify, any Damages that [Angiotech] shall have determined to have given or is reasonably likely to rise to a claim of indemnification . . . ." (Stock Purchase Agreement Paragraph 9.5(a)). Angiotech has not provided any such documentation to RoundTable for even one of its

---

[1] The history of RoundTable's requests and Angiotech's desultory responses is attached hereto by affidavit of Jacob M. Mihm.
[2] While the contract between the Parties specifies a New York choice of law, there is no conflict in the elements of a breach of contract claim between Illinois and New York.

claims despite the passage of nearly five months since Angiotech first gave notice of its claims. It has, accordingly, forfeited its right to assert an indemnification claim.

WHEREFORE, RoundTable respectfully requests that judgment be entered in its favor and an order directing that the escrow sums be paid over to RoundTable issue forthwith.

Date: August 29, 2007

Respectfully submitted,

**ROUNDTABLE HEALTHCARE PARTNERS**

By: _____

F. Thomas Hecht (ARDC # 1168606)
Jeffrey A. Leon (ARDC # 6207323)
Jacob M. Mihm (ARDC # 6272719)
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602-4283
(312) 977-4400 Telephone
(312) 977-4405 Facsimile

# Exhibit 7

Order                                                    CCG N002-300M-2/24/05 (                )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

LaSalle Bank, N.A.

v.                                    No. 07 CH 17504

RoundTable Healthcare Partners L.P.
& Angiotech Pharmaceuticals (US), Inc,

### ORDER

This matter coming before the Court on:

(1) Angiotech's motion to dismiss RoundTable's Cross-Claim;

(2) Angiotech's motion to Stay Proceedings; and

(3) RoundTable's motion for Summary Judgment;

the Parties being present through counsel and the Court being duly advised in the Premises, IT IS HEREBY ORDERED:

(A) Responses to Angiotech's motions due by 9/21/07; Replies in support of Angiotech's motions due by 10/12/07.

(B) memorandum in support of RoundTable's motion for summary Judgment due by September 7, 2007; Response to RoundTable's motion for summary judgment due by 10/5/07; Reply in support of RoundTable's motion for summary Judgement due by 10/9/07 *

(C) Hearing on Angiotech's motions is set for 11/6/07 at 11:00am at which time Court will schedule hearing Date on RoundTable's motion if necessary including Rule 216s

(d) Discovery is stayed pending 11/6/07 hearing;

(e) Status of 11/19/07 is stricken

**ENTERED:**

Atty. No.: 34355

Name: Jacob Mihm

Atty. for: RoundTable

Address: 3500 Three First Nat'l

City/State/Zip: Chicago, IL 60602

Telephone: (312) 977-4400

Dated: _____

**JAMES F. HENRY**

AUG 31 2007

Circuit Court • 1526

Judge                        Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

* This order shall not submit Angiotech and RoundTable's dispute to the jurisdiction of the Court and does not waive Angiotech's arguments that this Court lacks subject matter jurisdiction over RoundTable's cross-claim

# Exhibit 8

# HellerEhrman LLP

September 5, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

F. Thomas Hecht
Jacob Mihm
Jeffrey Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, Illinois  60602

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech
Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Counsel:

During the hearing last week, Mr. Hecht indicated that he would speak with RoundTable about the revised draft standstill order we proposed in our letter of August 29, 2007, and respond to us promptly as to whether RoundTable had any objection to the entry of that order.  As we previously indicated, LaSalle has no objection to the entry of the order we proposed.  If the order is acceptable, we would like to file it prior to the start of the motions practice between Angiotech and RoundTable so that LaSalle need not be served or otherwise involved in those motions.  Please let me know whether we may file the proposed order.

Additionally, in our letter of August 29, 2007, we requested that RoundTable reconsider its blanket opposition to an appropriate confidentiality agreement, which Angiotech believes is necessary to facilitate the exchange of claim support materials.  Thus far, you have provided no indication as to whether RoundTable will reconsider its position and either agree to the draft we proposed or provide us with suggested revisions.  We look forward to hearing from you regarding these matters.

Sincerely,

*Malaika M. Eaton*

Malaika M. Eaton

cc:    Daniel T. Graham
Todd A Rowden
Bill Stanger
David D. McMasters

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

# Exhibit 9

| From: | Leon, Jeffrey A. [jleon@uhlaw.com] |
|---|---|
| Sent: | Wednesday, September 12, 2007 9:04 AM |
| To: | Eaton, Malaika M.; Rheaume, Warren J. |
| Cc: | Hecht, F. Thomas; Mihm, Jacob M.; tar@rbrmlaw.com; dgraham@fvldlaw.com |
| Subject: | (RoundTable) - Agreed Order Regarding Escrow Funds.pdf |
| Attachments: | (RoundTable) - Agreed Order Regarding Escrow Funds.pdf |

Malaika and Warren, attached is our proposed agreed order regarding the escrow funds.  Todd Rowden has reviewed this on behalf of LaSalle and is in accord with its terms.  It only awaits Angiotech's assent, and it can be filed on an agreed basis.

I will be out for the Rosh Hashanah holiday beginning early this afternoon through the end of the week and will be checking email on a very limited basis, so if you have any comments please copy me but direct them to Jake Mihm so that he can coordinate the filing.

Regards,

Jeff

Information contained in this email transmission is privileged and
confidential. If you are not the intended recipient, do not read,
distribute or reproduce this transmission (including any
attachments). If you have received this email in error, please
notify the sender by email reply.

To ensure compliance with requirements imposed by the IRS, we
inform you that, unless otherwise expressly indicated, any U.S.
federal tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT/CHANCERY DIVISION**

| | | |
|---|---|---|
| LaSalle Bank, N.A., as Escrow Agent Under Escrow Agreement Dated March 23, 2006, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2007 CH 17504 |
| RoundTable Healthcare Partners, L.P. and Angiotech Pharmaceuticals (US), Inc., | ) ) ) | |
| Defendants. | ) | |

**AGREED ORDER REGARDING ESCROW FUNDS**

This cause having come before the Court based on the agreement of LaSalle Bank, N.A., RoundTable Healthcare Partners, L.P., and Angiotech Pharmaceuticals (US), Inc., and the Court being fully advised, the Court notes the following:

1.    LaSalle Bank, N.A., ("LaSalle"), Angiotech Pharmaceuticals (US), Inc. ("Angiotech"), and RoundTable Healthcare Partners, L.P. ("RoundTable") each agree that LaSalle would be entitled to pay all of the funds it holds in escrow and any accumulated interest earned thereon (the "Escrow Funds") pursuant to the Escrow agreement dated March 23, 2006, between Angiotech as Buyer, RoundTable as Seller Representative, and LaSalle as Escrow Agent ("Escrow Agreement") into the registry of the Court.  *See* Complaint in Interpleader ("Complaint") at p. 3, (sub para. A); RoundTable Healthcare Partners' Answer and Cross-Claim to LaSalle Bank's Complaint in Interpleader ("Answer and Cross-Claim') at p. 4 (sub para. A); Angiotech Pharmaceuticals (US), Inc.'s Answer in Interpleader ("Answer") at p. 4, (sub para. A).

2.    Neither RoundTable nor Angiotech has at this time sought to assert claims against LaSalle arising out of the Escrow Agreement.

3.      The Escrow Agreement limits claims against LaSalle to those based on "Fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence."  Complaint, Ex. A, ¶ 5.

4.      Neither RoundTable nor Angiotech is aware at this time of any conduct by LaSalle that would constitute "fraud, willful misconduct, bad faith, breach of fiduciary duty or gross negligence" as provided in paragraph 5 of the Escrow Agreement.

5.      LaSalle wishes to retain the Escrow Funds, and Angiotech and RoundTable agree that the Escrow Funds will receive a better rate of return if LaSalle retains the Escrow Funds.

