UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROUNDTABLE HEALTHCARE PARTNERS, L.P., a Delaware Limited Partnership, | : |
| Plaintiff, | : **ANSWER TO COUNTERCLAIMS** |
| v. | : Civil Action No.: 08-CV-02968 (MGC) |
| ANGIOTECH PHARMACEUTICALS (U.S.), INC., a Washington Corporation, | : Filed Electronically |
| Defendant. | : |

RoundTable Healthcare Partners, L.P., a Delaware Limited Partnership ("RoundTable"), by its undersigned counsel, makes the following answer to the Counterclaims of Angiotech Pharmaceuticals (U.S.), Inc., a Washington Corporation ("Angiotech"), and asserts the following affirmative defenses against Angiotech:

## ANGIOTECH'S COUNTERCLAIMS

84.    Angiotech and RoundTable are parties to the Stock Purchase Agreement.

**ANSWER:**    RoundTable admits the allegations contained in Paragraph 84.

85.    Pursuant to the Stock Purchase Agreement, Angiotech purchased all of the outstanding shares of AMIH from RoundTable and the other parties to the Stock Purchase Agreement.

**ANSWER:**    RoundTable admits that RoundTable and Angiotech are parties to the Stock Purchase Agreement.  To the extent the allegations of Paragraph 85 purport to summarize the Stock Purchase Agreement, the Stock Purchase Agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.

86.    Pursuant to Article III of the Stock Purchase Agreement, RoundTable made a

1

number of representations and warranties to Angiotech regarding AMIH.

**ANSWER:** RoundTable denies the allegations contained in Paragraph 86, and specifically notes that it made no representations or warranties to Angiotech regarding AMIH in Article III of the Stock Purchase Agreement.

87.     In § 3.10 of the Stock Purchase Agreement, RoundTable represented that "[a]ll manufacturing operations of [AMIH] are being conducted in substantial compliance with applicable good manufacturing practices"; that AMIH has "complied in all material respects with all statutes, laws, ordinances, rules, regulations[,] standard, requirement, administrative ruling, policy, Order, principal of common law, legal doctrine, code, treaty or process" of applicable government entities; that products subject to the jurisdiction of the FDA are "being developed, manufactured, held and distributed in substantial compliance with all applicable requirements under the FDCA," and other related representations regarding the facilities' compliance with legal and regulatory requirements. Compl. Ex. A § 3.10.

**ANSWER:** RoundTable denies the allegations contained in Paragraph 87.

88.     In § 3.19 of the Stock Purchase Agreement, RoundTable represented that AMIH had no "Liabilities or obligations of any nature (and there is no basis for any present or future Action against [AMIH] giving rise to any Liability)" except certain disclosed categories of liabilities. *Id.* § 3.19.

**ANSWER:** RoundTable denies the allegations contained in Paragraph 88.

89.     In reliance on these representations, Angiotech paid approximately $785 million to RoundTable to purchase the outstanding shares of AMIH. Section 2.4 of the Stock Purchase Agreement required Angiotech to deposit $20 million of the purchase price into an escrow account.

**ANSWER:** RoundTable admits that Angiotech paid approximately $785 million to RoundTable and the other equity holders of AMIH to purchase the outstanding equity securities of AMIH. RoundTable admits further that § 2.4 of the Stock Purchase Agreement required Angiotech to deposit $20 million of the purchase price into an escrow account. To the extent the remaining allegations of Paragraph 89 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. To the extent any additional allegations in Paragraph 89 remain,

2

RoundTable denies those allegations.

90.    In order to effectuate § 2.4 of the Stock Purchase Agreement, Angiotech and RoundTable, along with LaSalle as escrow agent, entered into the Escrow Agreement. Angiotech deposited the $20 million required by § 2.4 of the Stock Purchase Agreement with LaSalle consistent with the terms of the Stock Purchase Agreement.

**ANSWER:**    RoundTable admits that RoundTable, Angiotech and LaSalle as escrow agent entered into the Escrow Agreement. RoundTable admits that Angiotech deposited $20 million with LaSalle as escrow agent. To the extent the allegations of Paragraph 90 purport to summarize the Stock Purchase Agreement and/or the Escrow Agreement, those agreements speak for themselves and RoundTable refers to the documents for a complete and accurate recitation of their contents.

91.    The Escrow Agreement permits LaSalle to file an interpleader action under certain circumstances in order to relieve LaSalle of potential liability in the event of a dispute between Angiotech and RoundTable regarding the parties' entitlement to the escrow funds. Compl. Ex. B § 5(a). The Escrow Agreement also permits LaSalle to withhold from the escrow funds "an amount sufficient to compensate itself for all reasonable costs, expenses and charges, and reasonable attorneys' fees actually incurred by it due to the interpleader action." *Id.* Finally, the Escrow Agreement provides that Angiotech and RoundTable must contribute equally to LaSalle's compensation for its services. *Id.* § 8.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 91 have accurately quoted a portion of § 5 of the Escrow Agreement. To the extent the allegations of Paragraph 91 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations contained in Paragraph 91.

92.    RoundTable was very pleased with the transaction and with Angiotech. RoundTable's founder and managing partner described Angiotech as "an outstanding partner to work with on this transaction." RoundTable also admitted that the transaction with Angiotech "represent[ed] a return in excess of seven times RoundTable's invested equity capital." Although Angiotech was unaware at the time, part of the reason was that, contrary to its representations and warranties to Angiotech, RoundTable had not been operating the facilities in full compliance with regulatory requirements.

3

**ANSWER:**    RoundTable admits that the allegations of Paragraph 92 have accurately quoted a portion of a March 24, 2006 press release by RoundTable. RoundTable denies the allegations contained in the third sentence of Paragraph 92. To the extent the remaining allegations of Paragraph 92 purport to summarize the March 24, 2006 press release by RoundTable, that press release speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations contained in Paragraph 92.

### Angiotech's Escrow Claim Notice and RoundTable's Reaction

93.    The Escrow Agreement requires Angiotech to submit a notice of any claim for damages in substantially the form included as Exhibit B to the Escrow Agreement. Compl. Ex. B § 3(a). The Escrow Agreement requires the parties to attempt to resolve any disputes over the escrow funds in good faith. *Id.* § 3(b).

**ANSWER:**    To the extent the allegations of Paragraph 93 purport to summarize the Escrow Agreement, that agreement speaks for itself and RoundTable refers to the Escrow Agreement for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations of Paragraph 93.

94.    Angiotech timely submitted its Escrow Claim Notice on April 4, 2007. That Escrow Claim Notice was substantially in the form required by the Escrow Agreement and set forth Angiotech's claim to all of the escrow funds held by LaSalle because the aggregate damages Angiotech had suffered as a result of RoundTable's breach of its representations and warranties exceeded the amount of the escrow funds held by LaSalle. Angiotech specifically advised LaSalle and RoundTable that it "believe[d] in good faith that the Requested Funds are a reasonable estimate of the amount to which [Angiotech was] entitled." Compl. Ex. C.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 94 have accurately quoted a portion of Angiotech's April 4, 2007 Escrow Claim Notice. To the extent the allegations of Paragraph 94 purport to summarize the Escrow Agreement, that agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its

4

contents.    RoundTable denies all remaining allegations of Paragraph 94.

