UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| ROUNDTABLE HEALTHCARE PARTNERS, L.P., a Delaware Limited Partnership, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 08-CV-02968 (MGC) |
| | : | |
| ANGIOTECH PHARMACEUTICALS (U.S.), INC., a Washington Corporation, | : | Filed Electronically |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANGIOTECH PHARMACEUTICALS (U.S.), INC.'S MOTION FOR <u>PARTIAL JUDGMENT ON THE PLEADINGS</u>

Warren J. Rheaume (*pro hac vice*)
warren.rheaume@hellerehrman.com
Malaika M. Eaton (*pro hac vice*)
malaika.eaton@hellerehrman.com
Heller Ehrman LLP
701 Fifth Ave., Suite 6100
Seattle, WA 98104-7098

Andrew Levine (AL 3552)
andrew.levine@hellerehrman.com
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524

*Attorneys for Defendant Angiotech*
*Pharmaceuticals (U.S.), Inc*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...........................................................................1

II.     FACTUAL BACKGROUND ............................................................................1

III.    ARGUMENT .................................................................................................3

        A.    Count I Should Be Dismissed with Prejudice Because the Provisions
              of the Agreement RoundTable Alleges Angiotech Failed to Comply
              with Are Not Conditions Precedent to Angiotech's Right to Recover
              Its Escrow Funds. ........................................................................... 4

              1.    The Structure and Plain Language of the Agreements Make
                    Clear That the Claim Notice Provisions Are Not Conditions
                    Precedent to Angiotech's Indemnification Right. ............................. 5

              2.    Even If the Purchase Agreement and the Escrow Agreement
                    Were Ambiguous as to Whether the Claims Procedures
                    Constitute Conditions Precedent—Which They Are Not—New
                    York Law Would Preclude Treating Them as Conditions
                    Precedent. ........................................................................... 8

        B.    Count II Should Be Dismissed Because Angiotech Did Not Make
              Improper Adjustments to Its Escrow Claim Amount. ................................. 11

              1.    Angiotech Decreased Rather Increased the Amount of Its
                    Escrow Claim. .................................................................. 12

              2.    Nothing in the Purchase Agreement or Escrow Agreement
                    Prevents Angiotech from Revising Its Damages Estimate in
                    Good Faith. ...................................................................... 14

IV.     CONCLUSION .............................................................................................17

# TABLE OF AUTHORITIES

## Federal Cases

**Page**

*In re Am. Express Co. Shareholder Litig.*,
   39 F.3d 395 (2d Cir. 1994)............................................................................ 15

*Bell. Atl. Corp. v. Twombly*,
   __ U.S. __, 127 S. Ct. 1955 (2007)....................................................... 4, 5, 15

*2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*,
   No. 00 Civ. 5773, 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001)...................... 4, 5

*DeMuria v. Hawkes*,
   328 F.3d 704 (2d Cir. 2003).......................................................................... 4

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................ 13

*Manley v. AmBase Corp.*,
   337 F.3d 237 (2d Cir. 2003)....................................................................... 7, 10

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
   102 F.3d 660 (2d Cir. 1996)....................................................................... 2, 12

*Pfizer Inc. v. Stryker Corp.*,
   348 F. Supp. 2d 131 (S.D.N.Y. 2004)............................................................ 15

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002)...................................................................... 4, 13

## State Cases

*Am. Transit Ins. Co. v. B.O. Astra Mgmt. Corp.*,
   814 N.Y.S.2d 849 (Sup. Ct. 2006),
   *aff'd as modified by* 835 N.Y.S.2d 106 (App. Div.),
   *leave to appeal denied by* 840 N.Y.S.2d 762 (2007) ...................................... 9

*Bestform, Inc. v. Herman*,
   804 N.Y.S.2d 80 (App. Div. 2005) ................................................................. 9

*Cont'l Ins. Co. v. Albany Housing Auth.*,
   445 N.Y.S.2d 317 (App. Div. 1981) .............................................................. 10

*Kalwall Corp. v. K. Copolino Design & Renovation*,
   388 N.Y.S.2d 346 (App. Div. 1976) .............................................................. 11

*Kass v. Kass*,
 663 N.Y.S.2d 581 (App. Div. 1997),
 *aff'd*, 91 N.Y.2d 554 (1998) ............................................................................................. 9

*Prichard v. 164 Ludlow Corp.*,
 No. 600828/06, 2006 WL 3626306 (N.Y. Sup. Ct. Dec. 12, 2006),
 *aff'd*, 854 N.Y.S.2d 53 (App. Div. 2008) .................................................................... 6, 7

