UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROUNDTABLE HEALTHCARE PARTNERS, L.P., a Delaware Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>ANGIOTECH PHARMACEUTICALS (U.S.), INC., a Washington Corporation,<br><br>Defendant. | Civil Action No.: 08-CV-02968 (MGC)<br><br>Filed Electronically |

**REPLY IN SUPPORT OF DEFENDANT
ANGIOTECH PHARMACEUTICALS (U.S.), INC.'S MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS**

Warren J. Rheaume (*pro hac vice*)
warren.rheaume@hellerehrman.com
Malaika M. Eaton (*pro hac vice*)
malaika.eaton@hellerehrman.com
Heller Ehrman LLP
701 Fifth Ave., Suite 6100
Seattle, WA  98104-7098

Andrew Levine (AL 3552)
andrew.levine@hellerehrman.com
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524

*Attorneys for Defendant Angiotech
Pharmaceuticals (U.S.), Inc*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................. 1

II. RESPONSE TO ROUNDTABLE'S FACTUAL BACKGROUND ....................... 2

III. ARGUMENT ....................................................................................... 3

    A. Angiotech Established That the Claim Procedures Are Not Conditions Precedent and RoundTable's Opposition Does Nothing to Undermine That Conclusion. ................................................... 3

        1. RoundTable's Opposition Disregards the Relief Angiotech Has Requested in Its Motion. ............................................. 3

        2. RoundTable's Opposition Relies on a Basic Misunderstanding Regarding Fundamental Principles of Contract Law That Distinguish Between Ordinary Contractual Obligations and Conditions Precedent. .......................... 6

        3. RoundTable's Own Authority Is Either Unpersuasive or Does Not Support Its Position and Its Efforts to Distinguish Angiotech's Authority Are Unsuccessful. ........................................ 8

        4. The Limited Arguments RoundTable Raises Lack Merit. ............... 11

    B. Angiotech Established That It Submitted a Single Claim to the Escrow Funds, Not Multiple Claims as RoundTable Contends in Its Opposition. ........................................................................... 14

IV. CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

## Federal Cases

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 1420 (2d Cir. 1993) ............................................................................ 2

*2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*,
  No. 00 Civ. 5773, 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ......................... 2

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................... 17, 18

*Mowers v. Paul Revere Life Ins. Co.*, 27 F. Supp. 2d 135 (N.D.N.Y. 1998),
  *rev'd on other grounds*, 204 F.3d 372 (2d Cir. 2000) .............................. 8, 9, 10

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
  102 F.3d 660 (2d Cir. 1996) ............................................................................. 2

*Office of Comptroller Gen. of Republic of Bolivia v. Int'l Promotions & Ventures, Ltd.*,
  618 F. Supp. 202 (S.D.N.Y. 1985) ................................................................ 7, 8

*Rutgerswerke AG v. Abex Corp.*,
  No. 93 CIV.2914, 2002 WL 1203836 (S.D.N.Y. June 4, 2002) ......................... 5

*Southward Invs. LLC v. V-GPO, Inc.*,
  No. 06-CV-6540T, 2007 WL 2859702 (W.D.N.Y. Sept. 26, 2007) ............. 10, 11

*Toyomenka Pac. Petroleum, Inc. v. Hess Oil Virgin Islands Corp.*,
  771 F. Supp. 63 (S.D.N.Y. 1991) .............................................................. *passim*

## State Cases

*Am. Transit Ins. Co. v. B.O. Astra Mgmt. Corp.*, 814 N.Y.S.2d 849 (Sup. Ct. 2006),
  *aff'd as modified by* 835 N.Y.S.2d 106 (App. Div.),
  *leave to appeal denied by* 840 N.Y.S.2d 762 (2007) ........................................ 8

*Ashkenazi v. Kent S. Assocs., LLC*,
  857 N.Y.S.2d 693 (App. Div. 2008) ......................................................... 7, 8, 14

*Cabe v. Aetna Cas. & Sur. Co.*,
  544 N.Y.S.2d 862 (App. Div. 1989) ................................................................... 9

*Cont'l Ins. Co. v. Albany Hous. Auth.*,
  445 N.Y.S.2d 317 (App. Div. 1981) ................................................................ 12

*David Fanarof, Inc. v. Dember Constr. Corp.*,
  600 N.Y.S.2d 226 (App. Div. 1993) ............................................................ 7, 14

*Kass v. Kass*, 663 N.Y.S.2d 581 (App. Div. 1997),
    *aff'd*, 91 N.Y.2d 554 (1998)........................................................................................ 8, 10

*Roan/Meyers Assocs., L.P. v. CT Holdings, Inc.*,
    810 N.Y.S.2d 67 (App. Div. 2006) .................................................................................... 8

*Rooney v. Slomowitz*,
    784 N.Y.S.2d 189 (App. Div. 2004) ............................................................................ 8, 10

*Spirits v. Vill. of Hempstead Cmty. Dev. Agency*,
    No. 13129-04, 2006 WL 2193047 (N.Y. Sup. Ct. July 28, 2006) ................................... 11