6.      Because  there are no claims by Angiotech or RoundTable currently pending against LaSalle, and because all parties agree that the Escrow Funds can and should remain with LaSalle, the interests of judicial economy are served by permitting LaSalle to retain the Escrow Funds for this Court and continue to hold them pursuant to the terms of the Escrow agreement and this Court's Orders and continuing supervision.

**IT IS HEREBY ORDERED THAT:**

1.      LaSalle Bank N.A. shall be permitted to retain the Escrow Funds and hold them in Escrow pursuant to the Escrow Agreement between LaSalle, Angiotech and RoundTable until such time as any of the following occur:  (a)  LaSalle receives a joint letter of direction directing disbursement of the funds from Angiotech and RoundTable, or (b) LaSalle is ordered to disburse the funds by this Court, or (c) LaSalle chooses to pay the Escrow Funds into the registry of the Court in accordance with Number 2 below.

2.      LaSalle shall not be required to hold the Escrow Funds  until conditions 1(a) or 1(b) ripen.  LaSalle may move this Court at any time to allow it to transfer the Escrow Funds into the registry of the Court, with or without cause.

3.      LaSalle is being permitted to hold the Escrow Funds at the discretion of the Court. LaSalle and the Escrow Funds remain under the jurisdiction of this Court as if the Court was itself holding the funds in its registry.

4.      LaSalle is and remains a real party in interest to this litigation because it has an interest in the clarity of any orders of this Court directing disbursement of the funds; and because it is possible that claims could be asserted against LaSalle.  Accordingly, LaSalle shall be served with all pleadings and treated in every way as a party.

5.      This Order allowing LaSalle to hold the funds for the Court does not in any way alter or effect this Court's jurisdiction over LaSalle's complaint, or any related cross or counterclaims.

**LASALLE BANK, N.A.**

_____

Todd A. Rowden
Timothy L. Binetti
Riffner Barber Rowden LLC
1834 Walden Office Square, Suite 500
Schaumburg, Illinois 60173

**ROUNDTABLE HEALTHCARE PARTNERS, L.P.**

_____

F. Thomas Hecht
Jeffrey A. Leon
Jacob Mihm
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602


**ANGIOTECH PHARMACEUTICALS (US), INC.**


---

Daniel T. Graham
Michelle Wolf-Boze
Funkhouser Vegosen Liebmann and Dunn, Ltd.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603


---

Warren J. Rheaume
Malaika M. Eaton
Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104


**ENTERED:**


---

# Exhibit 10

# HellerEhrman LLP

September 20, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

Jeffrey A. Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, Illinois 60602

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech
Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Jeff:

We write in regard to several procedural issues that remain unresolved between the parties.

*First,* last week you provided us with a revised draft standstill order and asked whether Angiotech would agree to the revisions you proposed. We have some concerns regarding your proposed changes. We hope that we can still reach agreement on a standstill order acceptable to all parties.

The draft you provided requires LaSalle to continue to be "served with all pleadings and treated in every way as a party." The draft we proposed provided that LaSalle would remain a party, but did not require LaSalle's participation in any hearings or service upon LaSalle of any papers except those "regarding the final disbursement of the Escrow Funds, LaSalle Bank, N.A.'s entitlement to reasonable attorneys fees and costs, or any other matter that directly impacts LaSalle Bank, N.A."

We see no reason to require LaSalle to remain intimately involved with the details of the jurisdictional dispute between Angiotech and RoundTable or the dispute over entitlement to the escrow funds. The change you have made, instead, seems only to serve to increase the burden on LaSalle of this action and, consequently, increase the amount of attorneys fees that both Angiotech and RoundTable will be required to pay for LaSalle's participation. *See* Escrow Agreement §§ 5(a), 8, & 15. We would be willing to consider accepting this

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

provision if RoundTable has a valid reason for requiring this level of participation from LaSalle. However, absent any explanation as to why this requirement is necessary or appropriate, we cannot agree to this modification to the draft we provided.

Both the Angiotech and RoundTable drafts include, in paragraph 5, language providing that the agreed order does not effect the Court's jurisdiction. We do not believe the language that you have proposed is sufficiently clear in scope and would prefer using the language we originally proposed. Please let us know if this language is acceptable.

*Second*, it has been two weeks since we requested that RoundTable reconsider its blanket opposition to a confidentiality agreement to allow Angiotech and RoundTable to share sensitive claim support materials. We have received no response whatsoever from RoundTable regarding this matter, despite RoundTable's purported interest in receiving this information. At this point, we have little choice but to conclude that RoundTable's opposition to a reasonable confidentiality agreement is a litigation tactic, particularly because such a confidentiality agreement is in the interest of both Angiotech and RoundTable. As Angiotech has previously indicated, the claim support documentation contains sensitive, privileged, and confidential information, and, at least with respect to a large portion of these materials, it is not in RoundTable's interest to undermine the confidentiality of these documents. Instead, these documents reflect on the poor management practices and systems in place during the time that the relevant facilities were owned and managed by RoundTable (and, of course, reflect Angiotech's efforts to bring the facilities into compliance with regulatory standards).

Finally, on an unrelated issue, I have discovered that I provided an incorrect page citation to the language in the Escrow Agreement relating to the interest demand by RoundTable. The relevant language appears at page 8 and states:

Income earned on the investment of the portion of the Escrow Amount distributed to [RoundTable] shall be paid to [RoundTable], for further distribution to Sellers, the Optionholders and the Warrantholders in respect of their Proportionate Shares of the Escrow Amount, and shall be distributed to [RoundTable] by the Escrow Agent within 30 days following the Release Date. All remaining income shall be distributed to [Angiotech] at the same time."

Escrow Agreement § 10(a). I hope that this did not cause any undue confusion on your part.

# HellerEhrman LLP

Jeffrey A. Leon
September 20, 2007
Page 3

We hope to hear from you soon regarding these issues. Please feel free to contact me if you have any questions or concerns.

Sincerely,

Malaika M. Eaton

cc:    F. Thomas Hecht
       Jacob M. Mihm
       Daniel T. Graham
       Todd A Rowden
       Bill Stanger
       David D. McMasters

SE 2226171 v4
9/20/07 3:22 PM (37618.0041)

# Exhibit 11

# HellerEhrman LLP

November 5, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

Jeffrey A. Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, Illinois 60602

Re:     **LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Jeff:

On September 20, 2007, we wrote to you regarding some issues that remained unresolved between the parties. A copy of that letter is attached for your convenience. In particular, as you requested, we provided you with a discussion of our concerns regarding the modifications you had made to the draft standstill order we proposed in August. We suggested language that would address our concerns, asked whether you would agree to that language, and asked for further clarification regarding your rationale for certain changes. We also pointed out that two weeks had passed since our most recent request for RoundTable to reconsider its blanket opposition to a confidentiality agreement to allow the parties to share sensitive claim support materials without any response from RoundTable on this issue.

More than one month has passed since our September 20, 2007 letter and we have received no response to any of the issues raised. Would you please advise as to when RoundTable will have a substantive response on these issues?

Sincerely,

Malaika M. Eaton

Enclosure
cc:     F. Thomas Hecht
        Jacob M. Mihm
        Daniel T. Graham
        Todd A Rowden
        Bill Stanger
        David D. McMasters

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100   Seattle, WA 98104-7098   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

# HellerEhrman LLP

September 20, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

Jeffrey A. Leon
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, Illinois  60602

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Jeff:

We write in regard to several procedural issues that remain unresolved between the parties.

*First*, last week you provided us with a revised draft standstill order and asked whether Angiotech would agree to the revisions you proposed.  We have some concerns regarding your proposed changes.  We hope that we can still reach agreement on a standstill order acceptable to all parties.