95.    Exhibit A to the Escrow Claim Notice included a description of the damages Angiotech had suffered as a result of RoundTable's breach of its representations and warranties regarding AMIH. There were two broad categories of damages. First, Angiotech suffered damages due to liabilities that RoundTable had failed to disclose in violation of its representation and warranty that AMIH had no liabilities other than specified categories of liabilities contained in § 3.19 of the Stock Purchase Agreement. Second, Angiotech suffered damages due to the investigation and remediation costs Angiotech incurred in bringing the facilities into compliance with applicable legal and regulatory requirements because RoundTable had falsely represented and warranted that those facilities were in compliance when, in fact, they were not.

**ANSWER:**    To the extent the allegations of Paragraph 95 purport to summarize the

Escrow Claim Notice and Exhibit A thereto, those documents speaks for themselves and

RoundTable refers to those documents document for a complete and accurate recitation of their

contents.    RoundTable denies all remaining allegations of Paragraph 95.

96.    RoundTable immediately set out to prevent Angiotech from recovering any of the escrow funds, despite Angiotech's contractual right to those funds as a result of RoundTable's breach of its representations and warranties regarding AMIH. Even though RoundTable claims that it does not have information about the underlying basis for Angiotech's claim, RoundTable immediately took an unsubstantiated position regarding that claim. In its Notice of Objection, RoundTable declared that Angiotech's claim was "without merit" and not "timely made." Compl. Ex. D. Although RoundTable complains, on the one hand, that Angiotech's Escrow Claim Notice did not provide sufficient detail, RoundTable's own Notice of Objection is even less descriptive. *Id*.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 96 have accurately

quoted a portion of RoundTable's Notice of Objection.    To the extent the allegations of

Paragraph 96 purport to summarize the Notice of Objection, that document speaks for itself and

RoundTable refers to the document for a complete and accurate recitation of its contents.

RoundTable denies all remaining allegations of Paragraph 96.

97.    Contrary to the letter and spirit of the Escrow Agreement, RoundTable made no attempt whatsoever to discuss the claim with Angiotech. Instead, it submitted its Notice of Objection without making any effort to address these issues with Angiotech. Only after objecting to Angiotech's entire claim as "without merit" and not "timely made," did RoundTable make any attempt to address the claim with Angiotech.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 97.

98.    RoundTable first contacted Angiotech about the Escrow Claim Notice on April 16, 2007. Compl. Ex. E. It sent a letter declaring that it had not breached any representations or warranties. *Id.* It acknowledged that it had an obligation under the Escrow Agreement to work with Angiotech in good faith to resolve these issues. *Id.* However, it declared that Angiotech was not in compliance with § 9.5 of the Stock Purchase Agreement. *Id.*

**ANSWER:**    To the extent the allegations of Paragraph 98 purport to summarize

RoundTable's Notice of Objection, that document speaks for itself and RoundTable refers to the

document for a complete and accurate recitation of its contents.    RoundTable denies all

remaining allegations of Paragraph 98.

99.    RoundTable's interpretation of the Stock Purchase Agreement and the Escrow Agreement to require extensive substantiation of Angiotech's claim to be contained in the Escrow Claim Notice was both incorrect and unreasonable. The Escrow Claim Notice provided a sufficient amount of detail and substantially complied with the requirements of the Escrow Agreement.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 99.

100.    RoundTable went on to make a series of excessive demands for information from Angiotech, including all relevant documents and data and also including detailed information about any person, "whether or not they are employed by Angiotech," who has knowledge of the issues addressed in Angiotech's Escrow Claim Notice and a description of the knowledge they possessed. Compl. Ex. E. RoundTable also demanded a time that it could be granted general access to the books and records of Angiotech. *Id.* Given the type of damages at issue, it was not possible or practicable for Angiotech to provide the materials RoundTable demanded in a short amount of time, even absent concerns regarding preserving the sensitive, confidential, and often privileged, nature of those materials.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 100 have accurately

quoted a portion of RoundTable's April 16, 2007 letter to Angiotech.    To the extent the

allegations of Paragraph 100 purport to summarize RoundTable's April 16, 2007 letter to

Angiotech, that document speaks for itself and RoundTable refers to the document for a

complete and accurate recitation of its contents.    RoundTable denies all remaining allegations

of Paragraph 100.

6

101.    About one week later, Angiotech responded via letter and informed counsel for RoundTable that it was "working to gather" all relevant documents. Compl. Ex. F.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 101 have accurately quoted a portion of Angiotech's April 24, 2007 letter to RoundTable. To the extent the allegations of Paragraph 101 purport to summarize Angiotech's April 24, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 101.

### RoundTable Pushes LaSalle to File an Interpleader, Increasing the Costs for Both Parties

102.    On May 16, 2007, without any further attempt to communicate with Angiotech, RoundTable demanded that LaSalle release all of the escrow funds to RoundTable. In the alternative, RoundTable demanded that LaSalle file an interpleader action. Compl. Ex. G.

**ANSWER:**    To the extent the allegations of Paragraph 102 purport to summarize the RoundTable's May 16, 2007 letter to Angiotech, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 102.

103.    Angiotech attempted to work with RoundTable. Angiotech wrote an email to counsel for RoundTable on June 11, 2007. Compl. Ex. H. Angiotech proposed that the parties work together to determine how the funds should be distributed. *Id.* Angiotech specifically informed RoundTable that such a course of action would "avoid the necessity of an interpleader action and the associated costs," and invited RoundTable's thoughts on this proposal. *Id.*

**ANSWER:**    RoundTable denies that Angiotech attempted to work with RoundTable. RoundTable admits that its counsel received an email from Angiotech on June 11, 2007. RoundTable admits that the allegations of Paragraph 103 have accurately quoted a portion of Angiotech's June 11, 2007 email to RoundTable's counsel. To the extent the allegations of Paragraph 103 purport to summarize Angiotech's June 11, 2007 email to RoundTable's counsel,

7

that email speaks for itself and RoundTable refers to the email for a complete and accurate

recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 103.

104.    RoundTable refused to cooperate and would not even discuss asking LaSalle to delay filing the interpleader action until it received claim substantiation materials.    Compl. Ex. H.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 104.

105.    On June 27, 2007, RoundTable again wrote to LaSalle and again asked LaSalle to file an interpleader action. Compl. Ex. K.

**ANSWER:**    To the extent the allegations of Paragraph 105 purport to summarize

RoundTable's counsel's June 27, 2007 letter to Angiotech's counsel, that letter speaks for itself

and RoundTable refers to the document for a complete and accurate recitation of its contents.

106.    LaSalle complied with RoundTable's repeated demands and filed the Interpleader Action on July 3, 2007. Compl. Ex. L.

**ANSWER:**    RoundTable admits that LaSalle filed the Interpleader Action on July 3,

2007. RoundTable denies all remaining allegations of Paragraph 106.

107.    Because the Escrow Agreement obligates Angiotech and RoundTable to pay the attorneys fees and costs that LaSalle incurs, RoundTable's actions directly increased the costs to both parties.