*Roan/Meyers Assocs., L.P. v. CT Holdings, Inc.*,
 810 N.Y.S.2d 67 (App. Div. 2006) ..................................................................................... 9

*Rooney v. Slomowitz*,
 784 N.Y.S.2d 189 (App. Div. 2004) ................................................................................... 9

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 4

Fed. R. Civ. P. 12(c) ............................................................................................................. 1, 4

## I.    PRELIMINARY STATEMENT

Defendant Angiotech Pharmaceuticals (U.S.), Inc. ("Angiotech") respectfully submits this Memorandum of Law in support of its motion, pursuant to Rules 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), to dismiss with prejudice certain portions of Counts I and II of the Complaint filed by RoundTable Healthcare Partners, L.P. ("RoundTable").[1]

Certain aspects of RoundTable's claims in Counts I and II can be resolved against RoundTable on the merits at this time.  In essence, RoundTable contends that certain claim-submission procedures contained in the agreements between the parties that govern the escrow funds are conditions precedent to Angiotech's ability to recover those funds.  This reading is belied by both the language and structure of the agreements, which are attached to the Complaint, and by well-settled New York law.

Likewise, in Count II, RoundTable alleges that Angiotech breached the parties' agreements by increasing its claim to the escrow funds.  These allegations are again unsupported by either the language of the agreements, by the additional factual material that has been incorporated into RoundTable's Complaint, or by New York law.  Thus, many aspects of both Counts I and II should now be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

In March 2006, Angiotech purchased a medical device manufacturing company, American Medical Instruments Holdings, Inc. ("AMIH"), from RoundTable.  As part of this

---

[1] Angiotech intends to move to dismiss any remaining portions of Counts I and II without prejudice for lack of subject matter jurisdiction because Angiotech's damages are not yet capable of accurate estimation.  As indemnification claims are not ripe for adjudication until damages are fixed, both parties' claims regarding the ultimate entitlement to the escrow funds should be dismissed without prejudice to be re-filed when Angiotech's damages are fixed.  That motion must be filed under seal and Angiotech is attempting to reach agreement with RoundTable regarding an appropriate protective order.

transaction, Angiotech and RoundTable entered into a Stock Purchase Agreement ("Purchase Agreement") and an Escrow Agreement (collectively "Agreements").[2] The Escrow Agreement required Angiotech to place $20 million of the purchase price into an escrow fund to secure the representations and warranties in the Purchase Agreement regarding the AMIH facilities. *See* Compl. Ex. B § 2(a). Most pertinent here, the Purchase Agreement represented and warranted that the purchased AMIH facilities were in compliance with all applicable laws and regulations (Compl. Ex. A § 3.10) and provided Angiotech a right of indemnity against RoundTable for all losses, costs, or damages Angiotech incurred in connection with "any breach of or inaccuracy in . . . any representation or warranty" (*id*. § 9.2(a)).

Angiotech submitted an Escrow Claim Notice on April 4, 2007. *See* Compl. ¶ 16 & Ex. C. RoundTable alleges that it has no obligation to indemnify Angiotech for Angiotech's claim to the escrow funds because "RoundTable's indemnification obligations relate only to claims properly submitted by Angiotech as outlined in Section 9.5(a) of the Stock Purchase Agreement." Compl. ¶ 19. That section, RoundTable alleges, contains "both notice and cooperation *conditions*." *Id*. (emphasis added); *see also id.* ¶ 37 ("even assuming Angiotech's claims for indemnification are not barred because of its failure to comply with the claims procedures contained in the Agreements"). RoundTable references the following provisions: that "Angiotech 'shall notify' RoundTable 'within ten days of becoming aware of . . . any Damages that [Angiotech] shall have determined to have given or is reasonably likely to give rise to a claim for indemnification,'" and that "Angiotech 'shall provide' to RoundTable 'as soon

---

[2] The Agreements are attached, respectively, as Exhibits A and B to the Complaint. All citations to the exhibits to the Complaint will be as follows: Compl. Ex. __. In determining whether to grant a motion to dismiss, the Court may rely on "documents attached to the complaint as exhibits." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (internal quotation marks omitted).

as practicable thereafter all information and documentation necessary to support and verify' the submitted claim(s)." *Id.* ¶ 19 (quoting Purchase Agreement § 9.5(a)).

RoundTable further alleges that Angiotech failed to comply with these provisions. *Id.* ¶¶ 20–21, 26–29. Count I of RoundTable's Complaint contains a list of the actions RoundTable alleges constitute breaches of the parties' Agreements. *Id.* ¶ 48. With the exception of the last allegation of this paragraph—which merely disputes the merit of Angiotech's claim—the remaining allegations relate to claim provisions that RoundTable alleges are conditions precedent to Angiotech's right to be indemnified from the escrow funds. *Id.*; *see also id.* ¶ 19.