## Other Authorities

Fed. R. Civ. P. 12(c) ....................................................................................................................... 3

## I.    PRELIMINARY STATEMENT

Plaintiff RoundTable Healthcare Partners, L.P. ("RoundTable") continues to rest its opposition to Defendant Angiotech Pharmaceuticals (U.S.), Inc.'s ("Angiotech") Motion for Partial Judgment on the Pleadings ("Motion") and Memorandum of Law in Support ("Memorandum") on a fundamental misunderstanding (or intentional misstatement) of black letter contract law:  the critical difference between a general contractual obligation and a condition precedent.[1]  RoundTable attempts to disregard the critical question raised by Angiotech's Memorandum and mischaracterize the relief Angiotech has actually requested.  This Court should grant Angiotech the relief it seeks—a ruling that the claim procedures upon which RoundTable relies are not conditions precedent requiring strict compliance at the risk of forfeiture—and leave for another day resolution of questions *not raised* by Angiotech's Memorandum, such as whether the parties have breached those procedures or other provisions of the Stock Purchase Agreement and the Escrow Agreement (collectively, the "Agreements"), whether any provision breached is material, and other questions RoundTable attempts to raise that are irrelevant to this Motion.

Angiotech also seeks dismissal of Count II because the allegations of Count II contradict the plain language of the Agreements and Angiotech's Escrow Claim Notice (Compl. Ex. C) in numerous respects, each of which was carefully discussed in its Memorandum.  Mem. at 12–17.  RoundTable offers no response to many of Angiotech's arguments, and the few responses it does offer are fundamentally flawed because they disregard or simply misquote the most critical documents, rely on irrelevant language in the Stock Purchase Agreement, or mischaracterize

---

[1] In the Illinois action, RoundTable moved for summary judgment on the basis that the claims procedures constituted conditions precedent, making the same fundamental error.  The case was stayed in favor of a New York forum before argument or a ruling on that motion.

Angiotech's position.  Because RoundTable's opposition fails to rebut Angiotech's demonstration that it is entitled to relief, this Court should dismiss Count II with prejudice.

## II.    RESPONSE TO ROUNDTABLE'S FACTUAL BACKGROUND

Although in a motion for judgment on the pleadings, RoundTable is entitled to the benefit of well-pleaded allegations in its Complaint, several factual statements in RoundTable's opposition are not based on well-pleaded allegations in the Complaint.  As Angiotech noted in its Memorandum, RoundTable cannot rely on its allegations where those allegations are contrary to the plain language of documents attached to, and therefore incorporated into, the pleadings.  *See* Mem. at 4 ("Where 'plaintiff['s] allegations are conclusory and directly contradicted by the unambiguous' terms of an agreement, the agreement's terms 'establish the rights of the parties and prevail over conclusory allegations of the complaint.'  *2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00 Civ. 5773, 2001 WL 410074, at *10, 11 (S.D.N.Y. Apr. 23, 2001) (internal quotation marks omitted)."); *id.* at 2 n.2 ("In determining whether to grant a motion to dismiss, the Court may rely on 'documents attached to the complaint as exhibits.'  *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (internal quotation marks omitted).").  Thus, this Court should not rely on RoundTable's allegations that characterize documents attached to the Complaint when the language of those documents belies RoundTable's characterizations.

Likewise, as RoundTable appears to concede, RoundTable is not permitted to rely on unsupported statements of counsel in its brief that find no support in even the allegations of RoundTable's own Complaint.  *See* Opp'n at 5 (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), for the proposition that "The Court's 'consideration is limited to the factual allegations in plaintiff's [complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice

2

may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [] had

knowledge and relied on in bringing suit.'"). Thus, this Court should disregard RoundTable's

unsupported characterizations of the purpose of the claim procedures and the due diligence

process (*see* Opp'n at 3–4 & n.3), and instead focus on the clear and unambiguous language and

structure of the Agreements, which, as RoundTable itself concedes, "may not be expanded or

restricted beyond what is on the page" (*id*. at 12).

## III.    ARGUMENT

### A.    Angiotech Established That the Claim Procedures Are Not Conditions Precedent and RoundTable's Opposition Does Nothing to Undermine That Conclusion.

#### 1.    RoundTable's Opposition Disregards the Relief Angiotech Has Requested in Its Motion.

Much of RoundTable's opposition simply ignores the relief Angiotech's Motion seeks

and instead responds to arguments Angiotech has never made. Because RoundTable's

opposition responds to an army of straw men it has set up, large sections of that opposition are

simply irrelevant here.