The draft you provided requires LaSalle to continue to be "served with all pleadings and treated in every way as a party."  The draft we proposed provided that LaSalle would remain a party, but did not require LaSalle's participation in any hearings or service upon LaSalle of any papers except those "regarding the final disbursement of the Escrow Funds, LaSalle Bank, N.A.'s entitlement to reasonable attorneys fees and costs, or any other matter that directly impacts LaSalle Bank, N.A."

We see no reason to require LaSalle to remain intimately involved with the details of the jurisdictional dispute between Angiotech and RoundTable or the dispute over entitlement to the escrow funds.  The change you have made, instead, seems only to serve to increase the burden on LaSalle of this action and, consequently, increase the amount of attorneys fees that both Angiotech and RoundTable will be required to pay for LaSalle's participation.  *See* Escrow Agreement §§ 5(a), 8, & 15.  We would be willing to consider accepting this

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100   Seattle, WA  98104-7098   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

provision if RoundTable has a valid reason for requiring this level of participation from LaSalle. However, absent any explanation as to why this requirement is necessary or appropriate, we cannot agree to this modification to the draft we provided.

Both the Angiotech and RoundTable drafts include, in paragraph 5, language providing that the agreed order does not effect the Court's jurisdiction. We do not believe the language that you have proposed is sufficiently clear in scope and would prefer using the language we originally proposed. Please let us know if this language is acceptable.

*Second*, it has been two weeks since we requested that RoundTable reconsider its blanket opposition to a confidentiality agreement to allow Angiotech and RoundTable to share sensitive claim support materials. We have received no response whatsoever from RoundTable regarding this matter, despite RoundTable's purported interest in receiving this information. At this point, we have little choice but to conclude that RoundTable's opposition to a reasonable confidentiality agreement is a litigation tactic, particularly because such a confidentiality agreement is in the interest of both Angiotech and RoundTable. As Angiotech has previously indicated, the claim support documentation contains sensitive, privileged, and confidential information, and, at least with respect to a large portion of these materials, it is not in RoundTable's interest to undermine the confidentiality of these documents. Instead, these documents reflect on the poor management practices and systems in place during the time that the relevant facilities were owned and managed by RoundTable (and, of course, reflect Angiotech's efforts to bring the facilities into compliance with regulatory standards).

Finally, on an unrelated issue, I have discovered that I provided an incorrect page citation to the language in the Escrow Agreement relating to the interest demand by RoundTable. The relevant language appears at page 8 and states:

Income earned on the investment of the portion of the Escrow Amount distributed to [RoundTable] shall be paid to [RoundTable], for further distribution to Sellers, the Optionholders and the Warrantholders in respect of their Proportionate Shares of the Escrow Amount, and shall be distributed to [RoundTable] by the Escrow Agent within 30 days following the Release Date. All remaining income shall be distributed to [Angiotech] at the same time."

Escrow Agreement § 10(a). I hope that this did not cause any undue confusion on your part.

HellerEhrman LLP

Jeffrey A. Leon
September 20, 2007
Page 3

We hope to hear from you soon regarding these issues.  Please feel free to contact me if you have any questions or concerns.

Sincerely,

Malaika M. Eaton

cc:   F. Thomas Hecht
      Jacob M. Mihm
      Daniel T. Graham
      Todd A Rowden
      Bill Stanger
      David D. McMasters

SE 2226171 v4
9/20/07 3:22 PM (37618.0041)

# Exhibit 12

# HellerEhrman LLP

June 22, 2007

Warren J. Rheaume
Warren.Rheaume@hellerehrman.com
Direct +1 (206) 389-4226
Direct Fax +1 (206) 515-8905
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0040

*Via Facsimile & Federal Express*

F. Thomas Hecht
Ungaretti & Harris
3500 Three First National Plaza
Chicago, IL  60602-4283

Re:    **Escrow Claim Notice of Angiotech Pharmaceuticals Under Escrow Agreement**

Dear Mr. Hecht:

Thank you for your letter of June 22, 2007.  We are aware of the obligations of the parties contained in the relevant escrow and stock purchase agreements.  Our previous letter was intended to advise you of our retention in this matter and our ongoing efforts to appropriately substantiate the April 4, 2007 Escrow Claim Notice.  As we previously indicated, we are exploring methods to provide you with appropriate documentation of the Claim Notice while simultaneously preserving the confidential and privileged nature of certain materials.  We will proceed with this analysis promptly and will be in touch with you in the near future in this regard.

Sincerely,

Warren J. Rheaume

cc:    Bill Stanger
       David D. McMasters

SE 2216039 v2
6/22/07 11:06 AM (37618.0040)

Heller Ehrman LLP    701 Fifth Avenue, Suite 6100    Seattle, WA  98104-7098    www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

# Exhibit 13

# UNGARETTI & HARRIS

JEFFREY A. LEON
312.977.4886
jaleon@uhlaw.com

September 11, 2007

**By Facsimile:  847-303-6621**
**and First Class United States  Mail**

Todd A. Rowden
Riffner Barber Rowden LLC
1834 Walden Office Square, Suite 500
Schaumburg, Illinois 60173

RECEIVED
SEP 14 2007
UNGARETTI & HARRIS LLP
Heller Ehrman LLP

**CHICAGO**
3500 Three First National Plaza
Chicago, Illinois 60602.4224
Telephone: 312.977.4400
Fax: 312.977.4405

**WASHINGTON**
1500 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.639.7500
Fax: 202.639.7505

**SPRINGFIELD**
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7950

www.uhlaw.com

     Re:     *LaSalle Bank v. RoundTable Healthcare Partners, L.P. and*
               *Angiotech Pharmaceuticals (US) Inc., Case No. 07-CH-17504*

Dear Todd:

We are writing on behalf of RoundTable Healthcare Partners L.P. to request that LaSalle release to RoundTable all amounts in the Escrow Account held by LaSalle that are in excess of $20 million.

As LaSalle is aware, the time for Angiotech to make claims against the Escrow Account has now expired.  Angiotech, in its answer to Paragraph 4 of LaSalle's Interpleader Complaint has admitted that its Escrow Claim Notice asked LaSalle "to distribute twenty million dollars ($20,000,000.00) to Angiotech as buyer."  Angiotech's admission provides it no basis to block RoundTable from receiving any and all of the interest that has accrued on the $20 million principal held by LaSalle (nor does the contract permit Angiotech to claim the interest) at this time.

Accordingly, please forward all sums in the Escrow Account in excess of $20 million to RoundTable pursuant to the procedures in the Escrow Agreement.

Very truly yours,

Jeffrey A. Leon

cc:    F. Thomas Hecht
      Jacob M. Mihm
      Malaika Eaton
      Warren Rheaume

979217-1

# Exhibit 14

# HellerEhrman LLP

September 12, 2007

Malaika M. Eaton
Malaika.Eaton@hellerehrman.com
Direct +1 (206) 389-4315
Direct Fax +1 (206) 515-8899
Main +1 (206) 447-0900
Fax +1 (206) 447-0849

37618.0041

*By E-Mail and U.S. Mail*

Todd A Rowden
Riffner Barber Rowden, LLC
1834 Walden Office Square
Suite 500
Schaumburg, IL 60173

**Re:    LaSalle Bank, N.A. v. RoundTable Healthcare Partners, L.P. and Angiotech
Pharmaceuticals (US), Inc., Case No. 07-CH-17504**

Dear Todd:

We are writing in response to the September 11, 2007, demand you received from Mr.
Leon on behalf of RoundTable HealthCare Partners L.P. to "release to RoundTable all
amounts in the Escrow Account held by LaSalle that are in excess of $20 million."
Angiotech objects to this request.