**ANSWER:**    To the extent the remaining allegations of Paragraph 107 purport to

summarize the Escrow Agreement, that agreement speaks for itself and RoundTable refers to the

document for a complete and accurate recitation of its contents.    RoundTable denies all

remaining allegations of Paragraph 107.

### RoundTable Breaches Its Agreement to Litigate Disputes in New York and Unnecessarily Increases the Parties' Costs

108.    RoundTable seized on LaSalle's Interpleader Action as an opportunity to avoid its contractual obligation to litigate disputes with Angiotech in the New York courts.    When RoundTable answered LaSalle's Complaint in Interpleader, it also asserted cross claims against Angiotech alleging breach of contract claims similar to the claims it alleges in this Complaint. A

8

true and correct copy of RoundTable's Answer and Cross-Claim is attached as Exhibit 1. RoundTable's attempt to assert these claim in the Chicago Court, as well as RoundTable's actions in that litigation, directly increased the costs of resolving the escrow claim for both parties and served to further delay the ultimate resolution of their respective entitlement to the escrow funds.

**ANSWER:**    RoundTable admits the allegations contained in the second sentence of

Paragraph 108. RoundTable admits that a true and correct copy of RoundTable's Answer and

Cross-Claim is attached as Exhibit 1 to Angiotech's Answer and Counterclaim. RoundTable

denies all other allegations of Paragraph 108.

109.    On August 24, 2007, Angiotech wrote to RoundTable regarding the cross claims RoundTable had attempted to assert against Angiotech and asked RoundTable to dismiss its cross claims voluntarily. A true and correct copy of Angiotech's August 24, 2007 letter is attached as Exhibit 2. Angiotech reminded RoundTable that "Section 11.6(a) of the Stock Purchase Agreement requires any claims to be pursued in the New York state courts, or the federal courts situated in the state of New York." *Id.* Angiotech further informed RoundTable that, consistent with the plain language of the Stock Purchase Agreement, "the Cook County Circuit Courts lack jurisdiction over RoundTable's cross-claims." *Id.* Angiotech asked RoundTable to "[p]lease let us know if you will agree to voluntarily dismiss, without prejudice, your cross-claims against Angiotech so that Angiotech can avoid the necessity of filing a motion to dismiss." *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated August

24, 2007. RoundTable admits that a true and correct copy of Angiotech's August 24, 2007 letter

is attached as Exhibit 2 to Angiotech's Answer and Counterclaims. RoundTable admits that the

allegations of Paragraph 109 have accurately quoted a portion of Angiotech's August 24, 2007

letter to RoundTable. To the extent the allegations of Paragraph 109 purport to summarize

Angiotech's August 24, 2007 letter to RoundTable, that document speaks for itself and

RoundTable refers to the document for a complete and accurate recitation of its contents.

RoundTable denies all remaining allegations of Paragraph 109.

110.    RoundTable refused. A true and correct copy of RoundTable's August 28, 2007 letter is attached as Exhibit 3. It claimed that its cross claims were compulsory, *id.,* despite the fact that there is no such thing under Illinois law and the contrary language of the Stock Purchase Agreement.    Thus, Angiotech was forced to prepare and file a motion to dismiss, again

9

increasing the costs of resolving the entitlement to the escrow funds and delaying the ultimate resolution of the real dispute between the parties.

**ANSWER:**    RoundTable admits that it sent a letter to Angiotech dated August 28, 2007. RoundTable admits that true and correct copy of RoundTable's August 28, 2007 letter is attached as Exhibit 3 to Angiotech's Answer and Counterclaim. To the extent the allegations of Paragraph 110 purport to summarize RoundTable's August 28, 2007 letter to Angiotech, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 110.

111.    Despite RoundTable's recalcitrance, Angiotech attempted to work with RoundTable to minimize the costs of the Interpleader Action. Upon receiving RoundTable's Answer and Cross Claims, Angiotech noted that all parties agreed that LaSalle "should be permitted to pay the funds it holds into the registry of the Court." Ex. 2. Angiotech pointed out that this would not benefit any of the parties or the Court and suggested that all parties would benefit from simply permitting LaSalle to retain the funds and continue to manage them. *Id.* Angiotech further explained that, because Angiotech and RoundTable were the true interested parties, LaSalle did not need to be actively involved in the litigation once an order was in place allowing it to continue holding the funds. *Id.* Angiotech provided RoundTable with a draft order along those lines and notified RoundTable that LaSalle did not object to the order. *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated August 24, 2007. RoundTable admits that the allegations of Paragraph 111 have accurately quoted a portion of Angiotech's August 24, 2007 letter to RoundTable. To the extent the allegations of Paragraph 111 purport to summarize Angiotech's August 24, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 111.

112.    Again, RoundTable refused. It demanded that LaSalle remain a party to the action before it would even discuss having LaSalle retain the funds. Ex. 3.

**ANSWER:**    RoundTable admits that it sent a letter to Angiotech dated August 28, 2007. To the extent the allegations of Paragraph 112 purport to summarize RoundTable's August 28, 2007 letter to Angiotech, that document speaks for itself and RoundTable refers to

10

the document for a complete and accurate recitation of its contents.    RoundTable denies all

remaining allegations of Paragraph 112.

113.    On August 28, 2007, RoundTable served voluminous discovery requests on
Angiotech.

**ANSWER:**    RoundTable admits that it served written discovery on Angiotech in the

Interpleader Action dated August 28, 2007. RoundTable objects to Angiotech's use of the word

"voluminous" because it is vague and undefined. RoundTable denies all remaining allegations

of Paragraph 113.

114.    Angiotech again responded in the spirit of cooperation. A true and correct copy
of Angiotech's August 29, 2007 letter is attached as Exhibit 4. It provided RoundTable with a
revised order permitting LaSalle to continue to hold the escrow funds while the parties resolved
their entitlement to those funds. *Id.* It also asked RoundTable to agree to a stay of discovery
until the Chicago Court ruled on Angiotech's motion to dismiss because that motion went to the
jurisdiction of the court and, if granted, would result in a dismissal of all RoundTable's cross
claims. *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated August

29, 2007. RoundTable admits that a true and correct copy of Angiotech's August 29, 2007 letter

is attached as Exhibit 4 to Angiotech's Answer and Counterclaims. To the extent the allegations

of Paragraph 114 purport to summarize Angiotech's August 29, 2007 letter to RoundTable, that

document speaks for itself and RoundTable refers to the document for a complete and accurate

recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 114.

115.    RoundTable responded that it would take the issue "under consideration." A true
and correct copy of RoundTable's August 30, 2007 email is attached as Exhibit 5.

**ANSWER:**    RoundTable admits that the allegations of Paragraph 115 have accurately

quoted a portion of RoundTable's August 30, 2007, email to Angiotech. To the extent the

allegations of Paragraph 115 purport to summarize RoundTable's August 30, 2007 email to

Angiotech, that email speaks for itself and RoundTable refers to the email for a complete and

11

accurate recitation of its contents.   RoundTable admits that a true and correct copy of

RoundTable's August 30, 2007 email is attached as Exhibit 5 to Angiotech's Answer and

Counterclaim.