After submitting its Escrow Claim Notice, Angiotech conducted further investigation and remediation work and agreed to release to RoundTable over $6 million of the escrow funds. *Id.* ¶ 35 & Exs. N & O. Despite this, RoundTable alleges that Angiotech increased the amount of damages it claimed from the escrow funds. Compl. ¶ 37. It does this by attempting to subdivide Angiotech's April 4, 2007 Escrow *Claim* Notice into eleven separate *claims*. *Id.* It then contends that, by agreeing to release over $6 million of the escrow funds, Angiotech breached the parties' Agreements, which constitutes Count II of RoundTable's Complaint. *Id.* ¶¶ 52–65.

The Court should dismiss some aspects of each of these Counts as a matter of law on the pleadings. With respect to Count I, it fails as a matter of law to the extent that it rests on an argument that the provisions of the Agreements referenced by RoundTable are conditions precedent to Angiotech's ability to recover the escrow funds. With respect to Count II, the claim fails in its entirety as a matter of law for numerous separate and independent reasons.

## III.    ARGUMENT

The only allegations in Counts I and II that are now ripe for adjudication are defective on the pleadings as a matter of law. They directly contradict the plain language of the Agreements

and are inconsistent with well-established New York law.[3]  Thus, they should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(c).

The standard for review of a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "indistinguishable" from the standard applied to Rule 12(b)(6) motions. *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).  Under Rule 12(c) "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions" and the allegations in the Complaint must be "enough to raise a right to relief above the speculative level."  *Bell. Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65, 1966 (2007) (alteration in original).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (alteration in original, internal quotation marks omitted).  Where "plaintiff['s] allegations are conclusory and directly contradicted by the unambiguous" terms of an agreement, the agreement's terms "establish the rights of the parties and prevail over conclusory allegations of the complaint."  *2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074, at *10, 11 (S.D.N.Y. Apr. 23, 2001) (internal quotation marks omitted).

A.    **Count I Should Be Dismissed with Prejudice Because the Provisions of the Agreements RoundTable Alleges Angiotech Failed to Comply with Are Not Conditions Precedent to Angiotech's Right to Recover Its Escrow Funds.**

The crux of Count I rests on RoundTable's bald assertion that the claim provisions with which it contends Angiotech did not comply are conditions precedent to Angiotech's ability to

---

[3] New York law applies to this dispute.  The Purchase Agreement (§ 11.5) and Escrow Agreement (§ 16) include a New York choice of law provision, and RoundTable, in the Illinois proceeding, conceded that New York law applies here.

recover the Escrow Funds.[4]  *See, e.g.*, Compl. ¶ 12 (alleging that escrow funds "could be claimed

by Angiotech, *if* Angiotech: . . . (2) followed the claims procedures set forth in the Stock

Purchase and Escrow Agreements" (emphasis added)); *id.* ¶ 19 (describing the provisions of the

Agreements with which it alleges Angiotech did not comply as "notice and cooperation

*conditions*" (emphasis added)); *id.* ¶ 37 (predicating an allegation with:  "even assuming

Angiotech's claims for indemnification are not barred because of its failure to comply with the

claims procedures contained in the Agreements"); *id.* ¶ 40 (same).  RoundTable's reading of the

Agreements, however, is mere wishful thinking with no support in either the Agreements' plain

language and structure or in the well-settled rules of New York contract interpretation.

        1.        **The Structure and Plain Language of the Agreements Make Clear That the Claim Notice Provisions Are Not Conditions Precedent to Angiotech's Indemnification Right.**

Even assuming that, as RoundTable alleges, Angiotech did not comply with the

Agreements' claim procedures (Compl. ¶¶ 20–21, 26–29), the structure and plain language of the

Agreements demonstrates that—contrary to RoundTable's allegations—the procedures are not

conditions precedent to Angiotech's ability to recover.  This warrants dismissal of all aspects of

Count I and any other allegation in the Complaint that suggests that the claim submission

procedures are conditions precedent to Angiotech's ability to recover the escrow funds.  *See

Twombly*, 127 S. Ct. at 1966 (to survive a motion to dismiss the allegations must at least be

plausible).  The Agreements' "provisions establish the rights of the parties and prevail over

conclusory allegations of the complaint."  *2 Broadway*, 2001 WL 410074, at *10 (dismissing

claim where allegations in complaint were directly at odds with plain language and structure of

---

[4] In the Illinois action, RoundTable moved for summary judgment on this basis.  The case was stayed in favor of a New York forum before argument or a ruling on this motion.

subject agreement); *see also Prichard v. 164 Ludlow Corp.*, No. 600828/06, 2006 WL 3626306, at \*4 (N.Y. Sup. Ct. Dec. 12, 2006) (holding that a "conclusory allegation[] . . . should be accorded no weight, contradicted, as it is, by the express terms of the agreement[s]"), *aff'd*, 854 N.Y.S.2d 53 (App. Div. 2008).