RoundTable opens its opposition with something of an acknowledgment of the limited

nature of the relief Angiotech seeks. *See* Opp'n at 2 (stating that Angiotech's Motion "is a

narrowly drawn pleading [sic]. The underlying dispute as to whether or not representations and

warranties were actually breached remains unaffected by this Motion."). Rapidly, however,

RoundTable begins to respond to arguments that Angiotech never made and argue against relief

Angiotech never requested. For example, RoundTable repeatedly mischaracterizes Angiotech's

position and the relief it has requested in its Motion. RoundTable states, for instance:

"Angiotech now moves for partial judgment on the pleadings under Fed. R. Civ. P. 12(c),

arguing that since its refusal to abide by the Agreements is justified, the claim that Angiotech

cannot proceed against the escrow must fail." Opp'n at 5. RoundTable cites, but does not quote, page 1 of Angiotech's Memorandum for this proposition. *Id.*[2] RoundTable's failure to provide a quote for this citation is not surprising: Angiotech's Memorandum seeks no such thing, neither on page 1 nor elsewhere in the Memorandum. Rather, Angiotech simply argues this Court should rule that the claim "procedures are not conditions precedent to Angiotech's ability to recover." Mem. at 5 (citations omitted).[3]

As stated above, in light of the actual relief Angiotech seeks, much of RoundTable's opposition is simply irrelevant. RoundTable's recitation of its allegations regarding how it contends Angiotech breached the parties' Agreements are not material. Opp'n at 6–8. Angiotech's Memorandum, as it must, "assum[es]" that RoundTable's allegations that Angiotech did not comply with the claim procedures are accurate. Mem. at 5. When it is appropriate to litigate the merits of both parties' breach of contract claims, RoundTable and Angiotech will have the opportunity to attempt to prove the respective allegations regarding breach of contract. That day is not now. Now, however, this Court should hold as a matter of law that the claim

---

[2] RoundTable's opposition is filled with similar mischaracterizations. *See, e.g.*, *id.* at 10 (incorrectly suggesting, without citation, that "Angiotech argues[] it was free to disregard these parts of the contracts [referring to the escrow claim procedures] even though they were negotiated at arms length and even though the express language and logic of these terms are clear"); *id.* at 11 (incorrectly suggesting, without citation, that Angiotech argues that the claim submission procedures "are 'advisory' or 'non-binding'"); *id.* (stating, without citation, that the claim submission procedures "cannot be mere 'suggestions' as Angiotech postulates").

[3] *See also, e.g.*, *id.* at 8 ("Because the contracts themselves contain no indication that the provisions RoundTable suggests are conditions precedent actually are any such thing, Counts I and II should be dismissed *to the extent they suggest otherwise.*" (emphasis added)); *id.* ("This too is a separate and independent ground upon which to dismiss *those aspects of Count I and II that suggest that Angiotech's claim to the escrow funds is barred* because of an alleged failure to comply with the claim submission procedures." (emphasis added)); *id.* at 11 ("Thus, the Court should dismiss with prejudice those aspects of Counts I and II that suggest that the claims procedures are conditions precedent to Angiotech's ability to recover.").

4

procedures are not conditions precedent and do not bar Angiotech's right to recover the escrow fund.[4]

RoundTable's extensive discussion of case law stating that contract terms must be construed to give the terms meaning is irrelevant here. Opp'n at 11–12. Contrary to RoundTable's contention, Angiotech's Memorandum does not suggest that the claim procedures are "mere 'suggestions.'" *Id*. at 11. Angiotech's Motion does not ask the Court to deprive those terms of meaning or "read mandatory and unambiguous provisions out of the contract" (*id.* at 12); rather, Angiotech asks the Court to construe those terms consistent with their plain language, as ordinary contractual obligations rather than conditions precedent. Accordingly, this Court's ruling in Angiotech's favor will only preclude RoundTable from attempting to force a forfeiture, and thereby obviate its need to prove up its breach of contract claims.[5]

---

[4] For similar reasons, RoundTable's reliance on *Rutgerswerke AG v. Abex Corp.*, No. 93 CIV.2914, 2002 WL 1203836 (S.D.N.Y. June 4, 2002) (*see* Opp'n at 9 n.7), is misplaced. That case addressed an entirely different factual scenario and is procedurally inapposite. Indeed, there the court noted that "evidence in this case indicates that Plaintiffs tried to create a 'violation of law' to create indemnity claims by drafting the cleanup order ultimately issued by the [relevant government authority] and by failing to contest the order, despite Plaintiffs' knowledge of its invalidity." *Rutgerswerke AG*, 2002 WL 1203836, at *5. It also was a ruling on a motion for summary judgment where the court had evidence before it to support its finding of plaintiff's misconduct. At this stage of the litigation, however, there is nothing more than the unsupported statement by RoundTable's counsel that Angiotech "refus[ed] to comply with the terms to which it agreed." Opp'n at 9 n.7. This statement does not address the real issue before the Court: whether the plain language of the claim procedures in the parties' agreements creates conditions precedent or are ordinary contract provisions.

[5] As will be described in Angiotech's Motion to Dismiss, the parties' breach of contract claims relating to the escrow funds cannot yet be adjudicated because they will turn on the merits of Angiotech's indemnification claim, which is not yet ripe.