The Escrow Agreement provides that the interest earned on the escrow funds shall be
distributed in proportion to the relative distribution of the escrow funds themselves, and, of
course, interest is not to be distributed until the escrow funds have been distributed.  In this
regard, Section 10(a) of the Escrow Agreement, provides: "Income earned on the investment
*of the portion of the Escrow Amount distributed to [RoundTable] shall be paid to
[RoundTable]*, for further distribution to the Sellers and Optionholders in respect of their
Adjusted Proportionate Shares of the Escrow Amount, *and shall be distributed to
[RoundTable] by [LaSalle] within 30 days following the Release Date.  All remaining income
shall be distributed to [Angiotech] at the same time.*"  Escrow Agreement at 10 (emphasis
added).

This interest distribution provision is automatic and flows directly from the ultimate
determination as to the distribution of the escrow funds.  The Escrow Agreement does not
require either party to make a specific claim for the interest to which they would be entitled.
Therefore, Mr. Leon's suggestion that Angiotech's answer to LaSalle's interpleader

Heller Ehrman LLP   701 Fifth Avenue, Suite 6100  Seattle, WA 98104-7098  www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

complaint somehow invalidates this provision lacks merit. Please feel free to contact me if you have any questions or concerns regarding this matter.

Sincerely,

*Malaika M. Eaton*

Malaika M. Eaton

cc:    F. Thomas Hecht
       Jeffrey A. Leon
       Jacob M. Mihm
       Daniel T. Graham
       Bill Stanger
       David D. McMasters

SE 2225341 v1
9/12/07 3:32 PM (37618.0041)

# Exhibit 15

1618 Station Street
Vancouver, BC, Canada  V6A 1B6
Main: 604.221.7676  Fax: 604.221.2330
www.angiotech.com



September 6, 2007

F. Thomas Hecht
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison
Chicago, IL  60602

Dear Mr. Hecht:

**Re:     Your Letter of July 27, 2007**

In accordance with your above referenced letter, you have requested payment by Angiotech of $136,424.80 to your client RoundTable on account of overpayment for Income Taxes as provided for in the Stock Purchase Agreement (the "Agreement"). We have had an opportunity to review the amounts claimed and they appear to be accurate and to be attributable to a time before Angiotech purchased AMIH.

However, we bring your attention to the following attached documents;

| # | Description | Amount |
|---|---|---|
| 1. | Invoice from the Massachusetts Department of Revenue for Periods ending December 31, 2003, 2004 and 2005 | $    84,259.58 |
| 2. | Invoice from Ohio Department of Treasury for Tax Period ending December 31, 2005 | $    11,349.81 |
| 3. | Invoice Regarding IRS Payroll Tax Assessment for 2004 and 2005 | $    67,939.70 |
| 4. | Invoice from Texas Corporation Franchise Tax Report – Angiotech Paid $27,686.17 for 2006 Texas Franchise Tax – RoundTable pro-rated amount (82 days X $27,686.17)/365 = $6,219.91 | $    6,219.91 |
| 5. | Invoice from PWC Chicago Regarding New York State audit of BG Sulzle, Inc. for the years 2003 to 2005 | $    15,000.00 |
| | **TOTAL** | $    **184,769.00** |

All of these amounts represent monies paid by Angiotech on account of taxes relating to the period prior to Angiotech's purchase of AMIH, or to related professional services. Off-setting this amount against the $136,424.80 requested in your letter, RoundTable owes Angiotech the sum of $48,253.97. Please have your client forward that amount to Angiotech.

In addition, we have received notice from the Internal Revenue Service that they will be conducting an audit of the AMIH consolidated U.S. federal income tax returns for the taxation years ending March 23, 2006, December 31, 2005, and December 31, 2004. Please refer to the enclosed correspondence.

In accordance with section 10.2(g) of the Agreement, the seller has the sole right to represent the company or any of its subsidiaries in any tax audit relating to taxable periods ending on or before the closing date and to employ counsel of its choice at its own expense. The buyer shall have no responsibility for any expenses regarding such proceedings.

Based on a telephone conversation we had with the IRS, they would like to conduct the audit at AMIH's Lake Forest office. As you can see in the attached, contact information for Mr. Arnold Jansen, the appropriate representative at the IRS, has been provided.


Sincerely,

ANGIOTECH PHARMACEUTICALS, INC.


Bill Stanger
Senior Corporate Counsel


Enclosures

cc:    Warren Rheume, Heller Ehrman
       Lance Langton, Angiotech

2

MA audit reassessment



| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS **DEPARTMENT OF REVENUE** Customer Service Bureau Telephone: (617) 887-6367 | | |

**Notice Date:** August 23, 2007

| | |
|---|---|
| Taxpayer ID Number: | **043 246 401** |
| Bill Number: | **0410 2120 7940** |
| Total Amount Due: | **$84,259.58** |
| Payment Due Date: | **September 22, 2007** |
| Tax Type: | **Corporation Foreign** |

Taxpayer Name: American Medical Instruments Inc

## Details of What You Owe

For help understanding this section, see page 2 - "Guide to Understanding the Assessment Detail".

| No. | Tax Type* | Period End Date | Trans Type | Assessment Date | Tax Liability + | Interest Accrued + | Penalty Accrued - | Payments/ Credits = | Balance Due |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CORP FOR | 12/31/03 | 700 | 08/22/07 | $31,322.00 | $9,510.76 | $0.00 | $0.00 | $40,832.76 |
| 2 | | 12/31/04 | 700 | 08/22/07 | $30,842.00 | $7,519.49 | $1,850.52 | $0.00 | $40,212.01 |
| 3 | | 12/31/05 | 700 | 08/22/07 | $2,656.00 | $399.45 | $159.36 | $0.00 | $3,214.81 |
| 4 | | | | | | | | Subtotal: | $84,259.58 |

\* See explanation of the Most Common Tax Types on page 2.
*Recent payments may not be reflected.*

| TOTAL AMOUNT DUE: | $84,259.58 |
|---|---|

.ment of the Treasury
.al Revenue Service
.CINNATI, OH 45999-0039

*IRS penalty - late installments* (handwritten)

1-800-829-0115

Notice Number: CP220
Date: January 8, 2007

Taxpayer Identification Number:
56-2331114
Tax Form: 1120A
Tax Period: December 31, 2005

050937.351212.0221.006 1 MB 0.326 695
IlIullulInulululdaldlnllnlaldIlulubIblnll

AMERICAN MEDICAL INSTRUMENTS
HOLDINGS INC
272 E DEERPATH RD STE 350
LAKE FOREST    IL    60045-5326757

| Amount You Owe as of: January 29, 2007 |
|---|
| $11,349.81 |

93311-258-41402-6

Statement of Adjustment to Your Account

Balance Due on Account Before Adjustment                        $.00
                            Adjustment Computation

Penalty - See Explanation                          $11,349.81

Net Adjustment Charge                                    $11,349.81

Balance Due                                             $11,349.81

To avoid additional penalty and/or interest, please allow enough mailing time so that we receive your payment by **January 29, 2007**. Make your check or money order payable to The United States Treasury. Write your taxpayer identification number on your payment and mail it with the stub portion of this notice. If you think we made a mistake, please call us at the number listed above. When you call, please have your payment information and a copy of your tax return available. This information will help us find any payment you made that we haven't applied.

**Partial Payments**

Payment - Please make your check or money order payable to the United States Treasury. Write on your payment your social security number or employer identification number, the tax period and tax form. Mail your payment with the bottom part of your notice in the enclosed envelope or to the address on the front of your notice.

Notice About Partial Payments - Generally, we apply your payment first to tax, then to penalty, and finally to the interest you owe.

**Status of Your Account (Exam)**

This notice isn't the result of an examination of your return. We notify a taxpayer when we select his/her return for examination.