116.   On August 30, 2007, despite the fact that a motion to dismiss was pending that
would result in dismissal of RoundTable's cross claims and despite the fact that Angiotech had
not yet answered RoundTable's cross claims because of that pending motion, RoundTable filed a
motion for summary judgment, seeking all of the escrow funds.   A true and correct copy of
RoundTable's Motion for Summary Judgment is attached as Exhibit 6.

**ANSWER:**   RoundTable admits that it filed a motion for summary judgment seeking all

of the escrow funds on August 30, 2007.   RoundTable admits that a true and correct copy of

RoundTable's Motion for Summary Judgment is attached as Exhibit 6 to Angiotech's Answer

and Counterclaim.   RoundTable denies all remaining allegations of Paragraph 116.

117.   On August 31, 2007, the Chicago Court set a briefing schedule and hearing dates
for the pending motions and stayed all discovery until the hearing on the motion to dismiss. A
true and correct copy of the Chicago Court's August 31, 2007 order is attached as Exhibit 7.

**ANSWER:**   RoundTable admits the allegations contained in Paragraph 117.

118.   On September 5, 2007, Angiotech wrote to RoundTable again. A true and correct
copy of Angiotech's September 5, 2007 letter is attached as Exhibit 8. Angiotech asked whether
RoundTable would agree to the revised draft order it had provided permitting LaSalle to hold the
escrow funds.   *Id.*   It also stated: "Thus far, you have provided no indication as to whether
RoundTable will reconsider its position and either agree to the draft we proposed or provide us
with suggested revisions." *Id.*

**ANSWER:**   RoundTable admits that it received a letter from Angiotech dated

September 5, 2007.   RoundTable admits that the allegations of Paragraph 118 have accurately

quoted a portion of Angiotech's September 5, 2007 letter to RoundTable.   RoundTable admits

that a true and correct copy of Angiotech's September 5, 2007 letter to RoundTable is attached

as Exhibit 8 to Angiotech's Answer and Counterclaim.   To the extent the allegations of

Paragraph 118 purport to summarize Angiotech's September 5, 2007 letter to RoundTable, that

email speaks for itself and RoundTable refers to the email for a complete and accurate recitation

12

of its contents. RoundTable denies all remaining allegations contained in Paragraph 118.

119.    On September 12, 2007, RoundTable responded to Angiotech. A true and correct copy of RoundTable's September 12, 2007 email is attached as Exhibit 9. RoundTable provided a new draft order permitting LaSalle to hold the escrow funds, but that draft specifically required that LaSalle continue to be "served with all pleadings and treated in every way as a party." *Id.*

**ANSWER:**    RoundTable admits that it sent an email to Angiotech's counsel dated September 12, 2007.    RoundTable admits that a true and correct copy of RoundTable's September 12, 2007 email to Angiotech's counsel is attached as Exhibit 9 to Angiotech's Answer and Counterclaim.    RoundTable admits that the allegations of Paragraph 119 have accurately quoted a portion of RoundTable's September 12, 2007 email to Angiotech's counsel. To the extent the allegations of Paragraph 119 purport to summarize RoundTable's September 12, 2007 email to Angiotech's counsel, that email speaks for itself and RoundTable refers to the email for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations.

120.    On September 20, 2007, Angiotech again attempted to resolve the disagreements between the parties in a manner that minimized unnecessary expense. A true and correct copy of Angiotech's September 20, 2007 letter is attached as Exhibit 10. Angiotech noted the new draft order RoundTable had provided "seems only to serve to increase the burden on LaSalle of this action and, consequently, increase the amount of attorneys fees that both Angiotech and RoundTable will be required to pay for LaSalle's participation." *Id.* Nonetheless, Angiotech indicated that it would still consider agreeing if "RoundTable has a valid reason for requiring this level of participation from LaSalle." *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated September 20, 2007. RoundTable admits that the allegations of Paragraph 121 have accurately quoted a portion of Angiotech's September 20, 2007 letter to RoundTable. RoundTable admits that a true and correct copy of Angiotech's September 20, 2007 letter to RoundTable is attached as Exhibit 10 to Angiotech's Answer and Counterclaim.    To the extent the allegations of Paragraph 120 purport to summarize Angiotech's September 20, 2007 letter to RoundTable, that

13

letter speaks for itself and RoundTable refers to the letter for a complete and accurate recitation

of its contents. RoundTable denies all remaining allegations contained in Paragraph 120.

121.    RoundTable did not respond.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 121.

122.    On November 5, 2007, Angiotech again wrote to RoundTable. A true and correct copy of Angiotech's November 5, 2007 letter is attached as Exhibit 11. Angiotech again asked for RoundTable's response to the issues Angiotech raised regarding the proposed order. *Id.* Angiotech asked RoundTable to "please advise as to when RoundTable will have a substantive response on these issues." *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated

November 5, 2007. RoundTable admits that the allegations of Paragraph 122 have accurately

quoted a portion of Angiotech's November 5, 2007 letter to RoundTable. RoundTable admits

that a true and correct copy of Angiotech's November 5, 2007 letter to RoundTable is attached as

Exhibit 11 to Angiotech's Answer and Counterclaim. To the extent the allegations of Paragraph

122 purport to summarize Angiotech's November 5, 2007 letter to RoundTable, that letter speaks

for itself and RoundTable refers to the letter for a complete and accurate recitation of its

contents. RoundTable denies all remaining allegations in Paragraph 122.

123.    RoundTable did not respond.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 123.

124.    After additional delays in the proceedings caused by RoundTable's actions, the Chicago Court agreed that RoundTable's position lacked merit. On March 11, 2008, it granted Angiotech's motion to stay the Interpleader Action and it granted Angiotech's motion to dismiss RoundTable's cross claims because Angiotech and RoundTable had agreed to litigate those claims in New York and New York only. Compl. Ex. M.

**ANSWER:**    RoundTable admits that the Chicago Court stayed the Interpleader Action

on March 11, 2008. To the extent the allegations of Paragraph 124 purport to summarize the

Chicago Court's March 11, 2008 order, that order speaks for itself and RoundTable refers to the

14

document for a complete and accurate recitation of its contents. RoundTable denics all remaining allegations of Paragraph 124.

### Angiotech Attempts to Cooperate with RoundTable to Facilitate the Exchange of Claim Substantiation Materials, but RoundTable Stonewalls

125.    Angiotech has consistently attempted to work with RoundTable to facilitate the exchange of claim substantiation materials. Despite RoundTable's obligation under § 3(b) of the Escrow Agreement to attempt to resolve disputes over entitlement to the escrow funds in good faith and RoundTable's general obligation of good faith and fair dealing, Angiotech's efforts have been met with unreasonable opposition or outright stonewalling at every turn.

**ANSWER:**    To the extent the allegations of Paragraph 125 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations of Paragraph 125.