RoundTable relies exclusively on § 9 of the Purchase Agreement and § 3(b) of the Escrow Agreement. *See* Compl. ¶ 48. But, contrary to RoundTable's conclusory allegations that the provisions upon which it relies are conditions precedent to Angiotech's right to indemnification, it is clear from the plain language of the relevant provisions and their context within the framework of the Agreements that these provisions are no such thing. Notably, the Purchase Agreement contains an entire article dedicated to conditions precedent, Article VII, which is aptly titled: "Conditions." Compl. Ex. A § 7. Section 7.1 contains two conditions precedent applicable to both RoundTable and Angiotech. It states that "[t]he respective obligation of each party to effect the transactions contemplated by this Agreement is subject to the satisfaction or written waiver at or prior to the Closing of each of the following conditions." *Id.* § 7.1; *see also* §§ 7.2, 7.3 (reciting sixteen conditions precedent to Angiotech's obligations and four conditions precedent to RoundTable's obligations, respectively).

If the claim procedures in § 9 of the Purchase Agreement (the provision RoundTable cites and relies upon in the Complaint (*see, e.g.*, Compl. ¶¶ 19, 20, 48)) were intended to be conditions precedent, they would have appeared in Article VII, which is solely devoted to conditions precedent. Moreover, while the Escrow Agreement is discussed among the conditions precedent in both §§ 7.2 and 7.3, these provisions merely require as a condition precedent that both parties execute and deliver the Escrow Agreement. Compl. Ex. A §§ 7.2(j), 7.3(c). Thus, the evident structure of the Purchase Agreement, which reflects the parties' intentions, renders

6

RoundTable's allegations implausible because that structure demonstrates unequivocally that the claims procedures in § 9 are not conditions precedent.

The language of § 9.5 of the Purchase Agreement likewise defeats RoundTable's contention that the claim submission procedures are conditions precedent. Indeed, not only does the notice provision upon which RoundTable relies not appear in the article devoted to "conditions," it also explicitly states that "[n]otwithstanding the foregoing [notice provisions], the failure to so notify [RoundTable] shall not relieve [RoundTable] . . . of any liability that it may have to [Angiotech], except to the extent that [RoundTable] demonstrates that it is materially prejudiced by [Angiotech's] failure to give such notice." *Id*. § 9.5(a). Such language makes clear that these provisions do not constitute conditions precedent, and the strict compliance that RoundTable alleges in the Complaint is not required under the parties' agreement.[5]

RoundTable also suggests that Angiotech is barred from recovery because its Escrow Claim Notice did not comply with § 9.4(a) of the Purchase Agreement. This section provides that Angiotech "shall not be entitled to recover any amount" pursuant to the indemnification provision "until and unless the aggregate amount of all Damages claimed by [Angiotech] exceeds $2,000,000, in which event [Angiotech] shall be entitled to recover amounts for all

---

[5] Further, RoundTable cannot ignore the plain language and effect of this provision on its claim. *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) ("New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous."). RoundTable has not, and cannot, allege that it was materially prejudiced by any alleged failure of Angiotech to provide RoundTable adequate notice or documentation of Angiotech's claim. Indeed, RoundTable's Complaint contains no allegations explaining how it was prejudiced. Instead, RoundTable alleges only damages caused by the fact that the funds remain in escrow. Compl. ¶ 51. Thus, under the Agreements, RoundTable "shall not [be] relieve[d] . . . of any liability that it may have to [Angiotech.]" Compl. Ex. A § 9.5(a). RoundTable's complete failure to allege prejudice of any sort provides a separate and independent reason to dismiss those aspects of Count I dealing with the notice provisions.

Damages in excess of $2,000,000." Compl. Ex. A § 9.4(a). To the extent this provision can be construed as a condition precedent, it is satisfied as soon as "the aggregate amount of all Damages *claimed* by" Angiotech exceeds $2,000,000. On its face, the Escrow Claim Notice satisfies this provision: it includes a list of damages claimed by Angiotech and the amount of those damages exceeds $2,000,000. Compl. Ex. C. The Agreements require nothing more. *See, e.g.*, Compl. Ex. B § 3(a) (stating that, in order to "make a claim pursuant to Article IX of the Purchase Agreement, [Angiotech] shall deliver a notice in substantially the form of <u>Exhibit B</u> attached hereto (an '<u>*Escrow Claim Notice*</u>')").