2.    **RoundTable's Opposition Relies on a Basic Misunderstanding Regarding Fundamental Principles of Contract Law That Distinguish Between Ordinary Contractual Obligations and Conditions Precedent.**

RoundTable concedes that its Complaint hinges, in part, on its contention that the claim procedures constitute conditions precedent to Angiotech's ability to recover the escrow funds. *See* Opp'n at 2 ("RoundTable asserts . . . that Angiotech's failure to comply with the proof disclosure obligations precluded its claims for the escrow funds."). At the same time, however, RoundTable appears not to understand the difference between an ordinary contractual obligation and a condition precedent. *E.g.*, *id.* Indeed, at times, RoundTable treats material contract terms and conditions precedent as indistinguishable, suggesting that any contractual obligation that uses mandatory terms, such as "shall provide" or "shall give," creates conditions precedent. *Id.* at 8–9. This is simply not the law as it applies to this case.

Conditions precedent are not indistinguishable from material contract terms and mandatory language alone does not create a condition precedent. As numerous courts have held, conditions precedent are a special type of contractual term. As described below, harsh consequences attach when a party fails to comply with a condition precedent. For this reason, New York courts, including this Court, apply special rules to determine whether a contract obligation rises to the level of a condition precedent.

This Court's opinion in *Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp.*, 771 F. Supp. 63 (S.D.N.Y. 1991), provides a useful illustration of some of these principles. There, plaintiff argued that a notice provision was a condition precedent to the defendant's ability to invoke a certain type of relief under the contract, a situation quite similar to this case. That clause used similar mandatory language to that included in the Agreements here: "The party claiming force majeure *shall give* written notice thereof to the other party within

6

forty-eight (48) hours . . . ." *Id*. at 67 (emphasis added). This Court acknowledged that "[u]nder New York law, a contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Id*. The Court concluded that this clause did not create a condition precedent because "the clause does not clearly indicate that the parties intended that protection to be forfeited if formal notice were not given." *Id*. at 68. Thus, this Court concluded, the "notice requirement is properly construed as a duty to be performed under the contract rather than as a condition precedent to a force majeure defense." *Id*. Here too, the claim procedures properly are construed as ordinary contractual duties, and not conditions precedent to Angiotech's right to recover the escrow funds.

There is good reason for the rule that this Court applied in *Toyomenka*. A condition precedent is no ordinary contractual duty: "A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, *must occur before a duty to perform a promise in the agreement arises*." *Ashkenazi v. Kent S. Assocs., LLC*, 857 N.Y.S.2d 693, 694 (App. Div. 2008) (emphasis added, internal quotation marks omitted). Unlike other contractual obligations that, when breached, may give rise to damages if, for instance, the non-breaching party complied with its contractual obligations, the term was material, and the breach is not excused; when a party breaches a condition precedent, that party forfeits its rights under the contract. *See Toyomenka*, 771 F. Supp. at 67–68; *David Fanarof, Inc. v. Dember Constr. Corp.*, 600 N.Y.S.2d 226, 227–28 (App. Div. 1993) ("When commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with."); *see also Office of Comptroller Gen. of Republic of Bolivia v. Int'l Promotions & Ventures, Ltd.*, 618 F.

7

Supp. 202, 207 (S.D.N.Y. 1985) ("Fundamentally, the parties to a contract may condition the performance of either party, or the validity of the entire contract itself, on the occurrence of an event.  If that event does not occur, the contractual obligation does not arise." (citation omitted)); *Mowers v. Paul Revere Life Ins. Co.*, 27 F. Supp. 2d 135, 139 (N.D.N.Y. 1998) ("Express conditions are those agreed to and imposed by the parties themselves. . . .  Express conditions must be literally performed . . . ." (internal quotation marks omitted)), *rev'd on other grounds*, 204 F.3d 372 (2d Cir. 2000).

Forfeiture, for good reason, is disfavored under the law.  It is for this reason that New York law requires that a contract clearly and unambiguously designate obligations as conditions precedent before the Court is justified in treating them as such.  *See Toyomenka*, 771 F. Supp. at 67; *Ashkenazi*, 857 N.Y.S.2d at 694; *Roan/Meyers Assocs., L.P. v. CT Holdings, Inc.*, 810 N.Y.S.2d 67, 68 (App. Div. 2006); *Rooney v. Slomowitz*, 784 N.Y.S.2d 189, 192 (App. Div. 2004); *Kass v. Kass*, 663 N.Y.S.2d 581, 588 (App. Div. 1997), *aff'd*, 91 N.Y.2d 554 (1998); *Am. Transit Ins. Co. v. B.O. Astra Mgmt. Corp.*, 814 N.Y.S.2d 849, 852–53 & n.3 (Sup. Ct. 2006), *aff'd as modified by* 835 N.Y.S.2d 106 (App. Div.), *leave to appeal denied by* 840 N.Y.S.2d 762 (2007).  RoundTable concedes, as it must, that this special rule applies to determine whether a contract provision rises to the level of a condition precedent (Opp'n at 8), but at the same time persists in arguing that a condition precedent is indistinguishable from material contract provisions.