*IRS payroll tax assessment.* ③

Page 1 of 1

| Form **2504**<br>(Rev. March 1992) | Department of the Treasury—Internal Revenue Service<br>**Agreement to Assessment and Collection<br>of Additional Tax and Acceptance of Overassessment**<br>(Excise or Employment Tax) | Date received by Internal<br>Revenue Service |
|---|---|---|

Name, SSN or EIN, and address of taxpayer(s) (Number, street, city or town, State, ZIP Code)

Surgical Specialties Corporation       23-2879848
100 Dennis Dr

Reading              PA       19606-0000

### Additional Tax and Penalties

| Tax Period Ended | Return Form Number | Kind of Tax and Internal Revenue Code Section | Amount of Tax | Penalty |
|---|---|---|---|---|
| 03/31/2004 – 12/31/2004 | 941 | FICA and Withholding 3101, 3111, 3509, 3402 | $41,562.19 | |
| 03/31/2005 – 12/31/2005 | 941 | FICA and Withholding 3101, 3111, 3509, 3402 | $26,377.51 | |
| | | | | |
| | | | | |
| | | Total | $67,939.70 | |

### Decrease in Tax and Penalties

| Tax Period Ended | Return Form Number | Kind of Tax and Internal Revenue Code Section | Amount of Tax | Penalty |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | Total | | |

I consent to the immediate assessment and collection of any additional tax and penalties and accept any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law.

*Surgical Specialties Corporation*    Date

   Date

By *K. Thomas Bailey*    Title *PRESIDENT Director*    Date 12/14/06

**Note:** If you consent to the assessment of the amounts shown in this agreement, your signature will expedite our adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

**Who Must Sign**

If you are making this agreement for a partnership, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.



**Stanger, Bill**

| | |
|---|---|
| **From:** | Christiansen, Brenda |
| **Sent:** | Wednesday, August 29, 2007 4:59 PM |
| **To:** | Langton, Lance |
| **Subject:** | additional tax owing from Roundtable |

Ok, we paid $27,686.17 for the Texas Franchise tax for the 2006 calendar year.  Roundtable would be responsible for the portion from Jan 1 – Mar 23.

(82 days x 27,686.17) / 365 days =  $6,219.91

**Brenda Christiansen**
US Tax Accountant
Angiotech Group of Companies
Direct Line: 604-221-6932
Fax: 604-221-6971
1618 Station St., Vancouver, BC Canada V6A 1B6

9/5/2007

TEXAS CORPORATION                          1111
FRANCHISE TAX REPORT - Page 1
05-142 (Rev. 9-00/8)                                                  l. Mark "X" only        ■ GAAP 1            ■ FIT 2
g.  Privilege period covered by this report          e. ■              if it applies
010107        through    123107                                       If Close and/or "S,"    ■ Close 3          ■ "S" 4
                                                                       mark "X".

a. ■ T Code        c. ■ Taxpayer number        d. ■ Report year      f. Due date
16101          32019004301          2007          111507              j. ■ PIR        ■ F M

h.  Taxpayer name and mailing address
                                                         k. ■ File number            l. ■ Tax rates
MEDICAL DEVICE TECHNOLOGIES, INC.
3600 SW 47TH AVENUE
GAINESVILLE            FL    32608              0800605077        .00250      .04500

---

### FOR COMPUTERIZED USE ONLY

| | | | | | | |
|---|---|---|---|---|---|---|
| 02 | 123106 | 15 | 0 | 26 | | 0 |
| 03 | 2571835 | 16 | 2571835 | 27 | | 0 |
| 04 | 46862595 | 17 | 46862595 | 28 | | 61524827 |
| 06 | 1000 | 19 | 10164604 | 29 | | 2768617 |
| 07 | 17711250 | 20A | 0 | 30 | | 0 |
| 08 | 17712250 | 20B | 0 | 31 | | 2768617 |
| 09 | 972403 | 21 | 1042104 | 32 | | 2768617 |
| 10 | 0 | 22 | 11206708 | 33 | | 0 |
| 12 | 243101 | 23 | 61524827 | 34 | | 0 |
| 13 | 032406  123106 | 24 | 0 | 35 | | 2768617 |
| 14 | 0 | 25 | 61524827 | | | |

---

Form 05-142
*SCHEDULE C - TOTAL AMOUNT DUE AND PAYABLE*

36. Total tax due on this report *(Enter the amount from Item 35.) (If less than $100, enter "0")* _ _ _ _ _ _ _ _ _ _ _ 36.        27686.17

37. Enter prior payments *(Credit available*        30,000.00  *as of 05/14/2007   )* _ _ _ _ _ _ 37.        30000.00

38. Net tax due *(Item 36 minus Item 37)* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 38.        −2313.83

39. PENALTY: 1-30 days late-5% of Item 38. More than 30 days late-10% of Item 38 _ _ _ _ _ _ _ _ _ _ _ _ _ 39.        0
       *(See instructions for calculating penalty if an extension was filed.)*

40. INTEREST: *(See instructions)* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 40.        0

41. TOTAL AMOUNT DUE AND PAYABLE  - *Make amount payable to STATE COMPTROLLER*
       *(Item 38 plus Item 39 plus Item 40)* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 41. ■        −2313.83

MEDICAL DEVICE TECHNOLOGIES, INC.                            m.
■ T Code    ■ Taxpayer number    ■ Period    ■ File number    ■ Type    n. ■
16021    32019004301    2007    0800605077

THO
6Y5230 1.000

TEXAS CORPORATION
FRANCHISE TAX REPORT - Page 2          2222
05-143 (Rev. 2-00/7)

| a. T Code | 16120 | d. Report year | 2007 | | k. File number | | l. Tax rates | |
|---|---|---|---|---|---|---|---|---|
| c. Taxpayer number | | h. Taxpayer name | | | 0800605077 | | .00250 | .04500 |
| 32019004301 | | MEDICAL DEVICE TECHNOLOGIES, INC. | | | | | | |

### SCHEDULE A - COMPUTATION OF TAX DUE ON NET TAXABLE CAPITAL

1. Is this corporation the survivor of a merger?          X  NO          YES
2. Enter the ending date of your accounting period. *(See instructions for date to use)* _____ 2.          123106
3. Gross receipts in Texas *(Whole dollars only)* _____ 3.          2,571,835.00
4. Gross receipts everywhere *(Whole dollars only)*
   *If you had "0" gross receipts in Texas, enter "0" in Item 11 and SKIP TO ITEM 13.)* _____ 4.          46,862,595.00
5. Apportionment factor *(Item 3 divided by Item 4)* _____ 5.          0.0549
6. Stated capital *(See instructions for determining statement capital)* _____ 6.          1,000.00
7. Surplus *(See instructions for determining surplus)* _____ 7.          17,711,250.00
8. Total taxable capital *(Item 6 plus Item 7) (If less than "0," enter "0")* _____ 8.          17,712,250.00
9. Apportioned taxable capital *(Multiply Item 8 by Item 5)* _____ 9.          972,403.00
10. Allowable deductions *(See instructions)* _____ 10.          0
11. Net taxable capital *(Item 9 minus Item 10) (If less than "0," enter "0")* _____ 11.          972,403.00
12. Tax due on net taxable capital *(Multiply Item 11 by*   .00250 *)* _____ 12.          2431.01