126.    Angiotech wrote an email to counsel for RoundTable on June 11, 2007. Compl. Ex. H. Angiotech indicated that, although it had assembled materials for RoundTable in support of Angiotech's claim, it was "having difficulty" with how to provide the materials to RoundTable without undermining the confidentiality of those materials. *Id.* Angiotech specifically informed RoundTable that the materials included highly sensitive documents regarding quality system problems at the facilities. *Id.* Angiotech invited a dialogue with RoundTable about how to share those materials in a manner that would not undermine confidentiality. *Id.*

**ANSWER:**    RoundTable admits that its counsel received an email from Angiotech on June 11, 2007. RoundTable admits that the allegations of Paragraph 126 have accurately quoted a portion of Angiotech's June 11, 2007 email to RoundTable's Counsel. To the extent the allegations of Paragraph 126 purport to summarize Angiotech's June 11, 2007 email to RoundTable's Counsel, that email speaks for itself and RoundTable refers to the email for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations contained in Paragraph 126.

127.    RoundTable refused to cooperate. Instead, counsel for RoundTable ignored

Angiotech's request and provided no suggestion regarding preserving the confidentiality of sensitive documents. Compl. Ex. H.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 127.

128.    Angiotech turned to outside counsel for assistance and again attempted to open the lines of communication with RoundTable about the claim support materials on June 20, 2007. Compl. Ex. I. Counsel for Angiotech wrote to counsel for RoundTable and informed RoundTable that "[a]s has been communicated to you previously, a number of the document requests RoundTable has made seek confidential and privileged materials of a highly sensitive nature, in particular but not limited to materials addressing quality control and quality assurance issues." *Id.* Angiotech informed RoundTable that it was exploring "what methods are available to maintain the confidential and/or privileged status of these documents." *Id.*

**ANSWER:**    RoundTable admits that the allegations of Paragraph 128 have accurately

quoted selected portions of the June 20, 2007 letter from Angiotech's counsel to RoundTable's

counsel. To the extent the allegations of Paragraph 128 purport to summarize Compl. Ex. I,

that document speaks for itself and RoundTable refers to the document for a complete and

accurate recitation of its contents. RoundTable denies all remaining allegations contained in

Paragraph 128.

129.    RoundTable's response, again, was less than cooperative. It simply demanded that Angiotech provide it with all the requested documentation. Compl. Ex. J. It made no effort to work with Angiotech to find a solution to the problem.

**ANSWER:**    To the extent the allegations of Paragraph 129 purport to summarize

RoundTable's June 22, 2007 letter to Angiotech, that document speaks for itself and RoundTable

refers to the document for a complete and accurate recitation of its contents. RoundTable denies

all remaining allegations contained in Paragraph 129.

130.    Angiotech replied, again notifying RoundTable that it was "exploring methods to provide you with appropriate documentation . . . while simultaneously preserving the confidential and privileged nature of certain materials." A true and correct copy of Angiotech's June 22, 2007 letter is attached as Exhibit 12.

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated June 22,

2007. RoundTable agrees that a true and correct copy of Angiotech's June 22, 2007 letter is

16

attached as Exhibit 12 to Angiotech's Answer and Counterclaims. RoundTable admits that the allegations of Paragraph 130 have accurately quoted a portion of Angiotech's June 22, 2007 letter to RoundTable. To the extent the allegations of Paragraph 130 purport to summarize Angiotech's June 22, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations contained in Paragraph 130.

131.    On August 24, 2007, Angiotech proposed that RoundTable and Angiotech enter into a basic confidentiality agreement to "protect sensitive claim support materials from disclosure." Ex. 2. Angiotech attached a draft agreement for RoundTable's "review and consideration," and indicated that when the "agreement is in place, we can begin providing claim support materials to RoundTable." *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated August 24, 2007. RoundTable agrees that a true and correct copy of Angiotech's August 24, 2007 letter is attached as Exhibit 2 to Angiotech's Answer and Counterclaims. RoundTable admits that the allegations of Paragraph 131 have accurately quoted a portion of Angiotech's counsel's August 24, 2007 letter to RoundTable. To the extent the allegations of Paragraph 131 purport to summarize Angiotech's August 24, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations contained in Paragraph 131.

132.    RoundTable responded and disclaimed "any interest" in the confidentiality agreement that Angiotech proposed. Ex. 3.

**ANSWER:**    RoundTable admits that it sent a letter to Angiotech dated August 28, 2007. RoundTable admits that the allegations of Paragraph 132 have accurately quoted a portion of RoundTable's August 28, 2007 letter to Angiotech. To the extent the allegations of Paragraph 132 purport to summarize RoundTable's August 28, 2007 letter to Angiotech, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of

17

its contents.    RoundTable denies all remaining allegations of Paragraph 132.

133.    On August 29, 2007, Angiotech attempted to continue to negotiate with RoundTable regarding an appropriate confidentiality agreement. Ex. 4. It assured RoundTable that it would not designate materials as confidential unless it had a good faith basis for doing so, and informed RoundTable that the draft agreement it had provided already excluded documents that would not qualify as confidential. *Id.* Angiotech also pointed out that the draft agreement would not restrict the parties' ability to seek discovery. *Id.* Angiotech told RoundTable that it had "proposed the draft confidentiality agreement in an attempt to facilitate the exchange of claim support materials." *Id.* Angiotech asked RoundTable to "reconsider your position and either agree to the draft Angiotech has proposed or provide us with suggested revisions to address any lingering concerns you may have over the scope of the agreement so that we can proceed to address the merits of the parties' dispute." *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated August

29, 2007.  RoundTable admits that the allegations of Paragraph 133 have accurately quoted a

portion of Angiotech's August 29, 2007 letter to Angiotech.  To the extent the allegations of

Paragraph 133 purport to summarize Angiotech's August 29, 2007 letter to RoundTable, that

document speaks for itself and RoundTable refers to the document for a complete and accurate

recitation of its contents.  RoundTable denies all remaining allegations of Paragraph 133.

134.    Even though the Chicago Court had, by this time, stayed all discovery, Angiotech nonetheless continued to attempt to work with RoundTable to facilitate an informal exchange of claim support documentation.

**ANSWER:**    RoundTable admits that by August 29, 2007, the Chicago Court had

stayed all discovery in the Interpleader Action.  RoundTable denies all remaining allegations of

Paragraph 134.

135.    On September 20, 2007, having received no response from RoundTable regarding any method to allow Angiotech to provide claim substantiation materials without compromising confidentiality, Angiotech again wrote RoundTable. Ex. 10. Angiotech noted that "it has been two weeks since we requested that RoundTable reconsider its blanket opposition to a confidentiality agreement to allow Angiotech and RoundTable to share sensitive claim support materials. We have received no response whatsoever from RoundTable regarding this matter, despite RoundTable's purported interest in receiving this information." *Id.* Angiotech also informed RoundTable that

[a]t this point, we have little choice but to conclude that RoundTable's opposition

18

to a reasonable confidentiality agreement is a litigation tactic, particularly because such a confidentiality agreement is in the interest of both Angiotech and RoundTable. As Angiotech has previously indicated, the claim support documentation contains sensitive, privileged, and confidential information, and, at least with respect to a large portion of these materials, it is not in RoundTable's interest to undermine the confidentiality of these documents. Instead, the documents reflect on the poor management practices and systems in place during the time that the relevant facilities were owned and managed by RoundTable (and, of course, Angiotech's efforts to bring the facilities into compliance with regulatory standards). *Id.*

**ANSWER:** RoundTable admits that it received a letter from Angiotech dated September 20, 2007. RoundTable admits that the allegations of Paragraph 136 have accurately quoted a portion of Angiotech's September 20, 2007 letter to Angiotech. To the extent the allegations of Paragraph 135 purport to summarize Angiotech's September 20, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations of Paragraph 135.