The Escrow Agreement likewise contains no provisions suggesting that the claims procedures are conditions precedent. It contains no conditional language, no suggestion that strict compliance with the claims procedures is required, and no indication that failure to comply cuts off Angiotech's ability to recover the Escrow Funds. Because the contracts themselves contain no indication that the provisions RoundTable suggests are conditions precedent actually are any such thing, Counts I and II should be dismissed to the extent they suggest otherwise.

> **2.      Even If the Purchase Agreement and the Escrow Agreement Were Ambiguous as to Whether the Claims Procedures Constitute Conditions Precedent—Which They Are Not—New York Law Would Preclude Treating Them as Conditions Precedent.**

Even if the language and structure of the Agreements were ambiguous as to whether the claim provisions were conditions precedent—which they are not—New York state law would preclude treating these provisions as conditions precedent. This too is a separate and independent ground upon which to dismiss those aspects of Count I and II that suggest that Angiotech's claim to the escrow funds is barred because of an alleged failure to comply with the claim submission procedures.

It is well-established under New York law that "[a] contractual duty ordinarily will not be construed as a condition precedent absent clear language that it was so intended." *Roan/Meyers Assocs., L.P. v. CT Holdings, Inc.*, 810 N.Y.S.2d 67, 68 (App. Div. 2006) (emphasis added).[6] In fact, New York courts do not construe a provision as a condition precedent unless it not only includes unambiguous language that the parties intended to treat it as a condition, but also includes additional language, such as language indicating that strict compliance is required and setting forth the consequences of noncompliance. *See Bestform, Inc. v. Herman*, 804 N.Y.S.2d 80, 80–81 (App. Div. 2005) (holding that even though duty to pay "was recited to be 'conditioned upon' a confirmation by the buyer of plaintiff's merchandise that the goods shipped 'conform' to the buyer's purchase orders, the payment obligation was not subject to an express condition precedent" because "[t]he provision neither stated that such compliance was required nor set forth the consequences of noncompliance"). As described above, the language in § 9 of the Purchase Agreement and § 3(b) of the Escrow Agreement do not meet this standard.

If the "shall" language in § 9.5 of the Purchase Agreement or § 3.5 of the Escrow Agreement[7] were interpreted to *require* strict compliance with those provisions' claim

---

[6] *See also, e.g.*, *Rooney v. Slomowitz*, 784 N.Y.S.2d 189, 192 (App. Div. 2004) (same); *Kass v. Kass*, 663 N.Y.S.2d 581, 588 (App. Div. 1997) ("[I]t must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent. If the language is in any way ambiguous, the law does not favor a construction which creates a condition precedent." (citations omitted)), *aff'd*, 91 N.Y.2d 554 (1998); *Am. Transit Ins. Co. v. B.O. Astra Mgmt. Corp.*, 814 N.Y.S.2d 849, 852–53 & n.3 (Sup. Ct. 2006) (holding that failure to give notice of suit is a breach of a condition precedent that "*may* allow an insurer to disclaim its duty to provide coverage" if the insurer can demonstrate prejudice, and that even "a contractual duty [requiring strict compliance] ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition" (internal quotation marks omitted; alteration and emphasis in original)), *aff'd as modified by* 835 N.Y.S.2d 106 (App. Div.), *leave to appeal denied by* 840 N.Y.S.2d 762 (2007).

[7] *See, e.g.*, Compl. Ex. A § 9.5 ("shall notify"; "shall provide"; "shall . . . give[] access"); Compl. Ex. B § 3(a) ("shall deliver a notice").

9

procedures, such a reading would be directly contradicted by the plain and unambiguous language of the final sentence of § 9.5(a) of the Purchase Agreement, which, as noted above, expressly permits Angiotech to recover on its indemnity claim, notwithstanding any failure to comply with the notice requirements of § 9.5, unless RoundTable can show that the failure to provide such notice itself caused RoundTable material prejudice. Any other reading of these provisions would render the final sentence of § 9.5 meaningless. *Manley*, 337 F.3d at 250.