### 3.    RoundTable's Own Authority Is Either Unpersuasive or Does Not Support Its Position and Its Efforts to Distinguish Angiotech's Authority Are Unsuccessful.

The authority on which RoundTable relies does not undermine these basic and fundamental principles of contract law.  Moreover, many of the cases on which RoundTable

relies in fact support Angiotech's argument and reinforce the principle that conditions precedent are not the same as ordinary contractual obligations.

RoundTable tries to blur the distinction between conditions precedent and other material contractual obligations. *Id.* at 9–10. But the case on which it principally relies further demonstrates that material contract terms are different than conditions precedent and are treated as distinct under New York law. RoundTable quotes *Cabe v. Aetna Casualty & Surety Co.*, 544 N.Y.S.2d 862 (App. Div. 1989), for the proposition that "'Plaintiffs' continued failure, *without explanation or excuse*, to provide the requested information, *constituted a material breach of the policy . . . .*'" Opp'n at 10 (emphasis added). This language reinforces Angiotech's argument: even if RoundTable could eventually prove that Angiotech breached a material term of the parties' Agreements, Angiotech would have the opportunity to demonstrate that it is still entitled to contractual benefits, including the escrow funds, because any such breach is excused for any number of reasons. That is the basic premise of a standard breach of contract claim. A condition precedent, on the other hand, is different. It requires strict performance and, absent that performance, contractual rights are to be treated as having never arisen. *See supra* Section III.A.2.

Other cases on which RoundTable relies also further emphasize that a condition precedent is not the same as an ordinary contractual obligation, whether material or not. For example, RoundTable relies on *Mowers*. *See* Opp'n at 9–10. But RoundTable neglects to mention that *Mowers* states: "A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises. . . . Express conditions are those agreed to and imposed by the parties

themselves. . . .  Express conditions must be literally performed . . . ."  27 F. Supp. 2d at 139 (internal quotation marks omitted).

       The only case RoundTable cites that could be construed to actually support RoundTable's position is neither binding nor persuasive.  RoundTable's star authority for its contention that the claim procedures are conditions precedent is *Southward Investments, LLC v. V-GPO, Inc.*, No. 06-CV-6540T, 2007 WL 2859702 (W.D.N.Y. Sept. 26, 2007), an unpublished decision from the Western District of New York.  Opp'n at 8.  What RoundTable neglects to mention is that the *Southward* case contains absolutely no substantive analysis of this issue.  Indeed, the brief quote provided by RoundTable (*id.*) contains virtually all of the analysis of the court on this issue (2007 WL 2859702, at *3).  The *Southward* court neither cites nor even discusses any authority for the novel proposition that the use of the term "agrees" constitutes a condition precedent.  For these reasons, this Court should not turn away from its holding in *Toyomenka* or the numerous other cases applying the same rule, and instead follow *Southward*.

       Finally, RoundTable's half-hearted attempt to distinguish the cases on which Angiotech relies is similarly unpersuasive.  For example, Angiotech relies on *Rooney* to discuss the requirements for finding a condition precedent.  Mem. at 9 n.6.  The sum total of RoundTable's attempt to distinguish *Rooney* is that *Rooney* "involve[ed] the language of a real estate contract" and "this case does not involve a real estate contract," a difference without a distinction.  Opp'n at 9 n.8.  Similarly, Angiotech relies on *Kass* (Mem. at 9 n.6), and RoundTable attempts to distinguish that case by stating only that the court there found "no condition precedent because [the] language of the contract was contradictory and ambiguous; there has been no such finding here" (Opp'n at 9 n.8).  This statement, of course, misses the point entirely.  RoundTable concedes, as it must, that, in order for a contractual obligation to be construed as a condition

precedent it must be "clearly and unambiguously set forth in [the] contract." *Id.* at 8.

Angiotech's Memorandum demonstrates that the provisions upon which RoundTable relied do

not come close to meeting this standard and that, even if they were ambiguous, New York law

would preclude treating them as conditions precedent. Mem. at 5–11. RoundTable's response in

this regard appears to be that it should prevail because the Court has not already concluded that

the claim provisions are ambiguous. Opp'n at 9 n.8. But Angiotech's Memorandum puts this

very question to the Court for decision.

**4.      The Limited Arguments RoundTable Raises Lack Merit.**

RoundTable raises two additional arguments to support its theory that the claim

procedures should be construed as conditions precedent. Neither argument is persuasive.

RoundTable first suggests that because the claim submission procedures use mandatory

language, such as "shall provide" and "shall give," that "the language of the Stock Purchase

Agreement unambiguously creates conditions precedent to claiming the escrow funds." *Id.* at 9.