### SCHEDULE B - COMPUTATION OF SURTAX ON NET TAXABLE EARNED SURPLUS

|  |  | Beginning date | Ending date |
|---|---|---|---|

13  Enter beginning and ending date of your accounting period_____ 13.   032406   123106
14. If you do not have a Texas Charter and PL 86-272 applied
    during the period shown in Item 13, enter the effective date. _____ 14.
15. Business loss carryover from prior years *(NOTE: An amount cannot be entered for initial reports.)* _ 15.          0
16. Gross receipts in Texas *(Whole dollars only) (If you had "0" gross receipts in
    Texas enter "0" in Item 23 and complete the remainder of the report.)* _____ 16.          2,571,835.00
17. Gross receipts everywhere *(Whole dollars only)* _____ 17.          46,862,595.00
18. Apportionment factor *(Item 16 divided by Item 17)* _____ 18.          0.0549
19. Federal taxable income *(Before net operating loss deduction and special deductions.)* _____ 19.          10,164,604.00
20. Special deductions *(See instructions)*
    a. I.R.S. Form 1120, Schedule C, Special Deductions _____ 20a.          0
    b. Other authorized deductions _____ 20b.          0
21. Officer and director compensation *(See instructions)* _____ 21.          1,042,104.00
22. Earned surplus *(Item 19 minus Items 20a and 20b plus Item 21)* _____ 22.          11,206,708.00
23. Apportioned earned surplus *(Dollars and cents) (Multiply Item 22 by Item 18)* _____ 23.          615,248.27
24. Allocated earned surplus *(Does not include dividends and interest)*
    *AND does not apply to 1992 or 1993 report years.)* _____ 24.          0
25. Apportioned plus allocated earned surplus *(Item 23 plus Item 24)* _____ 25.          615,248.27
26. Allowable deductions *(See instructions)* _____ 26.          0
27. Business loss carryover used this year *(NOTE: An amount cannot be entered for initial reports.)* _ 27.          0
28. Net taxable earned surplus *(Item 25 minus Item 26 and Item 27 (If less than "0," enter "0")* _____ 28.          615,248.27
29. Tax due on net taxable earned surplus *(Multiply Item 28 by*   .04500 *)* _____ 29.          27,686.17
30. Temporary credit *(See instructions)* _____ 30.          0
31. Net tax due on net taxable earned surplus *(Item 29 minus Item 30) (If less than "0," enter "0")* ___ 31.          27,686.17
32. Net tax due *(Enter the greater of Item 12 or Item 31)* _____ 32.          27,686.17
33. Additional tax due if temporary credit has been claimed on this
    or previous reports    *(Multiply Item 11 by*  .00200 *)* _____ 33.          0
34. Tax credits *(NOTE: Please do not enter extension payments or prior payments on this line.)* _____ 34.          0
35. Total tax due *(Item 32 plus Item 33 minus Item 34. Enter here and in Item 36 on Page 1.)* _____ 35.          27,686.17

| I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief. | | Daytime phone *(Area code and no.)* | |
|---|---|---|---|
| **sign here** ► | Officer, director or authorized agent | Print or type name | Date |

THO
6Y5231 1.000



# PRICEWATERHOUSECOOPERS 🏠

April 30, 2007

**PAYMENT DUE UPON RECEIPT**
**INVOICE NUMBER : 1030805154-8**

PwC TAX ID #: 134008324
PwC D&B #: 00-186-37-94

Mr. Lance Langton
Angiotech Pharmaceuticals, Inc.
1618 Station Street
Vancouver  BC
Canada V6A  1B6

**SEND CHECK PAYMENT TO:**
PricewaterhouseCoopers LLP
P.O. Box 75647
Chicago, IL  60675-5647

**WIRE TRANSFER INSTRUCTIONS:**
Citibank NA, New York, NY
Account #: 30408437
ABA #: 021000089 or Swift #: CITIUS33
**To Credit: PricewaterhouseCoopers LLP**

| | | |
|---|---|---|
| For tax services rendered through April 15, 2007 related to American Medical Instruments Holdings Inc. and Subsidiaries. See attached detail. | $ | 35,370.00 |
| | $ | 0.00 |
| **Total Invoice** | $ | 35,370.00 |

For questions, contact: Joseph Gattone at (312) 298-2117, joseph.r.gattone@us.pwc.com

**TO ENSURE PROPER CREDIT TO YOUR ACCOUNT, PLEASE INDICATE ON YOUR PAYMENT:**

Invoice Number: 1030805154
Client Account Number: 25922

PRICEWATERHOUSECOOPERS 🄱

**AMI Holdings Inc.**
**Invoice Detail**

Fee for tax services rendered from October 16, 2006 through April 15, 2007
related to the following:

Services related to the New York state audit for BG Sulzle
Inc. for the tax years ended December 31, 2003 through 2005,
billed in accordance with agreement.

| | | |
|---|---|---|
| Gattone | 3.0 hours | |
| Vlahos | 27.5 hours | |
| Staff | <u>20.2</u> hours | |
| | 50.7 hours | $15,000 |

Special services related to research, information gathering, and
consultations and correspondence with Angiotech personnel
in connection with their analysis and reconciliation of AMIH group
foreign and US deferred taxes.  Included written correspondence
and conference calls to address various questions regarding the
deferred tax accounts, as part of Angiotech internal project.

| | | |
|---|---|---|
| Gattone | 2.5 hours | |
| Vlahos | 19.5 hours | |
| Staff | <u>3.5</u> hours | |
| | 25.5 hours | $8,950 |

Review of and correspondence related to various notices
received, including responses to federal, state, and Canadian
notices.

| | | |
|---|---|---|
| Vlahos | 3.0 hours | |
| Staff | <u>7.5</u> hours | |
| | 10.5 hours | $2,370 |

Special services provided to Angiotech related to the analysis of
the income taxes receivable account for the AMIH group, including
providing information, written correspondence, and conference calls
to address questions regarding tax refund amounts.

| | | |
|---|---|---|
| Gattone | 1.5 hours | |
| Vlahos | 10.0 hours | |
| Staff | <u>2.0</u> hours | |
| | 13.5 hours | $4,720 |

Various domestic and foreign corporate matters, including
various questions regarding the UK and Denmark, transaction
costs, details regarding AMIH group and IRC Section 280G, and
other matters.

| | |
|---|---|
| Gattone | 4.0 hours |

PRICEWATERHOUSECOOPERS ®

| | | |
|---|---|---|
| Vlahos | <u>3.4</u> hours | |
| | 7.4 hours | $3,580 |

Correspondence with the state of Michigan regarding the filing of
the Michigan tax return for the 2004 tax year and subsequent refilling
of the return.

| | | |
|---|---|---|
| Vlahos | 0.5 hour | |
| Staff | <u>3.5</u> hours | |
| | 4.0 hours | <u>$750</u> |

|   |   |
|---|---|
| *Total* | $35,370 |

**Internal Revenue Service**                                      **Department of the Treasury**

Date: 07/05/2007

Taxpayer Name:
  American Medical Instruments Holdings Inc..
Taxpayer Identification Number:
  56-2331114
Tax Form:
  1120
Tax Period(s):
  12/31/2004; 12/31/2005 & 03/23/2006
Person to Contact:
  Arnold P. Jansen

Internal Revenue Service
860 E. Algonquin Road
LMSB:RFPH:1356/SHG 4418
Schaumburg, IL 60173

Employee Identification Number:
  36-09146
Telephone Number:
  847-303-7825
Fax Number:
  847-303-7777

Dear Taxpayer

This letter confirms our telephone conversation that the examination will be conducted at the following location:

We will schedule our first meeting to also take place at the same location.

Location:                                            Date:
    272 East Deerpath Road
    Suite 350                                        Time:
    Lake Forest, Il 60045

**What is the Purpose of the Appointment**

The purpose of our first meeting is to understand your business operations and policies and to begin the examination process. We will discuss specific examination procedures, such as communication methods, response times and other general expectations.

**Someone May Represent You**

You may have someone represent you during any part of this examination. If you want someone to represent you, please provide me with a completed Form 2848, *Power of Attorney and Declaration of Representative*, at our first appointment.