136. RoundTable provided no response.

**ANSWER:** RoundTable denies the allegations contained in Paragraph 136.

137. On November 5, 2007, Angiotech again wrote to RoundTable. Ex. 11. Angiotech requested the courtesy of a response from RoundTable to Angiotech's request that RoundTable reconsider its blanket opposition to a confidentiality agreement. *Id.* Angiotech asked RoundTable to "please advise as to when RoundTable will have a substantive response on these issues." *Id.*

**ANSWER:** RoundTable admits that it received a letter from Angiotech dated November 5, 2007. RoundTable admits that the allegations of Paragraph 137 have accurately quoted a portion of Angiotech's November 5, 2007 letter to Angiotech. To the extent the allegations of Paragraph 137 purport to summarize Angiotech's November 5, 2007 letter to RoundTable, that document speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations

19

of Paragraph 137.

138.    Although RoundTable was clearly attempting to frustrate Angiotech's ability to recover escrow funds it was due, Angiotech continued to work diligently to fully investigate the extent to which RoundTable breached its representations and warranties in the Stock Purchase Agreement. Because a number of the breaches related to the facilities' compliance with various regulatory requirements, this investigation uncovered problems that have required extensive remediation. The necessary work has been both time consuming and expensive. In sum, Angiotech discovered that RoundTable permitted the AMIH facilities to operate despite the fact that those facilities were not in compliance all with regulatory requirements and that RoundTable falsely represented to the contrary in connection with the sale of AMIH to Angiotech.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 138.

139.    This investigation and remediation has required substantial time and effort from Angiotech, and it is still ongoing. However, in the spirit of good faith, Angiotech informed RoundTable on February 21, 2008, that it was confident enough in its current estimates of its damages that it was willing to release $6,512,319 of the escrow funds to RoundTable. Compl. Ex. N. Contrary to RoundTable's assertion, this did not mean that Angiotech's original estimates were "unlawful" or otherwise unwarranted. Instead, the amount of remediation required to bring the facilities-which are numerous and scattered across the globe-into compliance with the representations and warranties made by RoundTable was substantial. As Angiotech specifically informed RoundTable in its Escrow Claim Notice, that notice constituted Angiotech's best, good faith, estimate of its damages. Compl. Ex. C.

**ANSWER:**    RoundTable is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 139. RoundTable admits that it received a letter from Angiotech dated February 21, 2008. To the extent the allegations of Paragraph 139 purport to summarize Angiotech's February 21, 2008 letter to RoundTable and/or Angiotech's Escrow Claim Notice, those documents speaks for themselves and RoundTable refers to the documents for a complete and accurate recitation of its contents. RoundTable denies all remaining allegations of Paragraph 139.

140.    In the same February 21, 2008 letter, Angiotech made one last attempt to open dialogue with RoundTable regarding an appropriate confidentiality agreement. It informed RoundTable that "Angiotech still wishes to work with RoundTable to enter into a confidentiality agreement that would allow Angiotech to share with RoundTable confidential, privileged, and sensitive materials regarding" Angiotech's ongoing remediation efforts. Compl. Ex. N. Angiotech further stated: "In the absence of such an agreement, Angiotech has no choice but to await the commencement of discovery in an appropriate forum, so that it may provide

13987.1/0170-00001

RoundTable with this remediation material pursuant to an appropriate protective order." *Id.*
Angiotech again invited RoundTable to discuss these matters further. *Id.* To date, RoundTable
has not responded to this invitation.

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated February

21, 2008. RoundTable admits that the allegations of Paragraph 140 have accurately quoted a

portion of Angiotech's February 21, 2008 letter to Angiotech. To the extent the allegations of

Paragraph 140 purport to summarize Angiotech's February 21, 2008 letter to RoundTable, that

document speaks for itself and RoundTable refers to the document for a complete and accurate

recitation of its contents.    RoundTable denies all remaining allegations of Paragraph 140.

141.    In sum, Angiotech made every effort to work with RoundTable to find an
acceptable way to produce claim support documentation to RoundTable in a manner that would
not undermine the confidentiality of those documents unnecessarily. At every turn, RoundTable
refused to work with Angiotech in good faith. Instead, it is clear that RoundTable was hoping to
argue, as it has in its Complaint, that Angiotech's failure to provide claim support documentation
constituted a breach of contract on the one hand, while simultaneously taking every action it
could to prevent Angiotech from being able to provide claim support documentation in a manner
that did not undermine the confidentiality of the claim support documentation unnecessarily.
Apparently, RoundTable's strategy was to force Angiotech to choose between providing the
documentation and risking damage by disclosure or refusing to provide documentation and
risking loss of its claim to the escrow funds.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 141.

### RoundTable Takes Aggressive and Unfounded Positions Regarding the Parties' Agreements, While Angiotech Attempts to Work with RoundTable in Good Faith

142.    Angiotech has, at all times, acted in good faith to effectuate the purpose of the
agreements and the parties' intent.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 142.

143.    RoundTable, on the other hand, has not. RoundTable has consistently taken
unreasonable and unfounded positions regarding the interpretation of the agreements between the
parties and made unreasonable and excessive demands upon Angiotech that are inconsistent with
the parties' obligations under the agreements. RoundTable's actions in this regard served only to
increase the burden and costs on RoundTable itself, on Angiotech, and on LaSalle.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 143.

144.    In addition to the actions described above, on September 11, 2007, RoundTable wrote LaSalle bank a letter demanding that LaSalle release all of the interest accrued on the account. A true and correct copy of RoundTable's September 11, 2007 letter is attached as Exhibit 13. RoundTable's demand was based on an unfounded view of the Escrow Agreement and the Escrow Claim Notice.

**ANSWER:**    RoundTable admits that it sent a letter to LaSalle Bank dated September

11, 2007. RoundTable admits that a true and correct copy of RoundTable's September 11, 2007

letter is attached as Exhibit 13 to Angiotech's Answer and Counterclaims. RoundTable denies

all remaining allegations of Paragraph 144.

145.    On September 12, 2007, Angiotech sent a letter to LaSalle objecting to RoundTable's request for all of the interest. A true and correct copy of Angiotech's September 12, 2007 letter is attached as Exhibit 14. Angiotech explained that, pursuant to § 10(a) of the Escrow Agreement, the interest is distributed within 30 days of the release of the escrow funds automatically. *Id.* The Escrow Agreement does not require either party to make a specific claim for the interest to which they would be entitled based on the portion of the escrow funds that they ultimately receive. *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech to LaSalle

dated September 12, 2007. RoundTable admits that a true and correct copy of RoundTable's

September 11, 2007 letter is attached as Exhibit 14 to Angiotech's Answer and Counterclaims.