Moreover, New York law places great weight on the fact that a provision does not appear in the section of a contract devoted to conditions precedent in determining that a provision is, in fact, not a condition precedent. In *Continental Insurance Co. v. Albany Housing Authority*, 445 N.Y.S.2d 317 (App. Div. 1981), the court rejected an argument similar to RoundTable's allegations here. In that case, one party sought to treat a provision of the contract as a condition precedent. Similar to § 9 of the Purchase Agreement, the provision at issue in *Continental* did not appear in the section of the contract dealing with conditions. The court summarily rejected the attempt to treat the provision as a condition precedent: "Had it been intended that the requirement was to be a condition precedent to the making of final payment, it would surely have been included in section 6(A) of the agreement which is specifically entitled 'Conditions Precedent.'" *Id*. at 318. For this reason too, this Court should reject RoundTable's allegations that the pertinent claim provisions in § 9 of the Purchase Agreement are conditions precedent.

RoundTable's allegations make much of the time frames included in § 9 of the Purchase Agreement and § 3(b) of the Escrow Agreement, alleging, in essence, that any failure to strictly comply in that precise time frame means that Angiotech forfeits its right to the escrow funds.[8]

---

[8] *See, e.g.*, Compl. ¶ 25 ("RoundTable rightly expected that, within 15 days, Angiotech would make a good faith effort to provide information to RoundTable . . . ."); *id*. ¶ 26 ("RoundTable's reasonable expectations were not met."); *id*. ¶ 27 ("[A]fter nearly a month had

*(Footnote continued)*

However, New York courts have rejected such attempts to transform provisions relating to time periods into conditions precedent. In *Kalwall Corp. v. K. Copolino Design & Renovation*, 388 N.Y.S.2d 346 (App. Div. 1976), the court held: "In the absence of express language (or of extrinsic evidence) to the contrary in the written document, the standard would seem to be that where payment is stipulated to occur on an event, the occurrence of the event fixes only the time for payment; it is not to be imported as a substantive condition of the legal responsibility to pay." *Id*. at 347 (internal quotation marks omitted).

In sum, New York law makes clear that a contractual provision will not be treated as a condition precedent unless the language used makes it unmistakable that the parties intended that the provision be treated as a condition precedent. As the plain language and structure of the Agreements makes clear, RoundTable cannot possibly meet this standard. Thus, the Court should dismiss with prejudice those aspects of Counts I and II that suggest that the claims procedures are conditions precedent to Angiotech's ability to recover.

### B. Count II Should Be Dismissed Because Angiotech Did Not Make Improper Adjustments to Its Escrow Claim Amount.

In Count II, RoundTable alleges that Angiotech improperly increased the amount of its claimed damages. To get there, RoundTable makes two assumptions that neither the facts nor the plain language of the Agreements support. First, RoundTable alleges that Angiotech's single claim to the escrow funds contained in its Escrow Claim Notice is really eleven legally distinct claims,[9] and that when Angiotech revised its estimated damages it increased the amount of

---

passed without receiving any materials or response from Angiotech, RoundTable advised the Escrow Agent . . . that Angiotech had breached . . . and requested release of the Escrow Amount to RoundTable."); *id*. ¶ 48 (claiming breaches relating to the time periods).

[9] *See, e.g.*, Compl. ¶ 22 (referring to "any of these . . . claims"); ¶ 23 ("claims"); ¶ 25 (same); ¶ 37 ("Claims 5 and 6"; "Claims 6 and 7").

certain of those claims. Compl. ¶ 37. Second, RoundTable argues that the Agreements required Angiotech to provide a specific dollar amount for its damages in its escrow claim, and that once it has done so Angiotech was bound to that specific damage amount and could not revise the dollar amount of its claim. *See* Compl. Ex. P. Neither the facts nor the terms of the Agreements support either argument. Thus, this Court should dismiss Count II with prejudice.

> **1.    Angiotech Decreased Rather Increased the Amount of Its Escrow Claim.**

The facts necessary to dismiss this aspect of RoundTable's Complaint may be considered by this Court because they are either RoundTable's own allegations or facts contained in the documents and exhibits attached to the pleadings. *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). On April 4, 2007, Angiotech submitted its Escrow Claim Notice, which provided a good faith estimate of its total damages to be $21,426,036.[10] *See* Compl. Ex. C. Less than a year later, during which time Angiotech worked diligently to fully investigate the extent of its damages, Angiotech provided RoundTable with a revised estimate of its escrow claim, which, at $13,487,681, *was nearly $8 million less than* the estimate provided in the original claim notice. *See* Compl. Exs. C & N.