The sole support RoundTable provides for this novel proposition is *Southward*, which as

described in detail above, is an outlier, without analysis and unpersuasive. Indeed,

RoundTable's mandatory language theory is undermined or outright rejected by numerous

courts, both state and federal, including this Court in *Toyomenka*. 771 F. Supp. at 67; *see also,*

*e.g.*, *Spirits v. Vill. of Hempstead Cmty. Dev. Agency*, No. 13129-04, 2006 WL 2193047, at *4

(N.Y. Sup. Ct. July 28, 2006) (concluding that the mandatory language in the agreement

requiring bi-weekly time sheets was not a condition precedent because "[a] contractual duty

ordinarily will not be construed as a condition precedent absent clear language showing that the

parties intended to make it a condition").

RoundTable's "mandatory language" theory would create the very same absurd results

that RoundTable says it seeks to avoid. Opp'n at 15. Following RoundTable's logic, every

11

ordinary contractual provision could easily be transformed into a condition precedent by the use of generic contractual language such as "shall" or "agree." *Id*. at 9–10. The reason the Court should reject RoundTable's position should be obvious.

The only other argument RoundTable raises is equally flawed. RoundTable argues that Angiotech's Motion must be denied because it hinges on the "descriptive headings" of the parties' Agreements. *Id.* at 10–12. This is just wrong. Angiotech's argument does not rest on the language of the headings. Rather, it rests on the plain language *and structure* of the parties' Agreements, both of which are appropriate for this Court to consider to resolve Angiotech's Motion. *See* Mem. at 1, 5–8 (relying on "the language and structure of the agreements"); *see also Cont'l Ins. Co. v. Albany Hous. Auth.*, 445 N.Y.S.2d 317, 318 (App. Div. 1981). Notably, RoundTable makes no argument that it is improper for this Court to rely on the structure of the Agreements.

Likewise, RoundTable's opposition does not undermine Angiotech's position that the language and structure of the Agreements demonstrates that the claim procedures are not conditions precedent. RoundTable protests that the fact that the Article devoted entirely to conditions only addresses events that must occur before the closing means that this Article "has absolutely nothing to do with" whether this Court should construe the claim procedures—which do *not* appear in the Article on conditions—as conditions precedent. Opp'n at 11. To the contrary, the fact that the Stock Purchase Agreement includes an Article devoted to conditions is very relevant, as numerous courts have concluded. *See, e.g.*, *Continental*, 445 N.Y.S.2d at 318 ("Had it been intended that the requirement was to be a condition precedent to the making of final payment, it would surely have been included in section 6(A) of the agreement which is specifically entitled 'Conditions Precedent.'").

12

For one thing, this aspect of the Stock Purchase Agreement's structure emphasizes the fact that conditions precedent are not ordinary contractual terms; they merit special attention and cause special (and harsh) consequences if they are not strictly complied with, including (as in the case of Article VII) relieving the parties of the obligation to go through with the closing. *See* Compl. Ex. A § 7; *see also supra* Section III.A.2. When the parties wanted to treat obligations as conditions precedent, they broke those out into a separate Article devoted specifically to conditions precedent. The absence of claims procedure in this Article further demonstrates that the claim procedures are not conditions precedent.

Furthermore, Article VII demonstrates irrefutably that, when the parties wanted to treat a contractual obligation as a condition precedent, they called it a "condition," just as Article VII does, and even included further conditional language. Mem. at 6 (quoting language of Article VII: "[t]he respective *obligation* of each party to effect the transactions contemplated by this Agreement *is subject to* the satisfaction or written waiver at or prior to the Closing of each of the following *conditions*." (emphasis added)). Angiotech demonstrated that no similar language appears in any of the claim provision terms that RoundTable argues are conditions precedent. *Id.* at 7–8. RoundTable offers no response. It points to no conditional language, no language requiring strict compliance, and no indication that failure to comply bars Angiotech's ability to recover the escrow funds. The absence of any language suggesting that the claim procedures constitute conditions precedent is fatal to RoundTable's opposition. *Toyomenka*, 771 F. Supp. at 67–68 (holding that "[u]nder New York law, a contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition," and that a clause did not create a condition precedent because "the clause does not

13

clearly indicate that the parties intended that protection to be forfeited if formal notice were not given").[6]

In sum, this Court should dismiss all aspects of Counts I and II that suggest that the claim procedures in the parties' Agreements are conditions precedent. RoundTable's opposition rests on its attempts to misconstrue the nature of the relief Angiotech requests and its fundamental misunderstanding of the difference between conditions precedent and ordinary contractual obligations. The few cases that it does offer either do not support its position, lack any relevant analysis, or reinforce Angiotech's position, which is consistent with well-established New York law. Finally, the limited arguments RoundTable actually offers that respond to Angiotech's Motion lack merit and have been rejected by numerous courts, including this Court.[7]

**B.    Angiotech Established That It Submitted a Single Claim to the Escrow Funds, Not Multiple Claims as RoundTable Contends in Its Opposition.**

In its Motion, Angiotech carefully analyzed a number of provisions of the Agreements and the Escrow Claim Notice, and established that (1) it submitted a single claim to the escrow

---

[6] *See also, e.g.*, *Ashkenazi*, 857 N.Y.S.2d at 694 ("[I]t must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent. If the language is in any way ambiguous, the law does not favor a construction which creates a condition precedent. A contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." (internal quotation marks and citations omitted, alteration in original)); *David Fanarof, Inc.*, 600 N.Y.S.2d at 227–28 (holding that provision constituted a condition precedent because the language—"Payment of purchaser [defendant] by Owner *shall be a condition precedent* to Vendor's [plaintiff's] right to receive payment hereunder"— was unambiguous (emphasis added, alterations in original)).