**Letter 3253 (Rev 10-2005)**
Catalog Number 28278E

If you prefer, you may mail or fax the form to me prior to our first appointment. You can get this form from our office, from our web site at www.irs.gov, or by calling 1-800-829-3676. If you decide that you wish to get representation after the examination has started, we will delay further examination activity until you can secure representation.

**Your Rights As A Taxpayer**

We have enclosed Publication 1, *Your Rights as a Taxpayer,* and Notice 609, *Privacy Act Notice.* We encourage you to read the Declaration of Taxpayer Rights found in Publication 1. This publication discusses general rules and procedures we follow in examinations. It explains what happens before, during, and after an examination, and provides additional sources of information.

Please contact me if you have any questions you would like to discuss.

Thank you for your cooperation.

Sincerely,

Arnold P. Jansen
Internal Revenue Agent

Enclosure:

Publication 1
Notice 609

**Letter 3253 (Rev. 10-2005)**
Catalog Number 28278E



**IRS**

Department of the Treasury
**Internal Revenue Service**

**Publication 1**

(Rev. May 2005)

Catalog Number 64731W

**www.irs.gov**

# Your Rights as a Taxpayer

*The first part of this publication explains some of your most important rights as a taxpayer. The second part explains the examination, appeal, collection, and refund processes. This publication is also available in Spanish.*

## Declaration of Taxpayer Rights

### I. Protection of Your Rights

IRS employees will explain and protect your rights as a taxpayer throughout your contact with us.

### II. Privacy and Confidentiality

The IRS will not disclose to anyone the information you give us, except as authorized by law. You have the right to know why we are asking you for information, how we will use it, and what happens if you do not provide requested information.

### III. Professional and Courteous Service

If you believe that an IRS employee has not treated you in a professional, fair, and courteous manner, you should tell that employee's supervisor. If the supervisor's response is not satisfactory, you should write to the IRS director for your area or the center where you file your return.

### IV. Representation

You may either represent yourself or, with proper written authorization, have someone else represent you in your place. Your representative must be a person allowed to practice before the IRS, such as an attorney, certified public accountant, or enrolled agent. If you are in an interview and ask to consult such a person, then we must stop and reschedule the interview in most cases.

You can have someone accompany you at an interview. You may make sound recordings of any meetings with our examination, appeal, or collection personnel, provided you tell us in writing 10 days before the meeting.

### V. Payment of Only the Correct Amount of Tax

You are responsible for paying only the correct amount of tax due under the law—no more, no less. If you cannot pay all of your tax when it is due, you may be able to make monthly installment payments.

### VI. Help With Unresolved Tax Problems

The Taxpayer Advocate Service can help you if you have tried unsuccessfully to resolve a problem with the IRS. Your local Taxpayer Advocate can offer you special help if you have a significant hardship as a result of a tax problem. For more information, call toll free 1–877–777–4778 (1–800–829–4059 for TTY/TDD) or write to the Taxpayer Advocate at the IRS office that last contacted you.

### VII. Appeals and Judicial Review

If you disagree with us about the amount of your tax liability or certain collection actions, you have the right to ask the Appeals Office to review your case. You may also ask a court to review your case.

### VIII. Relief From Certain Penalties and Interest

The IRS will waive penalties when allowed by law if you can show you acted reasonably and in good faith or relied on the incorrect advice of an IRS employee. We will waive interest that is the result of certain errors or delays caused by an IRS employee.

## THE IRS MISSION

*PROVIDE AMERICA'S TAXPAYERS TOP QUALITY SERVICE BY HELPING THEM UNDERSTAND AND MEET THEIR TAX RESPONSIBILITIES AND BY APPLYING THE TAX LAW WITH INTEGRITY AND FAIRNESS TO ALL.*

# Examinations Appeals Collections and Refunds

## Examinations  Audits

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change  or, you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. First, we use computer programs to identify returns that may have incorrect amounts. These programs may be based on information returns, such as Forms 1099 and W 2, on studies of past examinations, or on certain issues identified by compliance pro ects. Second, we use information from outside sources that indicates that a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine that the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

### By Mail

We handle many examinations and inquiries by mail. We will send you a letter with either a request for more information or a reason why we believe a change to your return may be needed. You can respond by mail or you can request a personal interview with an examiner. If you mail us the requested information or provide an explanation, we may or may not agree with you, and we will explain the reasons for any changes. Please do not hesitate to write to us about anything you do not understand.

### By Interview

If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS. If our examiner proposes any changes to your return, he or she will explain the reasons for the changes. If you do not agree with these changes, you can meet with the examiner's supervisor.

### Repeat Examinations

If we examined your return for the same items in either of the 2 previous years and proposed no change to your tax liability, please contact us as soon as possible so

we can see if we should discontinue the examination.

## Appeals

If you do not agree with the examiner's proposed changes, you can appeal them to the Appeals Office of IRS. Most differences can be settled without expensive and time consuming court trials. Your appeal rights are explained in detail in both Publication 5, Your Appeal Rights and How To Prepare a Protest If You Don't Agree, and Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund.

If you do not wish to use the Appeals Office or disagree with its findings, you may be able to take your case to the U.S. Tax Court, U.S. Court of Federal Claims, or the U.S. District Court where you live. If you take your case to court, the IRS will have the burden of proving certain facts if you kept adequate records to show your tax liability, cooperated with the IRS, and meet certain other conditions. If the court agrees with you on most issues in your case and finds that our position was largely un ustified, you may be able to recover some of your administrative and litigation costs. You will not be eligible to recover these costs unless you tried to resolve your case administratively, including going through the appeals system, and you gave us the information necessary to resolve the case.

## Collections

Publication 594, The IRS Collection Process, explains your rights and responsibilities regarding payment of federal taxes. It describes:

- What to do when you owe taxes. It describes what to do if you get a tax bill and what to do if you think your bill is wrong. It also covers making installment payments, delaying collection action, and submitting an offer in compromise.
- IRS collection actions. It covers liens, releasing a lien, levies, releasing a levy, seizures and sales, and release of property.

Your collection appeal rights are explained in detail in Publication 1660, Collection Appeal Rights.

## Innocent Spouse Relief

Generally, both you and your spouse are each responsible for paying the full amount of tax, interest, and penalties due on your  oint return. However, if you qualify for innocent spouse relief, you may be relieved of part or all of the  oint liability. To request relief, you must file Form 8857, Request for Innocent Spouse Relief no later than 2 years after the date

on which the IRS first attempted to collect the tax from you. For example, the two  year period for filing your claim may start if the IRS applies your tax refund from one year to the taxes that you and your spouse owe for another year. For more information on innocent spouse relief, see Publication 971, Innocent Spouse Relief, and Form 8857.

## Potential Third Party Contacts

Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

## Refunds

You may file a claim for refund if you think you paid too much tax. You must generally file the claim within 3 years from the date you filed your original return or 2 years from the date you paid the tax, whichever is later. The law generally provides for interest on your refund if it is not paid within 45 days of the date you filed your return or claim for refund. Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund, has more information on refunds.

If you were due a refund but you did not file a return, you generally must file your return within 3 years from the date the return was due (including extensions) to get that refund.

## Tax Information

The IRS provides the following sources for forms, publications, and additional information.

- **T**                    1–800–829–1040 (1–800–829–4059 for TTY/TDD)
- 1–800–829–3676 (1–800–829–4059 for TTY/TDD)
- **I**                    .irs.gov
- **S**            **O**            A small business entity can participate in the regulatory process and comment on enforcement actions of IRS by calling 1 888 REG FAIR.
- **T**        **I**                    **T** You can confidentially report misconduct, waste, fraud, or abuse by an IRS employee by calling 1–800–366–4484 (1–800–877–8339 for TTY/TDD). You can remain anonymous.