To the extent the allegations of Paragraph 145 purport to summarize Angiotech's September 12,

2007 letter to RoundTable and/or the Escrow Agreement, those documents speaks for themselves

and RoundTable refers to the documents for a complete and accurate recitation of its contents.

RoundTable denies all remaining allegations of Paragraph 145.

146.    Moreover, when Angiotech determined, after additional investigation and remediation, that its total damages would be less than the amount included in the Escrow Claim Notice, Angiotech promptly informed RoundTable of its determination and of its intention to instruct LaSalle to release the excess escrow funds. *See* Compl. Ex. N.

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated February

21, 2008. To the extent the allegations of Paragraph 146 purport to summarize Angiotech's

13987.1/0170-00001

February 21, 2008 letter to RoundTable, that document speaks for itself and RoundTable refers

to the document for a complete and accurate recitation of its contents.    RoundTable denies all

remaining allegations of Paragraph 146.

147.    RoundTable immediately demanded that Angiotech release the interest on those
funds as well. Despite the fact that the Escrow Agreement does not require LaSalle to release the
accumulated interest until the final distribution of the escrow funds, *see* Ex. 14, Angiotech
agreed to release a pro rata portion of the interest.

**ANSWER:**    RoundTable admits that it requested that Angiotech release a pro rata

share of accrued interest on the $6,512,319 in escrow funds that Angiotech conceded was due

and owing RoundTable. RoundTable denies all remaining allegations of Paragraph 147.

148.    Angiotech then worked with RoundTable to negotiate the form of the Joint Letter
of Direction that is attached to the Complaint as Exhibit O. Contrary to RoundTable's assertion,
Angiotech did not delay this process and instead worked with RoundTable to reach agreement,
which was complicated by RoundTable's demand for distribution of the interest. Also contrary
to RoundTable's contention, Angiotech took only days to sign the joint letter of direction once
the parties had finalized the language.

**ANSWER:**    RoundTable admits that RoundTable and Angiotech negotiated the form

of the Joint Letter of Direction. RoundTable denies all remaining allegations of Paragraph 148.

### RoundTable Surreptitiously Uses Angiotech's Property

149.    One of the AMIH assets transferred to Angiotech as a result of the Stock Purchase
Agreement was a lease for office space at Suite 208, 272 E. Deerpath Road in Lake Forest,
Illinois.

**ANSWER:**    RoundTable admits that one of the AMIH assets transferred to Angiotech

as a result of the Stock Purchase Agreement was AMIH's partial interest in a lease for office

space at Suite 208, 272 E. Deerpath Road in Lake Forest, Illinois. RoundTable states that the

lease in question was co-signed by AMIH and Core Pharma Holdings, Inc., one of RoundTable's

portfolio companies. AMIH and Core Pharma agreed to share the office space and evenly split

the lease payments. RoundTable denies all remaining allegations of Paragraph 149.

23

150.    After AMIH was sold to Angiotech, Angiotech began making the required lease payments on the office space.

**ANSWER:**   Upon information and belief, after AMIH was sold to Angiotech, Angiotech began making AMIH's required fifty percent share of the lease payments on the office space. RoundTable denies all remaining allegations of Paragraph 150.

151.    Unbeknownst to Angiotech, RoundTable continued to use and benefit from that office space at Angiotech's expense.

**ANSWER:**   RoundTable denies the allegations contained in Paragraph 151.

152.    In March 2008, Angiotech learned that RoundTable was occupying the office space without providing Angiotech with any compensation.

**ANSWER:**   RoundTable denies the allegations contained in Paragraph 152.

153.    Although the suite entrance listed AMIH as well, the office suite was being used by Avalign Technologies and Aspen Surgical Products. It was not being used by AMIH. On information and belief, both Avalign Technologies and Aspen Surgical Products are companies in which RoundTable has a controlling interest.

**ANSWER:**   RoundTable admits that the suite entrance listed AMIH. RoundTable admits that Avalign Technologies and Aspen Surgical Products have lawfully occupied a portion of the office suite. RoundTable admits that it has a controlling interest in Avalign Technologies and Aspen Surgical Products. RoundTable denies all remaining allegations of Paragraph 153.

### RoundTable Refuses to Reimburse Angiotech for Tax Assessments

154.    On September 6, 2007, Angiotech wrote to RoundTable regarding the tax overpayments. A true and correct copy of Angiotech's September 6, 2007 letter is attached as Exhibit 15. Angiotech agreed that RoundTable was entitled to the $136,424.80, but informed RoundTable that Angiotech had paid $184,769 in taxes for the period before Angiotech purchased AMIH. *Id.* Under the Stock Purchase Agreement, RoundTable had an obligation to reimburse Angiotech for this amount, resulting in a net total due to Angiotech of $48,253.97. *Id.*

**ANSWER:**   RoundTable denies the allegations contained in Paragraph 154.

155.    On September 13, 2007, RoundTable wrote a letter to Angiotech. A true and

13987.1/0170-00001

correct copy of RoundTable's September 13, 2007 letter is attached as Exhibit 16. It demanded documentation regarding Angiotech's claim for $184,769. *Id.*

**ANSWER:**    RoundTable admits that it sent a letter to Angiotech dated September 13, 2007. RoundTable admits that a true and correct copy of RoundTable's September 13, 2007 letter to Angiotech is attached as Exhibit 16 to Angiotech's Answer and Counterclaim. To the extent the remaining allegations of Paragraph 155 purport to summarize RoundTable's September 13, 2007 letter to Angiotech, that letter speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.

156.    On November 27, 2007, Angiotech provided counsel for RoundTable with the requested documentation regarding the tax refunds. A true and correct copy of Angiotech's November 27, 2007 letter, without the attachments, is attached as Exhibit 17. It also noted that the amount owing from RoundTable was actually $198,806. *Id.*

**ANSWER:**    RoundTable admits that it received a letter from Angiotech dated November 27, 2007, that included attachments containing requested documentation regarding the tax refunds. RoundTable admits that a true and correct copy of Angiotech's November 27, 2007 letter, without the attachments, is attached as Exhibit 17 to Angiotech's Answer and Counterclaim.

157.    On December 17, 2007, RoundTable responded and again demanded that Angiotech pay the full amount.

**ANSWER:**    RoundTable admits that it sent a letter to Angiotech dated December 17, 2007.

158.    RoundTable has refused to pay the amounts it owes to Angiotech for the taxes Angiotech paid for periods when RoundTable owned AMIH.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 158.

## Count I
## Breach of Contract

159.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84-158 above.

**ANSWER:**    RoundTable realleges and incorporates by reference herein, the answers

contain in Paragraphs 84-158 above.

160.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

**ANSWER:**    RoundTable admits the allegations contained in Paragraph 160

161.    Angiotech performed or substantially performed all material obligations of the contract.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 161.

162.    RoundTable breached the representations and warranties contained in Article III of the Stock Purchase Agreement relating to undisclosed liabilities and the facilities' compliance with legal and regulatory requirements.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 162.