In RoundTable's hands, however, these facts somehow morph into allegations that Angiotech made "improper adjustments to claim amounts" (Compl. Count II) by "increas[ing] the amount of Damages it asserts for Claims 5 and 6 by $2,164,371" and by "withholding a 20% 'contingency reserve' of $2,202,274 in connection with the Damages it seeks for Claims 6 and 7." Compl. ¶ 37; *see also* Compl. Ex. P. These allegations ignore facts that this Court cannot

---

[10] The $21,426,036 estimate reflected a deduction of $2 million as provided by § 9.4(a) of the Purchase Agreement. All references to damage amounts in this memorandum account for that deduction as required under the Purchase Agreement.

avoid:  (1) Angiotech's claim did not increase, its estimate of damages rather *decreased* by nearly $8 million; and (2) Angiotech did not assert claims (plural); it asserted a single claim in its Escrow *Claim* Notice, which it then supported, as required under the Agreements, by providing a "Summary of *Claim*" describing the nature of its damages.  *See* Compl. Ex. C (emphasis added); Compl. Ex. N (providing "a revised estimate of Angiotech's *claim* against the escrow funds" (emphasis added)).

On this second point, RoundTable seeks to have it both ways.  On the one hand, it argues that Angiotech failed to give it proper notice of the grounds for its claim (Compl. ¶¶ 22–24, 48(C)); and on the other, it uses the very support Angiotech did provide, the eleven descriptive line items of the Summary of Claim, to argue that Angiotech had submitted eleven separate claims, rather than a single claim with a Summary of Claim.  *See id.* ¶¶ 22, 24 (referring to certain line items of the Summary of Claim as individual claims).  But RoundTable offers no support for its contention that the Summary of Claim amounts to a list of separate claims rather than a description of damages giving rise to a single claim to the escrow funds and "[t]he court need not credit conclusory statements unsupported by assertions of facts."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001).  Indeed, such "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted).

RoundTable's strained reading is likewise belied by the plain language of the Agreements.  The Purchase Agreement permits Angiotech to seek indemnification via a "claim for indemnification" for "breaches of representations or warranties contained" in the Purchase Agreement.  Compl. Ex. A § 9.1(b).  In Count II, RoundTable seeks to re-write the parties'

agreement to say, in essence, that Angiotech may submit one claim for each breach of a representation or warranty. This reading ignores the actual language of the Purchase Agreement.

Likewise, § 9.4(a) of the Purchase Agreement further undermines RoundTable's strained reading. This section provides that Angiotech "shall not be entitled to recover any amount" pursuant to the indemnification provision "until and unless the *aggregate amount of all Damages claimed* by [Angiotech] exceeds $2,000,000, in which event [Angiotech] shall be entitled to recover amounts for all Damages in excess of $2,000,000." *Id*. § 9.4(a) (emphasis added). This provision's reference to aggregate damages would make no sense if each breach of any representation or warranty or each individual line item of Angiotech's Escrow Claim Notice had to be construed as a single claim.

The Escrow Agreement as well contradicts RoundTable's reading. It refers to a claim submitted in substantially the form of Angiotech's Escrow Claim Notice as a single claim to the escrow funds. Compl. Ex. B § 3(a) ("In the event [Angiotech] shall make *a claim* pursuant to Article IX of the Purchase Agreement, [Angiotech] shall deliver *a notice* in substantially the form of <u>Exhibit B</u> attached hereto (an '*Escrow Claim Notice*') . . . ." (emphasis added)).

Because Angiotech's estimated damages for its single claim to the escrow funds have decreased, rather than increased, the Court should dismiss Count II, a claim whose allegations are not just implausible but impossible to prove based on the factual material already incorporated into the pleadings in this case.

## 2. Nothing in the Purchase Agreement or Escrow Agreement Prevents Angiotech from Revising Its Damages Estimate in Good Faith.

Even if the Court concludes that Angiotech's single Escrow Claim Notice is nonetheless eleven separate claims, Count II of RoundTable's Complaint is still deficient as a matter of law. RoundTable alleges that Angiotech's revisions to its damages estimate amounted to

"withholdings . . . not permitted under the Agreements."  Compl. ¶ 38.  These allegations are

insufficient to state a claim, as "'entitle[ment] to relief' requires more than labels and

conclusions."  *Twombly*, 127 S. Ct. at 1964–65 (alteration in original).  "[C]onclusory allegations

of the legal status of the defendant['s] acts need not be accepted as true for the purposes of ruling

on a motion to dismiss."  *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 400–01 n.3 (2d

Cir. 1994) (first alteration in original).  Despite RoundTable's allegations to the contrary, no

provision in either of the Agreements prevents Angiotech from revising the amount of damages

it seeks from the escrow funds.