[7] RoundTable concedes that it is required to show prejudice resulting from any alleged failure by Angiotech to comply with the notice provisions in the Stock Purchase Agreement in order to relieve it of liability. Opp'n at 12–13. RoundTable's suggestion that its Complaint does not rely on the notice provisions, and instead relies on other claim procedures (*id.* at 12), is directly contradicted by its allegations (Compl. ¶¶ 19, 22, 48). RoundTable's fallback position is that it has alleged prejudice. Opp'n at 13. RoundTable, however, misses the point. None of the types of damages it alleges could plausibly be deemed to *result from* any alleged breach of the notice provisions. The damages alleged have nothing to do with any alleged lack of notice. Thus, this Court can and should dismiss this aspect of RoundTable's Complaint.

funds, contained in the Escrow Claim Notice, (2) it did not increase the amount of its claim, and

(3) even if the Escrow Claim Notice could be construed (contrary to its plain language) as more

than one claim, the plain language of the Agreements does not prevent Angiotech from revising

the amount of any claim in good faith.  Mem. at 12–17.  RoundTable offers no response to much

of Angiotech's analysis, and those responses it does offer are fundamentally flawed because they

disregard or simply misquote the most critical document or rely on irrelevant language in the

Stock Purchase Agreement.

In its Motion, Angiotech demonstrated that the plain language of the Agreements

supports Angiotech's argument that the Escrow Claim Notice cannot be dissected into numerous

claims on RoundTable's mere whim.  *Id.* at 13–14.  The Purchase Agreement explicitly permits

Angiotech to seek indemnification via a "claim for indemnification" for "breaches of

representations and warranties contained" in the Purchase Agreement.  *See id.* at 13 (quoting

Compl. Ex. A § 9.1(b)).  This is exactly what Angiotech did when it submitted its Escrow Claim

Notice, which asserted a single claim for numerous breaches.  Compl. Ex. C (asserting one claim

and providing a "Summary of Claim" describing the bases for that claim).  RoundTable's

position would rewrite both the Stock Purchase Agreement and the Escrow Claim Notice to

require that any individual breach gives rise to a separate claim.  RoundTable offers no response

to this argument and its Complaint cannot survive Angiotech's Motion simply by ignoring

Angiotech's arguments.

Angiotech also demonstrated that it did not increase its claim, but instead, after diligently

investigating the extent of RoundTable's numerous breaches, it decreased the amount of

damages included in its claim by nearly $8 million resulting in a release of escrow funds to

RoundTable.  Mem. at 12–13.  RoundTable offers no analysis suggesting that this is not so;

instead, it just repeats its allegation that Angiotech "increase[d]" its claim (Opp'n at 14), which is plainly insufficient to defeat Angiotech's Motion.

Angiotech likewise showed in its Motion that RoundTable's attempt to read the Escrow Claim Notice as eleven separate claims was inconsistent with § 9.4(a) of the Purchase Agreement. Mem. at 14. As Angiotech explained, that section's reference to "the aggregate amount of all Damages claimed by [Angiotech]" would make no sense if each breach of any representation or warranty or each individual line item of Angiotech's Escrow Claim Notice had to be construed as a single claim. RoundTable again appears to be unable to rebut this argument because it again offers no response.

Further, Angiotech specifically argued that the line items contained in the Escrow Claim Notice were line items of "Damages," as defined by the Stock Purchase Agreement, not individual claims, as RoundTable alleges. *Id.* at 13. Indeed, the Stock Purchase Agreement defines "Damages" broadly. Compl. Ex. A § 9.2. The Stock Purchase Agreement requires RoundTable to indemnify Angiotech "from and against . . . any and all [Damages] . . . incurred [by Angiotech] or caused [to Angiotech], directly or indirectly, based on, arising out of, resulting from, relating to, or in connection with: (a) any breach of or inaccuracy in . . . any representation or warranty." *Id.* § 9.2(a). The Stock Purchase Agreement makes clear that a single claim can encompass multiple "Damages," plural. *See, e.g.*, § 9.5(b). The Escrow Agreement is to like effect. *See, e.g.*, Compl. Ex. B § 3. Contrary to the plain language of the Escrow Claim Notice and the Agreements, RoundTable contends that each line item of damages in the Escrow Claim Notice constitutes a "free-standing claim" because they address different items of damage. Opp'n at 14–15. Notably, RoundTable offers no analysis in response to Angiotech's

demonstration that the line items are separate items of "Damages" as defined by the Stock

Purchase Agreement.