✪

 **Department of the Treasury**
**Internal Revenue Service**

## Notice 609
(Rev. December 2004)

## Privacy Act Notice

The Privacy Act of 1974 says that when we ask you for information, we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if you do not provide it and whether or not you must respond under the law.

This notice applies to tax returns and any papers filed with them. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.

Our legal right to ask for information is found in Internal Revenue Code sections 6001, 6011, and 6012(a) and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections.

Code section 6109 and its regulations say that you must show your social security number, employer identification number or individual taxpayer identification number on what you file. Section 6109 also requires return preparers to provide their identifying numbers on the return. You must also fill in all parts of the tax form that apply to you. This is so we know who you are and can process your return and papers. You do not have to check the boxes for the Presidential Election Campaign Fund.

We ask for tax return information to carry out the U.S. tax laws. We need it to figure and collect the right amount of tax.

We may give the information to the Department of Justice and to other federal agencies, as provided by law. We may also give it to cities, states, the District of Columbia, and U.S. commonwealths or possessions to carry out their tax laws. And we may give it to

Notice **609** (12-2004)
Cat. No. 45963A

certain foreign governments under tax treaties they have with the United States. We may also disclose this information to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

If you do not file a return, do not give us the information we ask for, or provide fraudulent information, the law says that we may have to charge you penalties and, in certain cases, subject you to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on your tax return. This could make your tax higher or delay any refund. Interest may also be charged.

Please keep this notice with your records. You may want to refer to it if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

# Exhibit 16

RECEIVED

SEP 1 4 2007

HellerEhrmanLLP

# UNGARETTI & HARRIS

F. THOMAS HECHT
Direct Dial: 312.977.4322
E-Mail: fthecht@uhlaw.com

September 13, 2007

**BY FEDERAL EXPRESS**

Mr. Bill Stanger
Senior Corporate Counsel
Angiotech Pharmaceuticals, Inc.
1618 Station Street
Vancouver, BC Canada V6A 1B6
Telephone: (604) 221-7676
Facsimile: (604) 221-2330

UNGARETTI & HARRIS LLP

**CHICAGO**
3500 Three First National Plaza
Chicago, Illinois 60602.4283
Telephone: 312.977.4400
Fax: 312.977.4405

**WASHINGTON**
1500 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.639.7500
Fax: 202.639.7505

**SPRINGFIELD**
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7950

www.uhlaw.com

Dear Mr. Stanger:

Thank you for your correspondence of September 6, 2007 (the "Letter"). And thank you for confirming the accuracy of our request that Angiotech pay RoundTable $136,424.80 for certain tax overpayments.

With regard to your offsetting claims totaling $184,769.00, RoundTable will undertake an investigation of each item and report back to you as soon as practicable. In order to facilitate the process, could you please provide us with the appropriate documentation pertaining to each of the items including:

(a)    correct and complete copies of all assessments, claims, notices or correspondence that Angiotech or its subsidiaries have received from any taxing authority relating to each of the items included in your Letter;

(b)    correct and complete copies of all written correspondence or responses and written summaries of all oral responses that Angiotech or its subsidiaries have made to each taxing authority relating to each of the items included in your Letter;

(c)    any other claims (and correspondence relating thereto), made by any taxing authority against American Medical Instruments Holdings, Inc., or its subsidiaries relating to periods prior to March 23, 2006;

980345-2

UNGARETTI
&HARRIS

Angiotech Pharmaceuticals, Inc.
September 13, 2007
Page 2

(d)    a description of how Angiotech first learned of each of the items included in your Letter; and

(e)    whether any of the items included in your Letter items were accrued on the closing balance sheet.

We remind you under Section 10.4 of the Purchase Agreement of Angiotech's obligation to use commercially reasonable efforts to:

- cooperate fully in preparing for any audits of, or disputes with taxing authorities regarding, any tax returns of American Medical Instruments Holdings, Inc. or any of its subsidiaries; and

- retain and make available to the other and to any taxing authority as reasonably requested, all information, records and documents relating to taxes of American Medical Instruments Holdings, Inc. or any of its subsidiaries.

We request that you provide us with a power of attorney for each of the taxing authorities described in your Letter and provide us with access to Angiotech's and AMI's books and records so that we might properly evaluate these matters.

Len Kuhr will be contacting Lance Langton by email to discuss directly the process for dealing with these matters and the IRS audit.

Finally, please confirm that Angiotech/AMI has received no further refunds or comparable payments relating to pre-closing time periods.

Very truly yours,

F. Thomas Hecht

cc:    Angiotech Pharmaceuticals, Inc.
       Facsimile: (604) 221-2330
       Tom Bailey, Chief Financial Officer

980345-2

UNGARETTI
&  HARRIS

Angiotech Pharmaceuticals, Inc.
September 13, 2007
Page 3

HellerEhrman, LLP
Facsimile:  (206) 447-0849
Attention:  Warren J. Rheaume

RoundTable Healthcare Partners, L.P.
Facsimile:  (847) 482-9215
Attention:  Todd E. Warnock
            Leonard G. Kuhr
            R. Craig Collister
            Sue Cho

Ungaretti & Harris LLP
Facsimile:  (312) 977-4405
Attention: Gary I. Levenstein, Esq.
            Brian Krob, Esq.

# Exhibit 17

1618 Station Street
Vancouver, BC, Canada  V6A 1B6
Main: 604.221.7676  Fax: 604.221.2330
www.angiotech.com



Tuesday, November 27, 2007

Mr. F. Thomas Hecht
Ungaretti & Harris
8500 Three First National Plaza
Chicago IL  60602-4283

Dear Mr. Hecht:

**Re:    September 13, 2007 letter to Bill Stanger, Angiotech Pharmaceuticals, Inc.**

In connection with your request for appropriate documentation supporting each of the state and IRS reassessments, we note the following (the same details apply for each item):

(a) We have attached correct and complete copies of all assessments, claims, notices and/or correspondence as requested for Angiotech or our subsidiaries.

(b) We have not received any additional written correspondence other than attached as per item (a).

(c) We have now received a proposed assessment for taxes against American Medical Instruments Holdings, for periods prior to March 23, 2006.

(d) We first learned that of these assessments via correspondence received via postal mail.

(e) None of the items included in our letter items were accrued on our closing balance sheet.

We will also take this opportunity to bring to your attention two additional assessments we have received for taxation periods prior to March 23, 2006. Surgical Specialties Corporation ("SSC") has received notices of assessment from the state of Texas for both sales tax and franchise tax for the 2003 to 2006 taxation periods. Because SSC did not file any tax returns for these periods, the onus is on the company to file the returns and otherwise validate the accuracy of the assessments or, alternatively, accept the assessments as issued. We will leave this to your discretion. The proposed assessments are attached. The pro-rated amounts which are liabilities of RoundTable are calculated as follows:

Texas sales tax          (65,425 + 5,200) x 39/52 mos = 53,718.
                         Jan. 1/03 – Apr. 30/07, prorated to Mar. 23/06.

Texas franchise tax    (58,509 + 4,800) x 39/48 mos = 51,438.
Jan. 1/03 – Dec. 31/06, prorated to Mar. 23/06.

From the summary attached, you can see that the total amount owing to Angiotech at this time is $198,806.00. Offset against the $136,424.80 that you contend is due to RoundTable, that leaves $62,381.20 owing to Angiotech. Please have your client forward that amount.


Sincerely,

**ANGIOTECH PHARMACEUTICALS, INC.**

Bill Stanger
Senior Corporate Counsel


Enclosures

cc:     Warren Rheume, Heller Ehrman
Lance Langton, Angiotech

2