163.    As a result of RoundTable's breach, Angiotech suffered damages, including the amounts necessary to remediate the AMIH facilities and bring them into compliance with applicable regulatory standards, and the amounts necessary to satisfy the liabilities that RoundTable failed to disclose.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 163.

164.    As permitted by the Stock Purchase Agreement, Angiotech made a claim against the escrow fund to recover the damages resulting from RoundTable's breach.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 164.

165.    Instead of working with Angiotech to determine which of the parties was entitled to the escrow funds as it was obligated to do by the Escrow Agreement and its general duty of good faith and fair dealing, RoundTable set up obstacles at every turn in an attempt to preclude Angiotech from recovering the escrow funds to which it was entitled. For instance, RoundTable failed to communicate with Angiotech at all before submitting its Notice of Objection, claiming that all Angiotech's claim was untimely and without merit. Likewise, RoundTable made no effort whatsoever to reach a reasonable accommodation with Angiotech to protect the confidentiality of sensitive claim support materials, instead making blanket demands for

immediate production of an unreasonable volume of documentation. Even if RoundTable had a contractual right to certain substantiation of Angiotech's claim, that right did not permit RoundTable to attempt to exercise it in bad faith and for RoundTable's own gain, in a direct attempt to deprive Angiotech of the benefits due to Angiotech under the agreement. RoundTable's conduct is even more inappropriate because Angiotech's damages were all caused by RoundTable's numerous breaches of its representations and warranties regarding the state of AMIH.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 165.

166.    RoundTable's persistent refusal to work with Angiotech in good faith to resolve the parties' respective entitlement to the escrow funds has damaged Angiotech. Angiotech has been deprived of the escrow funds to which it is entitled under the contracts, has incurred attorneys fees and costs, and has suffered a delay in the use of the escrow funds.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 166.

## Count II
## Breach of Contract

167.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84-166 above.

**ANSWER:**    RoundTable realleges and incorporates by reference herein, the answers

contain in Paragraphs 84-166 above.

168.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

**ANSWER:**    RoundTable admits the allegations contained in Paragraph 168.

169.    In the Stock Purchase Agreement, RoundTable agreed to litigate any claims arising out of the Stock Purchase Agreement in the New York state or federal courts.

**ANSWER:**    To the extent the remaining allegations of Paragraph 169 purport to

summarize the Stock Purchase Agreement, that agreement speaks for itself and RoundTable

refers to the document for a complete and accurate recitation of its contents. RoundTable denies

all remaining allegations contained in Paragraph 169.

170.    Angiotech performed or substantially performed all material obligations of the contract.

27

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 170.

171.    RoundTable breached its agreement to litigate in the New York state or federal courts and instead attempted to litigate its claims against Angiotech in the Chicago Court.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 171.

172.    As a result of RoundTable's breach, Angiotech suffered damages, including but not limited to the expense of obtaining a dismissal of that action.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 172.

## Count III
## Breach of Contract

173.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84-172 above.

**ANSWER:**    RoundTable realleges and incorporates by reference herein, the answers contain in Paragraphs 84-172 above.

174.    Angiotech and RoundTable entered into the Stock Purchase Agreement, a contract for the sale of AMIH to Angiotech.

**ANSWER:**    RoundTable admits the allegations contained in Paragraph 174.

175.    In the Stock Purchase Agreement, RoundTable agreed to pay certain taxes relating to AMIH for periods during which RoundTable owned AMIH.

**ANSWER:**    To the extent the allegations of Paragraph 175 purport to summarize the Stock Purchase Agreement, that agreement speaks for itself and RoundTable refers to the document for a complete and accurate recitation of its contents.    RoundTable denies all remaining allegations contained in Paragraph 175.

176.    Angiotech performed or substantially performed all material obligations of the contract.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 176.

177.    RoundTable breached its agreement to pay these taxes.

28

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 177.

178.    As a result of RoundTable's breach, Angiotech suffered damages, including but not limited to $198,806 in amounts Angiotech has paid to taxing authorities, the attorneys fees and costs and other expenses it has incurred to address this issue with RoundTable, and the loss of use of the money paid by Angiotech to the various taxing authorities.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 178.


## Count IV
## Unjust Enrichment

179.    Angiotech realleges and incorporates by reference herein, the allegations contained in Paragraphs 84-178 above.

**ANSWER:**    RoundTable realleges and incorporates by reference herein, the answers

contain in Paragraphs 84-178 above.

180.    RoundTable has received the benefit of the use of the lease belonging to Angiotech for the office suite at 272 E. Deerpath Road in Lake Forest, Illinois.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 180.

181.    RoundTable benefited from the use of the leased office space that belonged to Angiotech pursuant to the Stock Purchase Agreement.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 181.

182. Fairness and equity demand that RoundTable reimburse Angiotech for the rental payments for the leased office space.

**ANSWER:**    RoundTable denies the allegations contained in Paragraph 182.


## ROUNDTABLE'S AFFIRMATIVE DEFENSES

183.    RoundTable incorporates by reference its responses contained in Paragraphs 74-

182 above.

184.    Angiotech's counterclaims fail to state a claim upon which relief can be granted.

185.    Angiotech's counterclaims are barred in whole or in part by the doctrine of laches.

29

186.    Angiotech's counterclaims are barred in whole or in part by equitable estoppel.

187.    Angiotech's counterclaims are barred in whole or in part by the doctrine of laches.

188.    Angiotech waived any right it may have had to increase its total claim amount when the Claims Notice Period ended.

189.    Angiotech waived any right it may have had to increase the amount of individual claims when the Claims Notice Period ended.

190.    Angiotech waived any right it may have had to make any claims when more than 10 days elapsed between the discovery of the alleged claim and Angiotech's notification to RoundTable of the alleged claims.

191.    Angiotech is not entitled to recovery because it breached some or all of its obligations under the contractual agreements between the parties.

192.    RoundTable is not obligated to perform any actual or implied duty to Angiotech because Angiotech failed to cooperate in good faith and interfered with RoundTable's ability to exercise its rights under the contractual agreements between the parties.

193.    Angiotech cannot recover because it failed to take reasonable actions to mitigate its alleged damages.

194.    Angiotech cannot recover because it caused its own alleged damages.

195.    Angiotech is not entitled to any equitable relief because it approaches this suit with unclean hands.

196.    RoundTable asserts the right to assert additional affirmative defenses based upon information later discovered.

30

13987.1/0170-00001

WHEREFORE, RoundTable respectfully requests that this Court enter judgment in its favor and against Angiotech as to all counts of Angiotech's Counterclaims, and grant any other relief that this Court deems just.

Date: May 8, 2008

ROUNDTABLE HEALTHCARE PARTNERS, L.P.

By: _____

Jason Mogel
Linda Imes
Spears & Imes LLP
51 Madison Avenue
New York, NY 10010
Telephone:    (212) 213-6996
Facsimile:    (212) 231-0849
LImes@spearsimes.com
JMogel@spearsimes.com

*Of counsel:*
F. Thomas Hecht
Jacob M. Mihm
Amy M. Gardner
Ungaretti & Harris, LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone:    (312) 977-4400
Facsimile:    (312) 977-4405
fthecht@uhlaw.com
jmmihm@uhlaw.com
agardner@uhlaw.com

31