In fact, RoundTable's reading—that Angiotech, once it submitted its Escrow Claim

Notice, was bound to stick to the exact amount of damages asserted in that notice regardless of

post-notice events and discoveries—runs counter to the plain language and structure of the

Agreements, not to mention common sense.  To begin, § 9.1(b) of the Purchase Agreement,

which carves out an exception to the generally applicable expiration date of indemnification

claims, provides in relevant part that

> if, prior to such applicable date, [Angiotech] shall have notified [RoundTable] or
> [RoundTable] shall have notified [Angiotech] in writing of a claim for
> indemnification under this Article IX (*whether or not formal legal action shall
> have been commenced based upon such claim*), such claim shall continue to be
> subject to indemnification in accordance with this Article IX notwithstanding
> such expiration date.

Compl. Ex. A § 9.1(b) (emphasis added).  The inclusion of the italicized language shows that the

parties intended to permit notice of an indemnification claim under the terms of the Agreement

whether or not such claims were ripe for consideration by a court of law.  Under New York law,

a claim for indemnity does not become ripe for adjudication in court until "the amount claimed is

fixed."  *Pfizer Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 150 (S.D.N.Y. 2004).  The purpose of

the italicized language above is to provide greater flexibility in noticing a claim under the terms

of the Agreement than is normally afforded before a court of law.  In other words, the parties

anticipated that the party seeking indemnification might not know with certainty the full amount

of its damages when it submitted a claim notice.

Section 9.5 of the Purchase Agreement further supports this interpretation.  That section

governs all aspects of "Notice and Payment of Claims."  After describing the notice requirement,

including providing information "to support and verify, any Damages," § 9.5(a) provides that the

"failure to so notify [RoundTable] shall not relieve [RoundTable] . . . of any liability that it may

have to [Angiotech], except to the extent that [RoundTable] demonstrates that it is materially

prejudiced by [Angiotech's] failure to give such notice."  Compl. Ex. A § 9.5(a).  Simply put,

Angiotech's right to be indemnified for its damages is not dependent on its exact calculation of

damages and notice of those damages to RoundTable.  Read together with § 9.1(b), the

indemnity right provided for in the Agreements clearly contemplates the right of a party seeking

indemnification to revise the amount of its claim as long as the indemnitor is not materially

prejudiced by the modification.  Here, Angiotech's revision did not cause RoundTable material

prejudice and RoundTable has not alleged that any such prejudice was *caused by* Angiotech's

alleged failure to provide adequate notice; rather, Angiotech's revised estimate resulted in

payment to RoundTable of over $6 million plus interest, the difference between the total escrow

amount and Angiotech's revised claim amount.

This flexibility with respect to damage estimates benefits both parties by allowing the

party seeking indemnification to adjust its claim to reflect the true amount of damages.  In the

medical device manufacturing context this makes a great deal of sense.  As Angiotech will

discuss in detail in its Motion to Dismiss, the very nature of Angiotech's damages made it

impossible to provide an exact damage amount in the April 2007 notice, and indeed, Angiotech

16

cannot even provide an exact damage amount now, over a year later.  After investigating the extent of its damages more fully, Angiotech discovered that it initially may have overestimated certain of its damages and, thus, in good faith made a downward revision of its estimate accordingly.

Count II alleges that by reducing its damage estimate, Angiotech forfeited its right to claim those damages in its indemnity claim.  Because RoundTable has offered no support for this reading of the Agreements, and because that reading is directly at odds with the plain language of the Agreements and with common sense, the Court should dismiss Count II with prejudice.

**IV.     CONCLUSION**

For the reasons set forth in this memorandum, Angiotech respectfully requests that the Court dismiss with prejudice those allegations of Counts I and II which directly contradict the plain language of the Agreements.

DATED: July 9, 2008                    Respectfully submitted,
   New York, NY
            HELLER EHRMAN LLP

            By /s/ Warren S. Rheaume
             Warren J. Rheaume (*pro hac vice*)
             warren.rheaume@hellerehrman.com
             Malaika M. Eaton (*pro hac vice*)
             malaika.eaton@hellerhrman.com
             Heller Ehrman LLP
             701 Fifth Ave., Suite 6100
             Seattle, WA  98104-7098
             Tel:  (206) 447-0900
             Fax:  (206) 447-0849

             Andrew Levine (AL 3552)
             Heller Ehrman LLP
             Times Square Tower
             7 Times Square
             New York, NY  10036-6524
             Tel: (212) 832-8300
             Fax: (212) 763-7600
             andrew.levine@hellerehrman.com

             *Attorneys for Defendant*
             *Angiotech Pharmaceuticals (U.S.), Inc.*

SE 2258089 v4
7/9/08 7:55 AM (37618.0041)