Angiotech's Motion also looked to the Escrow Agreement and demonstrated that

RoundTable's attempt to read Angiotech's Escrow Claim Notice as eleven separate claims was

belied by the terms of that agreement as well.  Mem. at 14.  As Angiotech explained, the Escrow

Agreement treats a claim submitted in substantially the form of Angiotech's Escrow Claim

Notice as a single claim to the escrow funds.  *Id.* (citing Compl. Ex. B § 3(a)).  Again,

RoundTable offers no response whatsoever to this analysis.

The only arguments RoundTable does offer are flawed for numerous reasons.  At the

outset, RoundTable misquotes Angiotech's Escrow Claim Notice in order to attempt to force the

language of the document to support its position.  RoundTable states, in this regard:  "[I]n its

original Notice of Claims, Angiotech sets forth the 'summary' of each claim . . . ."  Opp'n at 14.

This is inaccurate in two respects.  First, contrary to RoundTable's implication, the "Summary of

Claim" contained in Angiotech's Escrow Claim Notice encompasses each line item, collectively:

in fact, the language RoundTable quotes appears at the top of the listing of damages on the last

page of Angiotech's Escrow Claim Notice.  Compl. Ex. C.  Second, the same document is not a

"Notice of Claims" as RoundTable suggests.  Opp'n at 14.  Instead, it is an "Escrow Claim

Notice."  Compl. Ex. C; *see also id.* ("The events giving rise to *the claim* are subject to Article

IX of the Purchase Agreement and a description thereof is set forth in the attached Exhibit A."

(emphasis added)).  It is telling that RoundTable's primary argument must rely on misquoting

the most critical document relating to the issue.  Because RoundTable's allegations that

Angiotech's Escrow Claim Notice constitutes many separate claims is belied by that very

document, these allegations cannot survive a motion to dismiss.  *In re Livent, Inc. Noteholders*

*Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) ("The court need not credit conclusory statements unsupported by assertions of facts . . . .").[8]

As for the provisions of the parties' Agreements, RoundTable's argument fares no better. RoundTable relies exclusively on § 9.1(b) of the Stock Purchase Agreement, which is the provision that creates a time within which Angiotech must submit a claim. Opp'n at 14. This provision does not assist RoundTable. The documents already incorporated into RoundTable's Complaint demonstrate that Angiotech complied with § 9.1(b) when it submitted the Escrow Claim Notice in a timely manner before the expiration of the claim period. Compl. Ex. C. Just because RoundTable wishes to believe that any revision to the damages included in that claim constitutes another claim does not make it so.

Finally, with respect to Angiotech's argument that the Agreements permit Angiotech to amend the amount of a properly submitted claim in good faith (Mem. at 14–17), RoundTable falls back on simply mischaracterizing Angiotech's position. Angiotech neither contends that it may freely amend its claim "in perpetuity," as RoundTable argues, nor does Angiotech contend that "it has no obligations to ever present any documents support its claims or to stop raising its claim amounts as long as they add up to $20 million or less." Opp'n at 15. Angiotech explained in detail how and why the various provisions of the Agreements permitted Angiotech to amend the amount of its claim in good faith, including analyzing §§ 9.1(b) and 9.5 of the Purchase Agreement. Mem. at 15–16. The only argument RoundTable offers in response is merely a red herring, which this Court can and should disregard.

---

[8] RoundTable attempts to bolster its argument by reference to later correspondence that cannot reach back in time to change Angiotech's Escrow Claim Notice. *See* Opp'n at 14 (relying on Compl. Exs. F & H).

## IV.     CONCLUSION

For the reasons set forth in its opening memorandum and the further reasons discussed in this reply, Angiotech respectfully requests that the Court dismiss with prejudice those allegations of Counts I and II which directly contradict the plain language of the Agreements.

DATED: July 29, 2008                Respectfully submitted,
        New York, NY

                                          HELLER EHRMAN LLP

                                          By   /s/ Warren S. Rheaume
                                              Warren J. Rheaume (*pro hac vice*)
                                              warren.rheaume@hellerehrman.com
                                              Malaika M. Eaton (*pro hac vice*)
                                              malaika.eaton@hellerhrman.com
                                            Heller Ehrman LLP
                                            701 Fifth Ave., Suite 6100
                                            Seattle, WA  98104-7098
                                            Tel:  (206) 447-0900
                                            Fax:  (206) 447-0849

                                            Andrew Levine (AL 3552)
                                            Heller Ehrman LLP
                                            Times Square Tower
                                            7 Times Square
                                            New York, NY  10036-6524
                                            Tel:     (212) 832-8300
                                            Fax:     (212) 763-7700
                                            andrew.levine@hellerehrman.com

                                            *Attorneys for Defendant*
                                            *Angiotech Pharmaceuticals (U.S.), Inc*.